Jack Silver, Esq.   SB# 160575
JsilverEnvironmental@gmail.com
Law Office of Jack Silver
708 Gravenstein Hwy North, # 407
Sebastopol, CA 95472-2808
Tel. (707) 528-8175
Fax. (707) 829-0934

Sean T. McAllister, Esq.  SB # 310962
Sean@mcallisterlawoffice.com
McAllister Law Office, P.C.
4035 E. 3rd Avenue
Denver, CO 80220
Tel. (720) 448-6235

Attorneys for Plaintiffs
*See Signature Page for all Plaintiffs
Represented)*

### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| The Church of the Celestial Heart, a California Religious Corporation, on behalf of itself and all of its members; Kai Karrel; Jade J. Osborne; Daniel Pozas; Sara Mintzer, | Case No. |
| | **COMPLAINT** |
| Plaintiffs, | |
| vs. | 1.  Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1(c) |
| | 2.  Review of Agency Actions, 5 U.S.C. § 702 |
| Merrick Garland, Attorney General of the United States; Alejandro Mayorkas, Secretary, U.S. Department of Homeland Security; and Anne Milgram, Administrator, U.S. Drug Enforcement Administration, | 3.  Declaratory Relief, 28 U.S.C. §§ 2201-2202 |
| | 4.  Injunctive Relief, F.R.C.P. 65 |
| Defendants. | |

## I. INTRODUCTION

1.     Plaintiffs, The Church of the Celestial Heart, Kai Karrel, Jade J. Osborne, Daniel Pozas, and Sara Mintzer (hereafter collectively, "Plaintiffs"), by and through counsel hereby submit this Complaint and state as follows:

2.     This is a suit brought by The Church of the Celestial Heart (hereafter, "Celestial Heart" or "Church"), a syncretic religion based on various well-established religious traditions, including the Santo Daime and Umbandaime religions. The Church is incorporated as a California non-profit religious corporation in Tulare, California, and its members share the same religious beliefs as Plaintiffs. This suit is brought pursuant to 42 U.S.C. § 2000bb-2000bb(4), the Religious Freedom Restoration Act of 1993 (hereafter, "RFRA"), to redress the deprivation of rights, privileges, and immunities secured to Plaintiffs by the RFRA. Specifically, Plaintiffs seek a declaration that the actions and policies of Defendants herein violate the RFRA and comprise actionable threats to Celestial Heart, and members of Celestial Heart who seek to import and use their sacramental tea (also known as Daime or ayahuasca), which contains trace amounts of a Schedule I chemical, into the United States for religious ceremonies. As explained further in this Complaint, Defendants' actions and policies are unconstitutional, unlawful, and violate the RFRA in that they burden the central practice of the Church's religion, i.e., imbibing Celestial Heart's sacramental tea. Each plaintiff is substantially burdened by being forced to choose between following the tenets of his or her religion or coerced to act contrary to his or her religious beliefs by the threat of civil or criminal sanctions. Plaintiffs also seek a preliminary and then permanent injunction enjoining Defendants from preventing the importation or use of tea in religious ceremonies and from threatening to arrest or prosecute Celestial Heart members who seek to ingest their sacramental tea.

## II. JURISDICTION AND VENUE

3.     Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 and 1343(3)-(4), because the case arises under the Constitution, laws and treaties of the United States and seeks to redress the deprivation of rights, privileges and immunities secured to Plaintiffs by the RFRA.

4.     This Court also has jurisdiction under 28 U.S.C. § 1346 (United States as defendant) and

28 U.S.C. §§ 2201-2202 and 5 U.S.C. § 706, to grant declaratory relief and to issue preliminary and permanent injunctions and under the Administrative Procedures Act, 5 U.S.C. § 701.  As explained in more detail below, there is a present and actual controversy between the parties that is ripe for judicial review.

5.      The RFRA provides jurisdiction by making it clear that a person or religious organization burdened by a violation of the RFRA may assert a claim or defense in a judicial proceeding and obtain appropriate relief against the government. 42 U.S.C. § 2000bb-1(c). A substantial part of the events or omissions giving rise to the claims in this case occurred in this district and Plaintiffs reside in the judicial district.

6.      This Court has personal jurisdiction over Defendants and their officials as Defendants are agencies of the federal government operating within the United States.

7.      Venue in this Court is therefore proper under 28 U.S.C. § 1391(e), a substantial part of the events or omissions giving rise to the claims in this case occurred in this district, and Plaintiffs, including the Church itself, reside in this judicial district.

### III. PARTIES

8.      Plaintiff Celestial Heart is a California non-profit religious corporation, incorporated in 2021, with a current mailing address of 2148 Shell Court, Tulare, California. Celestial Heart has approximately 350 members. While independent and standing on its own, it is based on the doctrine of the Santo Daime religion which was founded in the 1930's by Mestre Raimundo Irineu Serra.  As is the Santo Daime religion, Celestial Heart is a syncretic religion that incorporates several religions and spiritual traditions such as esoteric Catholicism, especially the line of St. Francis of Assisi, Kardecist Spiritism, and the practice of spiritist mediumship, Brazilian Candomblé, Umbanda and Umbandaime, the mediumistic teachings of the Brazilian Chico Xavier, and the indigenous Brazilian shamanism as brought forth by the Kaxinawa and Yawanawa indigenous tribes of Acre, Brazil. The sacramental practice of using Daime dates back more than 2,000 years. Celestial Heart honors these ancient traditions and pay its respect to the elders and teachers and have their full support to carry this work onward.

9.      The Church was formed in order to expand the syncretic nature of the Santo Daime religion and offer its profound wisdom and teachings to an English-speaking audience. In addition to using the Portuguese books of prayer (Hinarios), the Church also utilizes English translations of these hymns and its own book of channeled prayers called 'Prayerful Heart,' which has over 250 prayers dedicated to the Church's religious and spiritual practice. The doctrine of the Church has strong emphasis and teachings related to the psycho-spiritual aspects of doing such work and guiding its facilitating members in the understanding of how to support their brothers and sisters within this kind of spiritual ritual.

10.     The Church is based on the core belief that people are a spirit-soul, residing within a human body, and have arrived at this plane of existence in order to learn, evolve and fulfill a Divine Mission. The Church and its members believe in God, the Divine Creator, which is found within everything and within all. The Church and its members believe in the existence of the 'Astral' – a spiritual plane where they can access angels, archangels, and a multitude of spirits and guides. The Church and its members believe that with the ceremonial use of their sacrament, they are able to connect to the Astral, ignite their divine connection to God, and through this communion, come to a profound sense of healing, peace, and understanding that brings about transformation in all levels of human existence.

11.     The Church and its members believe their sacrament to be divinate, meaning it has been bestowed upon humanity in a Divine manner, meant to awaken and bring about reconnection to Great Spirit. They consider their sacrament to be Divine in itself. They relate to the sacrament as the spirit of Mother Earth, and esoterically as the sacramental blood of Christ. Partaking with the Daime is an essential and foundational practice within their faith and is required in order to bring about this Divine reconnection, the awakening of the soul, and as a means to receive the teachings the sacrament and the astral planes hold.

12.     The Church has suffered both financial and spiritual loss having its sacrament confiscated and destroyed.  The Church is substantially burdened by being forced to choose between following the tenets of its religion or being coerced to act contrary to its religious beliefs by the threat of civil

or criminal sanctions. Despite the threats of civil or criminal sanctions, Celestial Heart intends to continue importing, possessing, and using its sacrament, for without its sacrament, the Church cannot provide essential services.

13.     In addition to having standing to sue in its own right, Celestial Heart has associational standing as the interests it seeks to protect are germane to the organization's purpose, and the relief sought by the Church will satisfy the injury-in-fact to its members, including the named Plaintiff members.  For this reason, although its members would otherwise have standing to sue in their own right, neither the claim asserted nor the relief requested requires the participation of individual members in this lawsuit.

14.     Plaintiff Kai Karrel ("Karrel") is the founder of Celestial Heart and serves as the lead pastor or Padrinho. Karrel resides in Tulare, California, with his wife Jade J. Osborne, and her four children. Karrel received his first Santo Daime star initiation (Fardamento) and became an official member of the Santo Daime church in 2016 from Jonathan Goldman of the Church of the Holy Light of the Queen in Ashville, Oregon, and his current affiliation to Fraternidade do Coração, São Paulo, Brazil, and his second star initiation in December 2020. He has been consecrating the sacrament for more than ten (10) years. The second line of religious study is the line of Barquinha, taught through the multi-disciplinary teachings of Arca da Montanha Azul, Rio de Janeiro, Brazil, led by Mestre Philippe Bandeira de Mello. Karrel is one of the first non-Brazilians to be initiated within this order. He has been an active, initiated member of this church since July 2018 and has been studying with the church since 2017. Karrel has studied theology and comparative religion since the age of twenty and has lived in an ashram for over thirteen (13) years, studying various religions and spiritual practices, leading retreats, religious ceremonies, and spiritual events. Karrel is also actively practicing and studying Umbandaime, Umbanda, and Candomblé in Brazil with various schools and teachers, one of whom is Professor Pai Sidnei Barreto Nogueira, who leads 'Comunidade da Compreensão e da Restauração Ile Ase Sango', a leading Candomblé temple in São Paulo, Brazil.

15.     Since encountering the sacrament in 2012, Karrel has devoted his life to its religious practice and the study of the different traditions, heritage, and culture that relates to its origins. Karrel has gone through several plant medicine diets in Peru, month-long initiations with Arca da Montanha Azul, has visited the villages of the Huni Kuin tribe, which are located deep in the northern parts of the Brazilian Amazonian jungle, and numerous retreats with different teachers within Santo Daime, Umbandaime, Umbanda, and Candomblé in many different parts of Brazil. At this point in his life, Karrel has participated in over 1,500 ceremonies with the sacrament.

16.     As the Padrinho, the lead pastor of Celestial Heart, Karrel is responsible for teaching and guiding members through the different stages of communion with the sacrament.  He leads the ceremonies and performs the various rituals the faith requires including marriage, baptisms, celebrating holidays, and much more. He also conducts training for the different members as guardians, initiates, and healers, guiding his brothers and sisters in the various stages of their spiritual and religious practice. He leads monthly classes online, teaching the doctrine of the Church and furthering the understanding of the Church's members in the religious practice of its faith. He is also in charge of the Church's website and works full-time in service to the growth and expansion of the doctrine with written articles and materials, the official Church prayer book – Prayerful Heart, the preparation of ceremonies, and live or online classes.

17.     Ayahuasca is an essential sacrament for Karrel, without which he cannot practice his religion or provide services to the Church's members. Given the confiscation and destruction of the Church's sacrament as well as the arrest of his wife, Jade J. Osborne, Karrel is substantially burdened by being forced to choose between following the tenets of his religion or being coerced into acting contrary to his religious beliefs by the threat of civil or criminal sanctions. Despite these threats, Karrel intends to continue possessing and using the Church's sacrament - ayahuasca. Although Karrel has standing to sue on his own, the relief sought by the Church will satisfy his injury-in-fact.

18.     Plaintiff Jade J. Osborne ("Osborne") resides in Tulare, California, with her four daughters and her husband, Karrel. Osborne is a board member of Celestial Heart and serves as a lead pastor

or Madrinha. Osborne received her first Celestial Heart star initiation in February 2020 and her current affiliation to Fraternidade do Coração in December 2022. She has been consecrating the sacrament for more than five (5) years.

19.     Osborne has been working with indigenous tribes in Peru, and Columbian shamans in Costa Rica, and continues her studies in Brazil with Santo Daime, Umbandaime, Umbanda, and Candomblé. It is important for Osborne to continue her studies in order to help hold space for members within the Church, and she continues to do that often.

20.     As the Madrinha and one of the lead pastors of Celestial Heart, Osborne is responsible for teaching and supporting members through the different stages of communion with the sacrament. She offers support inside and outside of the ceremonial setting, specializing in trauma-informed and somatic therapeutic techniques. She has several other key leadership roles in the Church as well.

21.     Osborne has been a member of the Celestial Heart for the past five (5) years, where she studies and practices the lines of Santo Daime and Umbandaime and believes that we are sprit-soul, residing in a human body and that we have arrived in this material form to evolve and fulfill our Divine Mission. The Church and its sacrament, ayahuasca, provide Osborne with a direct connection to God, and Spirit, which brings her a profound and essential space for healing, transformation, and peace.

22.     In the summer of 2020, Osborne was arrested for alleged possession of the Church's sacrament, ayahuasca. The raid and arrest occurred in cooperation with state and federal agents, including the Defendants.  As a result of the chilling effect of her arrest and the continued threat of prosecution, for a certain period of time, Osborne was not able to fully participate in Church activities.

23.     Ayahuasca is an essential sacrament for Osborne, without which she cannot practice her religion. Given the confiscation and destruction of the Church's sacrament as well as her arrest, Osborne is substantially burdened by being forced to choose between following the tenets of her religion or being coerced into acting contrary to her religious beliefs by the threat of civil or

criminal sanctions. Despite these threats, Osborne intends to continue partaking in the Church's sacrament.  Although Osborne has standing to sue on her own, the relief sought by the Church will satisfy her injury-in-fact.

24.     Plaintiff Daniel Pozas ("Pozas") lives in California. Having found the spiritual guidance and growth he had been seeking throughout his life within the faith and teachings of the Church, Pozas decided to become an active member of the Church and later chose to act as a board member as well.  Pozas has found that partaking in the Church's sacrament, ayahuasca, within the ceremonial rituals of the Church has connected him to Spirit and filled his life with meaning, purpose, and love.

25.     Pozas started his religious study of Santo Daime eight (8) years ago. In 2016 he formally become a member of the Santo Daime.  Since becoming a 'Fardado' - a member of the Santo Daime religion and community, Pozas has continued to deepen his studies and traveled to gatherings in North America where elders of the Santo Daime, visiting from Brazil, would offer further teachings.

26.     Pozas met Padrinho Karrel in 2016 and felt a deep admiration for the level and depth of Padrinho Karrel's studies in religion and spirituality, especially the expanded teachings around Santo Daime and Umbandaime. In 2020 this connection to Padrinho Karrel and Celestial Heart became stronger, leading to the decision to become an initiated, starred member of the Church in 2021.

27.     Pozas is one of the lead guardians of the Church, a server of the sacrament, and a practicing healer assisting and helping with carrying out the ceremony, guiding and supporting his brothers and sisters. Pozas also assists with the logistics of running the Church.

28.     Ayahuasca is an essential sacrament for Pozas, without which he cannot practice his religion. Given the confiscation and destruction of the Church's sacrament, as well as the arrest of Osborne, Pozas is substantially burdened by being forced to choose between following the tenets of his religion or being coerced into acting contrary to his religious beliefs by the threat of civil or criminal sanctions. Despite these threats, Pozas intends to continue to use the Church's sacrament

within ceremony. Although Pozas has standing to sue on his own, the relief sought by the Church will satisfy his injury-in-fact.

29.     Plaintiff Sara Mintzer ("Mintzer") lives in California. She is an initiated member and board member of the Church. Mintzer has been a member since January 2021 and was initiated in 2022 after twenty (20) months of study, devotion, and commitment. She studies directly from the teachings of Padrinho Karrel and Madrinha Osborne and follows the teachings of Celestial Heart, Santo Daime, Umbandaime, Umbanda, and Candomblé.

30.     It was not until working with the Church's sacrament in ceremony and the guidance of Padrinho Karrel, that Mintzer found her genuine and authentic connection to God. Partaking in the sacrament within the ceremonial setting has entirely shifted her life and is the reason for such a positive transformation in her relationships, family, and business.

31.     As a starred member of the Church, Mintzer is a direct assistant to the Madrinha and Padrinho, assists in leading the community, is in charge of preparing the physical space for the ceremonies, and helps guide participants in rituals before, during, and after consecrating the sacrament. She assists in managing community communication, organizing gatherings, and with member integrations between ceremonies.

32.     Ayahuasca is an essential sacrament for Mintzer, without which she cannot practice her religion. Given the confiscation and destruction of the Church's sacrament, as well as the arrest of Osborne, Mintzer is substantially burdened by being forced to choose between following the tenets of her religion or being coerced into acting contrary to her religious beliefs by the threat of civil or criminal sanctions. Despite these threats, Mintzer intends to continue to use the Church's sacrament ayahuasca within ceremonies. Although Mintzer has standing to sue on her own, the relief sought by the Church will satisfy her injury-in-fact.

33.     Defendant Merrick Garland is the Attorney General of the United States and the Chief Law Enforcement Officer of the United States. The principal place of business of Attorney General Garland is Washington, D.C.

34.     Defendant Anne Milgram is the Administrator of the U.S. Drug Enforcement Administration, and is responsible for administering and enforcing the Controlled Substances Act. The principal place of business of Administrator Milgram is Washington, D.C.

35.     Defendant Alejandro Mayorkas is the Secretary of the United States Department of Homeland Security and is responsible for border protection through the U.S. Customs and Border Protection and Homeland Security Investigations. The principal place of business of Secretary Mayorkas is Washington, D.C.

36.     At all times relevant to this litigation, all Defendants herein acted in and are sued in their official capacities.

## IV.  STATEMENT OF FACTS

**A.     Interdiction of Celestial Heart's Sacrament Ayahuasca and Arrest of its Member Jade J. Osborne**

37.     In early August, 2021, the Church sent a package via DHL containing its sacramental tea, ayahuasca, to Plaintiff Osborne.  On August 13, 2021, this package was seized first by agents of the Defendant U.S. Department of Homeland Security (hereafter, "DHS"). The package was tested for controlled substances, returning a positive test result for N, N-Dimethyltyptamine ("DMT"), which ayahuasca is known to contain in trace amounts. This confiscation and testing were perpetrated without providing any due process to Plaintiffs before or after their holy tea was seized. Agents of the DHS confiscated the sacrament and sent it to the DHS office in Fresno, California. Subsequently, DHS Special Agent Jim Johnson contacted the Tulare County Sheriff's Department to inform local law enforcement about the seizure and content of the package.

38.     Following DHS' instigation of this case, Tulare County Sheriff's Department Detective William MacElvaine followed up on the DHS contact by investigating Plaintiff Osborne online. Detective MacElvaine's probable cause statement admits that he understood ayahuasca was a, "South American psychoactive brew used in social and ceremonial spiritual medicine among indigenous people."  Despite this clear reference to the spiritual or religious use of ayahuasca, neither the Defendants nor Detective MacElvaine did any research into whether the Church or

Osborne had a religious basis for their use of ayahuasca. Following the execution of a search warrant by Tulare County Sheriff's Department, Plaintiff Osborne was arrested on suspicion of violating California Health and Safety Code § 11377 (possession of any compound or substance containing DMT) and California Health and Safety Code § 11378 (possession of DMT for sale). She was incarcerated following her arrest until such time as she posted bond. Since Plaintiff Osborne's arrest and incarceration, she has not been formally charged with a crime. However, the statute of limitations allows formal charges to be filed any time before September 2, 2024. On information and belief, Plaintiffs' sacred sacramental tea contained in that August 2021 package has been destroyed by state and/or federal law enforcement.

39.     Concurrently, DHS, and its subdivision U.S. Customs and Border Protection ("CBP") have engaged in a pattern and practice of seizing and destroying countless other shipments of sacramental ayahuasca that have come into the United States since 2020. Indeed, following DHS' seizure in this case, agents of DHS instigaed additional criminal investigations and collaborated with state law enforcement agencies to threaten criminal prosecution against Plaintiff Osborne. The increased seizures of ayahuasca in the United States, the prosecution or threatened prosecution of individuals devoted to the religious use of ayahuasca including Plaintiff Osborne, and the specific seizure of the Church's sacrament have a chilling effect on Plaintiffs' ability to practice their religion without fear of persecution resulting in a substantial burden on Plaintiffs' exercise of their religious beliefs.

40.     In addition to the seizure by Defendants of Plaintiffs' sacrament ayahuasca, Defendants are collaborating with state law enforcement in other cases to prosecute churches and their members who use ayahuasca in a religious context. Plaintiffs are aware of several such prosecutions that began with seizures of ayahuasca by DHS, which then led to DEA or other agents of the Defendants collaborating with state law enforcement. Known criminal prosecutions of those using ayahuasca for religious purposes have occurred in Arizona, California, Colorado, Florida, Michigan, New Mexico, New York, Oregon, Tennessee, and Texas.

**B.** **The Church of the Celestial Heart**

41. Celestial Heart was founded by Kai Karrel, who also serves as the Lead Pastor. It has a spiritual council that consists of the teachers it follows within its lineage, especially Sergio Negri of Fraternidade do Coração (São Paulo, Brazil) and Philippe Bandeira de Mello of Arca da Montaña Azul (Rio de Janeiro, Brazil). The Church also teaches that the Daime, ayahuasca herself, serves as a teacher and prophet to those who engage in its sacramental, ceremonial use.

42. The Church primarily follows two lines of Daime - the line of Santo Daime and Mestre Irineu, through Fraternidade do Coração led by Padrinho Sergio Negri and his beloved wife, Madrinha Michele Negri, and the line of Barquinha, through the teachings of Arca da Montanha Azul, led by Mestre Philippe Bandeira de Mello. The Church is also strongly connected to the Huni Kuin indigenous tribe and especially Ninawa Pai da Mata of Novo Futuro, Acre, Brazil. Though the Church has many sources of inspiration and studies with a few other lines, it considers Fraternidade do Coração and Arca da Montanha Azul to be its mother churches. The Church's spiritual council consists of members of these two (2) churches. The Church and its members follow their guidance and direction in the works and facilitation of their ceremonies.

43. The practice and knowledge contained within the Church's faith are attributed to the pastoral leadership team and the initiated or "Starred" members who have completed their extensive training and have taken the mantle of spiritual teaching within the work.

44. Due to their extensive knowledge regarding the Church and its practices, the primary keepers of knowledge are the ceremonial leaders and padrinhos/madrinhas conducting the sacred ceremonies in service to the Church. Without its sacrament ayahuasca, the Church cannot provide essential services to its members. The ceremonies of the Church vary in format depending on the topic or holiday observed at the time; however, all ceremonies within the Church follow a similar protocol: 1) Opening prayer,  2)  Smudging of the participants in honor of the spirit of the smoke and as a preparatory cleansing, 3) sharing of intentions for the ritual by the participants, 4) serving of the sacrament, ayahuasca, 5) one and a half-hour meditation and concentration allowing the sacrament to open and invite participants into the astral, 6) serving of the second cup of the

sacrament, while playing Santo Daime hymns related to serving of the sacrament, 7) offering of invocations to the different Orixas (Umbanda tradition), 8) invocation and prayers for the Angelic Court or the specific Archangel the work revolves around, 9) Prayer of Protection and Invocation to Archangel Michael recited in Portuguese and English, 10) opening of the Angelic Court – invocations to the multitude of angels, Archangels, and  light beings called in for the duration of the ceremony, 11) Within the Angelic Court, the Church leaders read prayers from the Prayerful Heart concerning the different topics the specific ceremony is about, 12) dancing to various Santo Daime hymns in the manner taught by Mestre Irineu using traditional Santo Daime Maracas or shakers, 13) invocation to open the "Mesa Branca" – White Table, which allows mediumship work to commence allowing members to practice direct connection to the divine spirits, 13) closing of the Angelic Court with a specific closing invocation, 14) dedication to the indigenous tribes, the music and atmosphere that will reflect their beauty, song, and teachings, 15) the third and last serving of the sacrament, 16) For the remaining hours of the ritual, Church leaders and members read more prayers, offering healing, teachings, and practices to continue the study of the specific work and, 17) Closing the ceremony with a closing prayer, in following of the Santo Daime and Umbandaime traditions.

45.     The Church has a specific structure to its organization. The Padrinho and/or Madrinha of the Church is an individual who has been extensively trained within the religious lineages the Church follows, i.e., Santo Daime, and Umbandaime.  The Padrinho and/or Madrinha holds a deep understanding of the principles and beliefs of the Church and its foundational doctrine. They have a deep understanding of the Daime, ayahuasca, and the ways it affects human spirituality, human consciousness, and the evolution of the soul. They consistently study the psycho-spiritual effects of sacramental use of the Daime and the multitude of ways to help others navigate the path of awakening and reconnecting to the Divine that is inherent within this work.  They are required to teach, first and foremost, by example, consistent with the Church's teachings, leading a life of utmost integrity and transparency, embodying the highest standards within all areas of their

personal and spiritual lives in a manner that will inspire and uplift their brothers and sisters within the Church.

46.     The pastor/Padrinho/Madrinha must represent the Church in a manner that maintains trust, honor, and respect from everyone, inside and outside of the community. As stated, they teach by example and are required to uphold this standard of living at all times and circumstances.  The pastor/Padrinho/Madrinha are responsible for holding the ceremonial works, leading group prayer and meditation, offer teachings, webinars, and workshops to offer spiritual advancement for members within the Church. They are also responsible for maintaining deep connections with members and participants, allowing the transformative impact of the work to integrate and evolve further.

47.     It is imperative that the pastor/Padrinho/Madrinha are continuously studying and furthering their own initiations within the faith, studying with different teachers, and participating in their workshops and ceremonial work.  After being a part of the ceremonial work for at least one (1) year, members who ask to be initiated into the lineage will go through a special initiation ceremony wherein they will be asked to make four (4) commitments to the faith. The first is the commitment to the previous masters, which means a commitment to study the teachings of the different masters of the Church's line, for example, the Santo Daime hymns of Mestre Irineu and Padrinho Sebastião, the Spiritist doctrine of Alan Kardec, the writings of Chico Xavier and others. The second commitment is to the Daime, ayahuasca. This commitment is to continue to drink the sacrament within the Church, officially taking the Daime as their teacher and religion of choice. The third commitment is to their brothers and sisters within the Church. This commitment is to service, putting others' needs before their own, and living a life of example and inspiration to others. The final commitment is to the Church itself, which means that members are choosing the Church as their primary church and form of religion and holding true to its faith and doctrine.

48.     Initiated Members have gone through the Church's extensive training and, as such, are authorized to serve the sacrament within ceremonies alongside a Padrinho or a Madrinha. They may offer healing, guidance, and support to other members and participants.

49.     The Church also believes that the ayahuasca herself, serves as a divine teacher and prophet to those who engage in its sacramental, ceremonial use.

50.     The Church is based in large part on the doctrine of the Santo Daime, an organization already legally recognized to use ayahuasca as a sacrament in the United States.

51.     The Church teaches that the Daime connects its members to the astral and the divine planes, allowing for direct connection to God and enabling the practitioners to experience a sense of understanding of their place within the Divine Plan.  This offers a sense of meaning and explanation to the different challenges they might face in their lives and a sense of wholeness within the human experience. The Daime reveals the divine teaching of the Creator, teaching eternal, moral, and ethical lessons that allow the practitioners to live a more spiritually centered life.

52.     The two patron saints of the Church are Saint Francis of Assisi and Saint Michael the Archangel.  Following their teachings, members of the Church seek to live their lives with utmost integrity, standing in their weaknesses, having forgiveness be their guiding light, and holding on to faith as their shield of protection. Following the guidance of their patron saints, the Church and its members hold kindness, compassion, and love as their highest aspirations. Every year, between August 15 (the Catholic day of the Assumption for Mother Mary) and until September 29 (the Catholic celebration of Michael-mas, the celebration of Archangel Michael), the members of the Church will practice a month of lent and deep spiritual practice to honor both Archangel Michael and Saint Francis whose birthday is celebrated on September 26. At the end of this lent, members who have asked to receive their Star Initiation and have been approved by the Padrinho and Madrinha will receive their initiation within ceremony.

53.     Celestial Heart teaches that the Daime: 1) allows for a profound transformation within the Church's members, guiding them to a deeper sense of self-love and acceptance, 2) brings about a profound transformation in the members' relationship with nature, promoting better care and guardianship of Mother Earth, 3) allows members to see that at the physical death of our body, our soul carries on, and the experience of spiritual realms and the ability to navigate these states of

consciousness is of great assistance in the moment of transition and, 4)  is an ancient spiritual sacrament that goes back thousands of years among indigenous people in South America, and the Church and its members are part of that unbroken lineage and engage in their practices with the blessings of their indigenous spiritual leaders.

54.     According to the Celestial Heart doctrine, ayahuasca teaches its members to relate to others regardless of their race, gender, color, shape, and sexual orientation. Equality, compassion, and love for all beings are foundational teachings within the Celestial Heart faith. The Church's doctrine holds that the ayahuasca sacrament and its spirit teach members never to take advantage of others, whether emotionally, sexually, mentally, financially, spiritually, or physically before, during, or after our ceremonies. Other core concepts from the doctrine include forgiveness, conscious effort or action, environmental sustainability, and gratitude for life itself.

55.     The Church's doctrine teaches that its sacrament is divinate, meaning it has been bestowed upon humanity in a Divine manner, meant to awaken and bring about reconnection to Great Spirit. Church doctrine teaches that its sacrament, ayahuasca is Divine in itself. Church doctrine teaches members to relate to the sacrament as the spirit of Mother Earth and esoterically as the sacramental blood of Christ.  Paraphrasing the Catholic priest, Thomas Aquinas - to those who have drunk of the sacrament, no explanation is necessary; to those who did not, no explanation will suffice. Partaking with the Daime is an essential and foundational practice within the Church's faith and is required in order to bring about this Divine reconnection, the awakening of the soul, and as a means to receive the teachings the sacrament and the astral planes hold.

56.     The Church's doctrine teaches that through the ceremonial use of its sacrament, members commune with their ancestors, their higher selves, their guardian angels, guides, mentors, and the spirit of Mother Earth. Through this communion, profound moral and ethical lessons are transmitted through which deep healing occurs, allowing Church members to process or release unresolved karma, complete broken promises, heal trauma and come to an understanding of the individual's purpose in life, the primary calling to fulfill their Divine mission.

57.    The Church's doctrine teaches that its sacramental ceremonies allow for a profound transformation within its members, guiding them to a deeper sense of self-love and acceptance, which in turn leads to living fulfilled lives, becoming better parents, partners, friends, and stewards of change, and healing for planet Earth.

58.    The Church's doctrine teaches that as the members study Umbanda and African animism, the study of personifying the forces of nature allows them to feel more connected to their surroundings. The Church's sacrament, the Daime tea, helps members see that, for example, more than stepping into the ocean, they are bathing in Iemanja, the Goddess of the ocean, offering oceans of love, comfort, and support. This approach brings about a profound transformation in our relationship with mother nature. This practice encourages members to be active participants in the healing process of life itself. As such, the Church has rituals and practices that promote better care and guardianship of Mother Earth.

59.    The Church's doctrine teaches that its sacrament allows members to see and experience that they are spirit-soul encased within a material human body. As such, they came to this life to evolve and experience lessons that further them in their spiritual evolution. The Church's doctrine teaches that at the physical death of the body, the soul carries on, and the experience of spiritual realms and the ability to navigate these states of consciousness is of great assistance in the moment of transition. The Church has found that its members are better equipped to handle the passing of loved ones and face their own mortality as they have direct experience of their soul and its eternal condition. Within the Church's ceremonies, it often dedicates prayer and attention to connecting to loved ones who have passed, allowing its members to let go of grief, fear, and anxiety. The Church's doctrine teaches that an essential part of this work revolves around understanding the causality of our past lives and their effect on our present and future. Understanding the lessons, we have come here to learn and make better choices to empower our growth.

60.    Celestial Heart, its founders, staff, and members are committed to practice and serve in ways that cultivate harmony, unity, and compassion. This code of ethics is offered as a living document that grows and expands, adapting to the ongoing evolution of the Church and the

feedback of its community. This code of ethics results from following the teachings of the Church's doctrine and the wisdom that comes from the practice itself.

61.     The Church takes measures to maintain responsible control over its sacred medicine. The use of ayahuasca outside of a ceremonial setting is sacrilegious and offensive to the Church's values. The sacramental nature of ayahuasca requires utmost care. Much like the sacrament of Christian Holy Communion, the Church keeps its sacrament safe both from possible theft and from unharmonious energies. Handling of ayahuasca follows reverent ceremonial protocols. The Church's ayahuasca sacrament is brewed by Church members or affiliates in a sacred manner. Obtaining the sacrament from these sources is a crucial part of the Church's practice.

62.     At any given time, the Church possesses a quantity of ayahuasca sufficient for its congregation, currently held in a safe location, in a locked refrigerator. The Church's ayahuasca may only be handled by Church leadership. The Church engages in practices to track the quantity of ayahuasca consumed, ensuring no one has access to its ayahuasca outside of the ceremonial setting, and for the proper disposal of any unused or spoiled sacrament.

63.     The Church has protocols for both medical and psychological intakes for all members to ensure they do not experience any physical or mental harm from the use of the sacrament.  These protocols include, but are not limited to, intensive screening of members, a review of medical history including any medication or supplements used, a review of psychological history to insure that members have no psychological conditions that might be triggered by partaking of the sacrament, extensive preparation prior to ceremony, strict supervision during ceremony and, post ceremony integration as well as maintaining contact with members between ceremonies in case any reassessment is required.

64.     As stated herein, Celestial Heart is a genuine religion.  Its members have sincere beliefs based upon the Church's doctrine, and ayahuasca is an essential sacrament of the Church without which the Church cannot provide essential services, and its members cannot practice their religion.

**C.     The Nature of Ayahuasca**

65.     For thousands of years, a sacred tea called ayahuasca has been brewed by indigenous tribes

in the Amazon region of South America and used for sacramental and healing purposes. Ayahuasca is a sacred tea made from the woody material of *Banisteriopsis caapi* and *Psychotria viridis*. Ayahuasca tea contains trace amounts of N,N-dimethyltryptamine (DMT)[1] in the *Psychotria viridis* plant only, a chemical listed on the Controlled Substances Act ("CSA"), and ensuing regulations. 21 U.S.C. § 801 *et seq.*

66.     The CSA, however, does not list the *Psychotria viridis* plant as a controlled substance because the scientific evidence establishes that the DMT contained therein is not in a form with a "high potential for abuse." In addition to not listing the *Psychotria viridis* plant as a controlled substance, and in spite of repeated requests to comment on the subject, Defendants have never communicated in any form that they consider the *Psychotria viridis* plant a controlled substance or that the plant is a substance with a "high potential for abuse." Celestial Heart's sacred ayahuasca tea is a natural, organic non-synthetic sacrament that is ingested orally, and the processes that occur in the digestion of the DMT in this natural form ensure that the DMT is not and cannot become a substance with a "high potential for abuse."

67.     Ayahuasca is an ancient plant sacrament or medicine[2] among approximately 130 indigenous tribes of South America, each having developed a deep and profound knowledge of methods of working with this very special decoction. Anthropological data suggests ayahuasca may have been in use for several thousand years. It is traditionally consumed in a ceremonial context overseen by shamans or medicine carriers who have trained for many years to manage the experience of ayahuasca ceremony safely and to guide others through its healing effects.

68.     The making of Celestial Heart's sacramental ayahuasca tea is a highly ritualized sacred

---

[1] As does every mammal including humans. This means that every human is guilty of possession giving DEA's interpretation of the CSA.

[2] The term "medicine" as it is used by indigenous people is not used in the same manner as it is in western cultures. In this Complaint 'medicine' refers to anything which can be used for healing including plants, songs, prayers, and personal experiences. In indigenous worldview and that of Celestial Heart members and leaders, there is no meaningful distinction between medicine and sacrament as plant medicines are sacred and sacraments which address the interconnected realms of physical and spiritual health.

practice. The preparation of the sacramental tea requires the intensive labor of many people and is highly time-consuming. In preparation, each and every leaf is washed by hand, and each branch of vine is washed, scrubbed, and prayed upon. The vine and the leaves are boiled in water for many hours in a highly structured ceremony undertaken in prayer. Celestial Heart considers the loss of any of the tea a sacrilege and takes great pains to protect it from diversion and to have it available for only very limited and specific use. The process of brewing the sacrament is very laborious and requires days and weeks of hard work and dedication.

69.     Ayahuasca is not a recreational substance, since its effects are challenging and profound. The predominant effects include deep spiritual visions and a strong feeling of connection with the Divine source. Challenging but non-life-threatening effects also occur including vomiting, nausea, and physical discomfort. This is known as "La Purga" ("the purge") which benefits the participant by aiding in the ejection of spiritual and psycho-spiritual material from their body-mind. While potent, it is proven to be quite safe.

70.     Over the last fifty (50) years, ayahuasca's religious use has migrated from the Amazon to the United States where its consumption during religious exercise is safely, legally, and freely practiced by congregants of Santo Daime and União do Vegetal (hereafter, "UDV") churches. These two (2) churches are syncretic religions that emerged from the indigenous peoples of Brazil and combined with local Christian culture, eventually making its way to the United States in the last fifty (50) years or so. These two (2) churches have been practicing safely and continuously in the United States for well over twenty (20) years, involving thousands of practitioners. Due to strict inventory control, there have been no reports of recreational use or other types of diversion. Due to medical and psychological screening as well and monitoring during and after ceremonial use of ayahuasca, there have been few incidents of any reported adverse reactions - far fewer per capita than from the use of over-the-counter medication or supplements.

71.     This case arises out of the Church's contemporary religious use of ayahuasca in the United States, originating from the traditional ceremonial use by the Indigenous people of South America and as later adopted by the Santo Daime and other syncretic religions of South America. The

practices of the Church are comparable to those of the Santo Daime and UDV, which already have formal recognition in the United States.

**D.      Ayahuasca's Status as a Schedule I Controlled Substance and Comparison with Other Nations**

72.      As stated herein, ayahuasca is produced by combining *Banisteriopsis caapi* and *Psychotria viridis*. Neither *Psychotria viridis* nor *Banisteriopsis caapi* are mentioned in the CSA. DMT is present in minute amounts in *Psychotria viridis*, but no substance listed in the CSA exists in *Banisteriopsis caapi*.  DMT, as well as "any material, compound, mixture, or preparation, which contains any quantity of [DMT]," is listed in CSA § 812(c), Schedule I(c). Thus, ayahuasca is a sacrament that could subject a religious adherent to serious criminal and civil penalties. DMT exists naturally in every mammal, including humans.

73.      The word "ayahuasca" is not mentioned in any international drug control treaty by name. The International Narcotics Control Board, the controlling agency enforcing the 1971 Convention on Psychotropic Substances, has stated unequivocally that ayahuasca is not among the drugs covered by the Convention, stating:

> At present, no plants, including the ones containing psychoactive ingredients, are controlled under the 1971 Convention, although the active ingredients they contain are sometimes subject to international control. For example, cathine and DMT are psychotropic substances included in Schedule I of the 1971 Convention, while the plants and plant-based preparations that contain them, namely khat and ayahuasca, respectively, are not subject to any restrictions or control measures.   Report of the International Narcotics Control Board, (2012).

In addition, in Brazil, ayahuasca has been fully legal since 1992. Other countries that have fully legalized ayahuasca are Peru, Bolivia, Columbia, Costa Rica, Italy, Mexico, and Romania. Ayahuasca has been legalized for ceremonial use in Ecuador, and decriminalized in Portugal.

**E.      History of Recognition of the Legal Use of Ayahuasca**

74.      In 2006, the Supreme Court unanimously ruled that the religious organization UDV had

the right to use ayahuasca as a religious sacrament in the United States under the RFRA.[3]   The UDV filed a declaratory and injunctive action, alleging, inter alia, that applying the CSA to its sacramental tea use violated the RFRA, 42 U.S.C. § 2000bb *et seq*.  The U.S. Court of Appeals for the Tenth Circuit affirmed the granting of relief based on the Government's failure to demonstrate a compelling interest justifying a complete ban on the importation and religious use of the ayahuasca tea used by the UDV.

75.     Members of the UDV received communion by drinking ayahuasca which they call "Hoasca," a tea brewed from plants from the Amazon rainforest that contained a trace amount of a hallucinogen regulated under Schedule I of the CSA, 21 U.S.C. § 812(c), (Sched. I(c)). The Government conceded that the challenged application would substantially burden a sincere exercise of religion but argued that this burden did not violate the RFRA because applying the CSA was the least restrictive means of advancing three (3) compelling governmental interests: protecting the church members' health and safety, preventing the diversion of Hoasca from the church to recreational users, and complying with the 1971 United Nations Convention on Psychotropic Substances. The Supreme Court held that the UDV had effectively demonstrated that its sincere exercise of religion was substantially burdened but that the Government failed to demonstrate that the application of the burden to the church would, more likely than not, be justified by the asserted compelling interests. Congress' placement of DMT under Schedule I simply did not relieve the Government of the obligation to shoulder its burden under the RFRA. As a result of the Court's ruling, the Government defendants abandoned their attempt to prevent the importation, distribution, and ingestion of ayahuasca through a settlement agreement. Thus, the U.S. Supreme Court has clearly recognized that the sincere religious use of ayahuasca – such

---

[3]  *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcrop*, 282 F. Supp. 2d 1236 (D. N.M., 2002), aff'd, *Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal*, 546 U.S. 418 (2006)("UDV"). See also *Church of the Holy Light of the Queen v. Mukasey*, 2008 U.S. Dist. LEXIS 102990 *; *Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210; *Church of the Holy Light of the Queen v. Holder*, 443 Fed. Appx. 302 *; 2011 U.S. App. LEXIS 14710 *

as Celestial Heart's practices – are protected from the general applicability of the CSA and related laws interfering with the importation and use of ayahuasca.

76.     Shortly after the Supreme Court ruled in favor of the UDV, a congregation of the Santo Daime Church, the Church of the Holy Light of the Queen ("Santo Daime"), obtained similar recognition that the sincere religious use of ayahuasca is a protected practice under the RFRA. *Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210 (D. OR 2009). The Government did not challenge the district court's conclusion that an outright prohibition on the importation of Daime tea (another name for ayahuasca tea) by Santo Daime violates the RFRA. Instead, the Government only challenged the scope of the district court's injunction, which in part enjoined the Government from enforcing certain regulations and corresponding statutory provisions set forth in the CSA. The Ninth Circuit vacated the injunction and remanded the case back to the lower court.  *Church of the Holy Light of the Queen v. Holder*, 443 Fed. Appx. 302. The remand resulted in a one-sentence order from the Oregon District Court, which reads, "Defendants [the government] are enjoined from prohibiting plaintiffs' importation, storage, distribution, and use of Daime [ayahuasca] tea for plaintiffs' religious ceremonies." *Church of the Holy Light of the Queen v. Holder*, Second Amended Judgment of Owen M. Panner, 1:08-cv-03095-PA (2012). The Government did not appeal this order, again acknowledging there is no basis in law to substantially burden the sincere religious use of ayahuasca.

77.     Courts have determined that differences in theology are a tenuous basis for selectivity in governmental accommodations. A selective accommodation would effectively give the UDV or Santo Daime a competitive advantage over Celestial Heart in the religious "marketplace" of ideas. With regard to the factual and legal issues in this case, Celestial Heart is similarly situated to the UDV and especially Santo Daime. In the both the UDV and Santo Daime cases, the courts held that the federal defendants failed to establish that the government had a compelling interest in preventing the importation, distribution, and ingestion of ayahuasca as the sacrament of the churches at religious ceremonies.  In the both the UDV and Santo Daime cases the government failed to establish that the tea was dangerous to the health of the members or to the public, or that

it was likely that the tea would be diverted to illicit consumption.

**F.      Celestial Heart is Similarly Situated to the UDV and Santo Daime**

78.      There is no appreciable difference between Celestial Heart in the instant case and the congregations of the UDV and Santo Daime. Plaintiffs herein are a church and spiritual community arising out of indigenous beliefs, rituals, and pathways blending with other cultures to give rise to an emergent religion. Like the UDV and Santo Daime, the elders of the Church have received what they experience as divine guidance and direction with respect to the establishment of the Church and its mission. Like the UDV and Santo Daime, the tenets of the Church encompass spiritual matters as well as guidance on how to live a good life on earth. Like the UDV and Santo Daime, the Church regards ayahuasca as the quintessential sacrament that helps to connect each of its members to the Divine and guide them toward a harmonious and spiritual relationship with all of Creation. Like the UDV and Santo Daime, the elders of the Church care for its sacrament with impeccability and respect. Like the UDV and Santo Daime, the Church protects its sacrament from sacrilege, desecration, and diversion.

**G.      There is No Compelling Interest Prohibit the Church's Use of its Sacrament**

79.      Defendants have no compelling interest to prohibit the importation of the sacramental tea of the Celestial Heart, or it use by the Celestial Heart during its religious ceremonies. Even if Defendants had some theoretical compelling interest, which they do not, prohibiting the Celestial Heart and its members from importing, distributing and ingesting their sacrament certainly could not be considered the most narrowly tailored means to achieve any compelling government interest.

80.      Neither the UDV nor Santo Daime, nor any other organization, has been able secure its constitutional and statutory right to serve its sacrament through voluntary, nonlitigation, engagement with the Drug Enforcement Administration ("DEA").

81.     In the past few years, there has been a notable increase in the number of interdictions of ayahuasca coming from South America, raids and arrests of people using ayahuasca.[4]

82.     The continuing threats of prosecution and threats to seize Celestial Heart's sacramental tea in the United States has had the effect of chilling Plaintiffs' rights as United States citizens to practice their religion without fear of reprisals amounting to a substantial burden on the practice of their religion.

83.     At all times relevant to this litigation, Defendants acted in their official capacities. At all times relevant to this Complaint, Defendants engaged in the illegal acts complained of herein to the injury of Plaintiffs and deprived Plaintiffs of their rights, privileges and immunities secured to them under the RFRA.

84.     The actions of Defendants in ceasing seizing and destroying Celestial Heart's sacramental tea and implicit threatening to prosecute Plaintiffs serves no compelling government interest and are not the least restrictive means to protect any colorable government interests.

85.     The actions committed by Defendants were calculated to and in fact, have punished Plaintiffs from exercising the rights provided to them by Congress under the RFRA.

86.     The illegal government actions complained of herein were taken willfully and without Defendants undertaking a review of their legal responsibilities prior to engaging in the illegal acts set forth above.

87.     The illegal government actions complained of herein were and are geared to intimidating and thereby preventing Plaintiffs from practicing their sincerely held religious beliefs and engaging in the sacrament of the Church.

88.     The acts complained of herein were undertaken by Defendants in excess of any authority conferred on them under the RFRA.

---

[4]     https://Chacruna.net/sacred-plant-law-enforcement-arrests-increasing/. (Last visited November 2, 2021

Complaint

89.     Plaintiffs have no adequate remedy at law and will continue to suffer irreparable injury and harm unless Defendants are enjoined by this Court from taking any further action against Plaintiffs.

## V.  LEGAL STANDARDS

90.     Plaintiffs brought this action to enjoin Defendants, who have no compelling justification, from substantially burdening Plaintiffs' religious exercise. Defendants' actions are unlawful as applied to Plaintiffs in that they violate the RFRA because they are a substantial burden on an essential mode of worship that is part of Plaintiffs' religion.

91.     To establish a *prima facie* claim under the RFRA, a plaintiff must show that, "the activities the plaintiff claims are burdened by the government action must be an 'exercise of religion'" and "the government action must 'substantially burden' the plaintiff's exercise of religion." *Navajo Nation v. U.S. Forest Serv.,* 353 F.3d 1058, 1068 (9th Cir. 2008) (quoting 42 U.S.C. § 2000bb-1(a)). Where a plaintiff has established these elements, "the burden of persuasion shifts to the government to prove that the challenged government action is in furtherance of a 'compelling governmental interest' and is implemented by 'the least restrictive means.'" *Navajo Nation* at 1068 (quoting 42 U.S.C. § 2000bb-1(b)). See also *Oklevueha Native Am. Church of Haw., Inc. v. Lynch* ("*Oklevueha II*"), 828 F.3d 1012, 1015 (9th Cir. 2016), *cert. denied,* 2016 U.S. LEXIS 7200 (2016), quoting *Navajo Nation,* 535 F. 3d. at 1068.

92.     Ayahuasca is an essential sacrament for Plaintiffs without which they cannot practice their religion. Without its sacrament, the Church cannot perform essential services and the members are deprived of their religious freedom. Ayahuasca is central and indispensable to Plaintiffs' religious practice. By depriving Plaintiffs of their sacrament, Defendants are substantially burdening Plaintiffs. Compelling a party to forego a religious practice imposes a substantial burden on that party. *See Hobbie v. Unemployment Appeals Comm'n*, 480 U.S. 136, 140-41 (1987). If wine were added to Schedule I with no accommodation for religious use, and shipments interdicted, it would be absolutely clear that the free exercise of Catholicism and Judaism was being substantially burdened.

93.    The Church and its members' essential religious practice has been substantially burdened by Defendants. As such, the rights which Plaintiffs assert are within the zone of interests to be protected by the RFRA. Plaintiffs are aware of the history of past seizures of ayahuasca, prosecutions, and enforcement actions, as well as Defendants' collaboration with State and local law enforcement authorities. These actions have had a chilling effect on Plaintiffs' exercise of their statutory rights to practice their religion without fear of raid, arrest, prosecution, seizure, and forfeiture of their property, and substantially burden Plaintiffs' religious freedoms guaranteed by the RFRA.

94.    The interdiction, destruction and continued prohibition of the Church's sacrament and continued threat of interdiction and destruction are concrete, particularized, actual, not conjectural or hypothetical, injuries sufficient for standing under Article III.  Plaintiffs have suffered injury-in-fact, both financially and spiritually, because of the loss of their sacrament and because of Defendants' continued denial of Plaintiffs' right to obtain, possess, and use it as well as Defendants' collaborations with local law enforcement to prosecute sincere religious use of ayahuasca.

95.    In addition to being deprived of their essential sacrament, Plaintiffs have suffered a concrete injury in fact by Defendants' destruction of the tea, a conscious spiritual being in the belief of Plaintiffs.  Beyond the injury of physical destruction, Plaintiffs have also endured spiritual and emotional suffering, knowing that the spirit of ayahuasca has been destroyed in a sacrilegious manner. Without their sacrament, Plaintiffs cannot practice their religion. Under the RFRA, the deprivation of Plaintiffs' sacrament is, *vel non*, sufficient to confer standing.

96.    The injury suffered by Plaintiffs is directly traceable to Defendants' seizure, instigation of and collaboration with a local law enforcement arrest, sacrilegious destruction, and continued prohibition of Plaintiffs' sacrament. Defendants' arrest of Plaintiff Osborne and continued prohibition constitute the requisite causation of Plaintiffs' injury.

97.    Plaintiffs have already faced an enforcement action, which resulted in the confiscation and the sacrilegious destruction of their sacrament and the arrest of one of its members. The CBP has

made clear threats of prosecution and warnings that future shipments will be seized and destroyed. There is no question that the actions of the CBP present an imminent threat of prosecution, and that future shipments will be interdicted and destroyed.

98.     The relief sought by Plaintiffs will redress the injury. In the UDV case, the district court entered a preliminary injunction prohibiting the Government from enforcing the CSA with respect to the UDV's importation and use of ayahuasca. *O Centro Espirita Beneficente União Do Vegetal v. Ashcroft* ("*O Centro I*"), 282 F. Supp. 2d 1236 (D.N.M. 2002). In the Santo Daime case, *Church of the Holy Light of the Queen* ("*CHLQ*") *v. Mukasey*, 615 F. Supp. 1210 (D. Or. 2008), Judge Panner issued an order which stated: "Defendants are enjoined from prohibiting plaintiffs' importation, storage, distribution and use of Daime tea for plaintiffs' religious ceremonies." That order was not appealed by the Government. This Court can grant similar relief to Plaintiffs without the need for Plaintiffs to endure the DEA's significantly more restrictive exemption process.

99.     Defendants have substantially burdened the Church and its members' practice of religion. The issue is not whether petitioning the DEA for an exemption from the CSA imposes a substantial burden but whether the confiscation, destruction and prohibition of Plaintiffs' sacrament and the continued threat of these are a substantial burden. In the UDV case the Government conceded that applying the CSA would substantially burden the sincere exercise of religion by the UDV. See *O Centro I* at 1252. Similarly in the Santo Daime case, Judge Panner held: "It is obvious that prohibiting the use of Daime tea would substantially burden the exercise of plaintiffs' religion." *CHLQ* at 1219.

## VI. CLAIM FOR RELIEF

### (Religious Freedom Restoration Act)

100.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 99 above as though more fully set forth herein.

101.     The actions of Defendants in the confiscation and destruction of Celestial Heart's sacramental tea, the arrest of one of its members, and continuing threats to confiscate the sacrament ayahuasca and to prosecute other members of Celestial Heart who in the future attempt to worship

according to the central tenets of their religion, violate Plaintiffs' religious freedom under the RFRA, 42 U.S.C. §§ 2000bb-2000bb(4).

## VII. PRAYER FOR RELIEF

102.    Plaintiffs have no adequate remedy at law and will continue to suffer irreparable injury and harm unless Defendants are enjoined by this court from taking any further action against Plaintiffs.

103.    The balance of the equities weighs in favor of an injunction preventing Defendants from further interfering with Plaintiffs' religious conduct.

104.    Injunctive relief is reasonably necessary to protect Plaintiffs' constitutional right to equal protection of the law.

105.    Plaintiffs will suffer irreparable harm without injunctive relief.

106.    Plaintiffs seeks declaratory and injunctive relief against Defendants as follows:

a.    A Declaratory Judgment that the actions described in this Complaint violated Plaintiffs' rights under the RFRA.

b.    A Declaratory Judgment that Defendants' actions described in this Complaint, including the interception of Celestial Heart's sacramental tea, the continuing threat of prosecution of Plaintiffs and Celestial Heart's members in the United States who wish to engage in taking the sacrament, violate the RFRA, 42 U.S.C. § 2000bb-2000bb(4).

c.    A preliminary and permanent injunction enjoining Defendants from arresting, prosecuting, or threatening Plaintiffs and members of Celestial Heart with arrest, prosecution and or imprisonment for importing, distributing, possession, and ingesting Celestial Heart's sacramental tea solely at Celestial Heart services.

d.    An Order that within thirty (30) days after the date of issuance of declaratory relief, the parties present this Court with a plan to effectuate the importation, distribution, possession, and accounting for Celestial Heart's sacramental tea consistent with the rights of Celestial Heart's members to use their sacramental tea in ceremonies.

1        e.       An Order awarding Plaintiffs' attorney's fees, costs, and expenses pursuant to the

2 Equal Access to Justice Act, 5 U.S.C. § 4504 and the Civil Rights Attorneys Fees Award Act of

3 1976, 42 U.S.C. § 1988.

4        f.       For such other and further relief as the Court may deem just and proper.

5 DATED:  April 6, 2023           Respectfully submitted,

LAW OFFICE OF JACK SILVER

By:   /s/ Jack Silver
       Jack Silver

McALLISTER LAW OFFICE, P.C.

By:   /s/ Sean T. McAllister
Sean T. McAllister

Attorneys for Plaintiffs:
The Church of the Celestial Heart, a California
Religious Corporation, Kai Karrel, Jade J. Osborne,
Daniel Pozas and Sarah Mintzer

Complaint