BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
BRIGHAM J. BOWEN
Assistant Branch Director
SARAH M. SUWANDA
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 305-3196
E-mail: sarah.m.suwanda@usdoj.gov

*Counsel for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| The Church of the Celestial Heart, a California Religious Corporation *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>Merrick Garland *et al.*,<br><br>Defendants. | Case No. 23-cv-545-ADA-SAB<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>DATE:    August 21, 2023<br>TIME:    1:30 p.m.<br>COURT:  Courtroom 1, 8th Floor<br>JUDGE:  Hon. Ana de Alba |

1

## **TABLE OF CONTENTS**

INTRODUCTION..................................................................................................... 1

BACKGROUND...................................................................................................... 2

    A.    Statutory and Regulatory Background........................................ 2

    B.    Factual Allegations and Procedural History ............................. 4

LEGAL STANDARDS ............................................................................................ 5

ARGUMENT ........................................................................................................... 5

    I.    The Complaint Should Be Dismissed for Lack of Standing.................................. 6

    A.    Plaintiffs Fail to Allege Any Genuine Threat of Imminent Prosecution. ........................................................................ 6

    B.    Any Genuine Threat of Imminent Prosecution Would Not Be Fairly Traceable to the Federal Agency Defendants. ......................................... 9

    C.    Plaintiffs Fail to Demonstrate Associational Standing. ........................... 10

    II.    The Complaint Should Be Dismissed for Failure to State a Claim. .................... 11

    A.    The Complaint's Factual Allegations Undermine Plaintiffs' Claim of Substantial Burden............................................................. 11

    B.    Plaintiffs Fail to Allege that Applying for the Requisite DEA Religious Exemption Constitutes a Substantial Burden. ........................ 13

    III.    Plaintiffs Should Seek an Exemption from DEA in the First Instance. .............. 15

CONCLUSION...................................................................................................... 17

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

ii

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Johnson*,
  355 F.3d 1179 (9th Cir. 2004) ................................................. 5

*Ariz. Yage Assembly v. Barr*,
  No. 3:20-cv-03098-WHO, 2020 WL 5629833 (N.D. Cal. Sept. 21, 2020) ........................9, 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................. 5, 7

*Ass'n of Pub. Agency Customers v. Bonneville Power Admin.*,
  733 F.3d 939 (9th Cir. 2013) .............................................. 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................. 5, 7

*Cetacean Cmty. v. Bush*,
  386 F.3d 1169 (9th Cir. 2004) .............................................. 10

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) .............................................. 8

*Gonzales v. O Centro Espirita Beneficente União do Vegetal*,
  546 U.S. 418 (2006) ...........................................3, 10, 11, 14

*Hunt v. Wash. State Apple Adver. Comm'n*,
  432 U.S. 333 (1977) .............................................. 10

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) .............................................. 5

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .............................................. 6, 9

*McCarthy v. Madigan*,
  503 U.S. 140 (1992) .............................................. 16

*McKart v. United States*,
  395 U.S. 185 (1969) ..............................................16, 17

*Morrison-Knudsen Co. v. CHG Int'l, Inc.*,
  811 F.2d 1209 (9th Cir. 1987) .............................................. 16

*Navajo Nation v. U.S. Forest Serv.*,
  535 F.3d 1058 (9th Cir. 2008) ...........................................11, 12, 13

*Nelsen v. King Cnty.*,
  895 F.2d 1248 (9th Cir. 1990) .............................................. 8

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

*Oklevueha Native Am. Church of Haw., Inc. v. Holder*,
   676 F.3d 829 (9th Cir. 2012) ........................................................................8, 16

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) .............................................................................................. 8

*Perkel v. U.S. Dep't of Justice*,
   365 F. App'x 755 (9th Cir. 2010) ....................................................................... 17

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ......................................................................... 5, 9

*San Diego Cnty. Gun Rights Comm. v. Reno*,
   98 F.3d 1121 (9th Cir. 1996) ............................................................................... 6

*Simon v. E. Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976) .............................................................................................. 9

*Soul Quest Church of Mother Earth, Inc. v. Att'y Gen.*,
   No. 6:20-cv-701-WWB-DCI, 2022 WL 1131202 (M.D. Fla. Mar. 4, 2022) ......................... 15

*Thomas v. Anchorage Equal Rights Comm'n*,
   220 F.3d 1134 (9th Cir. 2000) ....................................................................6, 7, 10

*United States v. California Care Corp.*,
   709 F.2d 1241 (9th Cir. 1983) ......................................................................16, 17

*United States v. Christie*,
   825 F.3d 1048 (9th Cir. 2016) ........................................................................... 14

*United States v. Friday*,
   525 F.3d 938 (10th Cir. 2008) ........................................................................... 14

*United States v. Hugs*,
   109 F.3d 1375 (9th Cir. 1997) ............................................................................. 9

*United States v. Manneh*,
   645 F. Supp. 2d 98 (E.D.N.Y 2008) ................................................................... 14

*United States v. Tawahongva*,
   456 F. Supp. 2d 1120 (D. Ariz. 2006) ................................................................ 14

*United States v. Winddancer*,
   435 F. Supp. 2d 687 (M.D. Tenn. 2006) .............................................................. 9

*W. Radio Servs. Co. v. Qwest Corp.*,
   530 F.3d 1186 (9th Cir. 2008) ........................................................................... 16

*W. Watersheds Project v. Kraayenbrink*,
   632 F.3d 472 (9th Cir. 2011) ............................................................................. 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iv

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

**Statutes**

21 U.S.C. § 801 ........................................................................................................ 2

21 U.S.C. § 812 ........................................................................................................ 2

21 U.S.C. § 823 ..................................................................................................... 2, 3

21 U.S.C. § 880 ........................................................................................................ 3

21 U.S.C. § 958 ..................................................................................................... 2, 3

42 U.S.C. § 2000bb-1 ............................................................................................ 10

**Regulations**

21 C.F.R. § 1301.01–1301.52 .................................................................................. 2

21 C.F.R. § 1301.71–1301.76 ............................................................................. 3, 16

21 C.F.R. § 1301.90–1301.93 .................................................................................. 3

21 C.F.R. § 1304.21–1304.22 ............................................................................. 3, 16

21 C.F.R. § 1312.11-1312.14 .................................................................................. 2

21 C.F.R. § 1316.01–1316.13 .................................................................................. 3

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................................ 5, 8

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 8, 13

Fed. R. Evid. 201 .................................................................................................... 8

**Other Authorities**

*Ariz. Yage Assembly v. Garland*,
   No. 2:22-cv-2373-ROS (D. Ariz. May 15, 2022) ................................................. 7

*Church of the Eagle & the Condor v. Garland*,
   No. 2:22-cv-1004-SRB (D. Ariz. June 9, 2022) .................................................. 7

*Church of the Holy Light of the Queen v. Holder*,
   No. 08-cv-03095 (D. Or. Sept. 5, 2008) ........................................................... 15

DRUG ENF'T ADMIN., DIVERSION CONTROL DIV., EO-DEA007, GUIDANCE REGARDING
   PETITIONS FOR RELIGIOUS EXEMPTION FROM THE CONTROLLED SUBSTANCES ACT PURSUANT
   TO THE RELIGIOUS FREEDOM RESTORATION ACT (REVISED) (Nov. 20, 2020),
   https://perma.cc/3PER-K3L9 ........................................................................... 3

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

Gov't Mot. to Dismiss, *Oklevueha Native Am. Church of Haw., Inc. v. Holder*,
676 F.3d 829 (9th Cir. 2010) ............................................................................................ 15

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

# **INTRODUCTION**

Plaintiffs—an alleged ayahuasca church and its members—have sued Defendants claiming that the U.S. Drug Enforcement Administration ("DEA") has barred them from handling ayahuasca, a tea that contains the controlled substance N,N-Dimethyltryptamine ("DMT").[1]  DEA has done no such thing.  It has not taken or threatened any enforcement action against Plaintiffs regarding their use of ayahuasca, which Plaintiffs allege continues unabated.  Rather, DEA has invited religious claimants, which Plaintiffs purport to be, to seek an exemption from the Controlled Substances Act ("CSA") for the allegedly religious handling of controlled substances.  Plaintiffs, however, have not asked DEA for the exemption they now assert that this Court must order DEA to grant.  The Court should reject Plaintiffs' attempted end-run around the CSA for the following three reasons.

*First*, Plaintiffs lack standing to bring their claim.  Their purported fears of future federal prosecution—which are primarily supported by alleged action by *state* actors—lack foundation, and in any event, cannot be traced to Defendants' alleged actions.

*Second*, in addition to this jurisdictional defect, Plaintiffs' claim for relief under the Religious Freedom Restoration Act ("RFRA") must be dismissed because they do not adequately allege that DEA has substantially burdened their alleged religious practices.  Indeed, Plaintiffs allege no burden imposed by Defendants with respect to their continued use of ayahuasca.  By Plaintiffs' own account, they continue to import and use ayahuasca with impunity.  Nor have they alleged any communication, let alone threat of enforcement, made by Defendants to Plaintiffs.  That means that the only possible burden Plaintiffs could point to is DEA's administrative process for considering religious-based exemptions.  But that process, which is no more onerous than what civil discovery would require here, does not impose a substantial burden on Plaintiffs, and, indeed, Plaintiffs do not allege that it does.

---

[1] The Defendants include Merrick Garland, Attorney General of the United States; Alejandro Mayorkas, Secretary of the U.S. Department of Homeland Security; and Anne Milgram, Administrator of the U.S. Drug Enforcement Administration (collectively, "Defendants").

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

*Third*, as a matter of judicial economy and sensible governance, the Court, in the alternative, should decline to review Plaintiffs' claim until after they have sought an exemption from DEA.  Doing so would allow DEA the opportunity to evaluate in the first instance whether Plaintiffs are eligible for a religious exemption, including determining whether Plaintiffs' current importation, handling, and distribution procedures adequately protect against the risk of diversion of a controlled substance and other potential harms to the public interest.

Accordingly, Defendants respectfully request that the Court dismiss the Complaint in full, or in the alternative, dismiss the Complaint without prejudice or otherwise stay the litigation.

## **BACKGROUND**

### A.      **Statutory and Regulatory Background**

The Controlled Substances Act, 21 U.S.C. § 801 *et seq*., strictly regulates the use of certain drugs and other substances, including Schedule I controlled substances—like DMT—which Congress determined have a high risk of abuse and a lack of accepted medical use.  *See* 21 U.S.C. § 812(b)(1), (c)(c)(6).  By passing the CSA, Congress created a closed regulatory system through which various federal agencies control and monitor the flow of controlled substances into and within the United States.

Within this closed system, DEA exercises authority delegated by the Attorney General to register an applicant who wishes to import, distribute, dispense, or manufacture Schedule I substances like DMT, when doing so is consistent with the public interest.  *See* 21 U.S.C. §§ 823(b), 958(a); 21 C.F.R. § 1301.31.  Any party—including health care professionals, pharmacists, medical researchers, and religious adherents—who wishes to handle a controlled substance must register with DEA.  *See* 21 U.S.C. §§ 823, 958; 21 C.F.R. §§ 1301.01–1301.52.  Further, any registrant wishing to import a controlled substance must apply for an import permit each time they wish to do so, and that approved permit must accompany the shipment.  21 C.F.R. §§ 1301.34, 1312.11–1312.14.  This statutorily delegated DEA process is designed to ensure that

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

all controlled substances are safely handled and properly safeguarded to prevent loss, theft, and diversion to illicit use.  *See* 21 U.S.C. §§ 823, 958.

Following the Supreme Court's decision in *Gonzales v. O Centro Espirita Beneficiente União do Vegetal*, 546 U.S. 418 (2006), DEA created a separate religious-exemption process open to anyone who wishes to obtain a registration to handle a controlled substance for religious purposes.  The guidance document outlining this process ("DEA Guidance"), first issued in 2009 and updated most recently in 2020, indicates how to submit religious-exemption petitions and what information such petitions should contain.[2]

Importantly, this religious-exemption process allows DEA to consider the risks of harm posed by the controlled substance and assess an individual's or organization's proposed safeguards for handling that substance in light of the agency's mission to prevent diversion of illegal uses and otherwise protect the public interest.  Thus, the DEA Guidance asks petitioners to disclose "each specific religious practice" involving the controlled substance as well as "the amounts, conditions, and locations, of its anticipated manufacture, distribution, dispensing, importation, exportation, use or possession."  DEA Guidance at 1–2.  This information allows DEA to evaluate a petitioner's application against the security, storage, and record-keeping regulatory requirements imposed on registrants who wish to handle any controlled substance within the CSA's closed regulatory system.[3]

---

[2] DRUG ENF'T ADMIN., DIVERSION CONTROL DIV., EO-DEA007, GUIDANCE REGARDING PETITIONS FOR RELIGIOUS EXEMPTION FROM THE CONTROLLED SUBSTANCES ACT PURSUANT TO THE RELIGIOUS FREEDOM RESTORATION ACT (REVISED) (Nov. 20, 2020), https://perma.cc/3PER-K3L9 ("DEA Guidance").

[3] DEA regulations require, *inter alia*, security, storage, and theft/loss avoidance measures, 21 C.F.R. §§ 1301.71–1301.76; record-keeping and inventory regarding importation, receipt, distribution, and disposal of controlled substances, 21 C.F.R. §§ 1304.21–1304.22; DEA access for inspections and audits, 21 U.S.C. § 880; 21 C.F.R. §§ 1316.01–1316.13; and employee screening procedures, 21 C.F.R. §§ 1301.90–1301.93.

3

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

**B.      Factual Allegations and Procedural History**

Plaintiff The Church of the Celestial Heart ("Celestial Heart") alleges that it "is a non-profit religious corporation, incorporated in 2021," that uses ayahuasca—a brewed tea containing DMT—as "an essential and foundational practice" of its faith.  Compl., ECF No. 1, ¶¶ 8, 11, 65. Plaintiff Kai Karrel allegedly serves as the founder and lead pastor of Celestial Heart, along with his wife and fellow lead pastor, Plaintiff Jade Osborne.  *Id.* ¶¶ 14, 16, 18, 20.  Other Plaintiffs include Celestial Heart members Daniel Pozas and Sara Mintzer—all of whom, the Complaint states, guide participants in the ritual of consuming ayahuasca.  *See id.* ¶¶ 14, 16, 18, 20, 24, 27, 29, 31.

Plaintiffs allege that, nearly two years ago, U.S. Department of Homeland Security ("DHS") agents seized a package containing DMT that was intended for Osborne.  *Id.* ¶ 37.  The Complaint states that Special Agent Jim Johnson notified local law enforcement in Tulare County about the intercepted package, *id.*, and that local law enforcement—not Defendants—investigated Osborne online, *id.* ¶ 38.  It further alleges that local law enforcement arrested Osborne on suspicion of violating various provisions of the California Health and Safety Code,[4] but Osborne has not been formally charged with a crime.  *Id.*  Notably, the Complaint does not allege that Defendants made any statements (written or oral) to Plaintiffs, that Defendants have taken any enforcement action against Plaintiffs, or that Defendants have seized any packages intended for Plaintiffs since Celestial Heart was incorporated.

In April 2023, Plaintiffs filed this action against Merrick Garland, Attorney General of the United States, Alejandro Mayorkas, Secretary of DHS, and Anne Milgram, DEA Administrator (collectively, "Defendants").  They seek declaratory and injunctive relief and ask this Court to enjoin "Defendants from arresting, prosecuting, or threatening Plaintiffs and members of Celestial Heart with arrest, prosecution and or imprisonment for importing, distributing, possession, and

---

[4] In a meet and confer on July 6, 2023, Plaintiffs' counsel confirmed that Paragraph 22 of the Complaint should state, "the summer of 2021," not "the summer of 2020."  *See* Compl. ¶ 22.  For purposes of the instant motion, Defendants assume that the alleged arrest of Osborne occurred in the summer of 2021.

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

ingesting Celestial Heart's sacramental tea solely at Celestial Heart services." *Id.* ¶ 106(c). Plaintiffs have not alleged that they have applied for a religious exemption from the CSA pursuant to DEA Guidance, *see generally id.*, and have otherwise asserted that they intend to continue importing, possessing, and using ayahuasca, *id.* ¶¶ 12, 17, 23, 28, 32.

Defendants now move to dismiss the Complaint with prejudice, or, in the alternative, dismiss the Complaint without prejudice or otherwise stay the case to allow Plaintiffs to pursue a religious exemption from DEA.

## **LEGAL STANDARDS**

Under Rule 12(b)(1), a plaintiff bears the burden of establishing subject-matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Rule 12(b)(1) attacks can be facial (where the allegations are insufficient on their face) or factual (where "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction"). *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Dismissal is required, pursuant to Rule 12(b)(6), if the complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss," *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); so too are "'naked assertions' devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (cleaned up).

## **ARGUMENT**

The Court should dismiss the Complaint because Plaintiffs lack pre-enforcement standing and fail to state a plausible claim for relief under RFRA. In the alternative, the Court should exercise its discretion to decline to review Plaintiffs' claims until DEA is given the opportunity to evaluate in the first instance whether Plaintiffs are eligible for a religious exemption.

5

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

**I.      The Complaint Should Be Dismissed for Lack of Standing.**

Plaintiffs fail to allege any genuine threat of prosecution by Defendants to survive dismissal under Rule 12(b)(1).  Instead, they rely on allegations of *state* action by *state* actors to establish their alleged fear of *federal* prosecution—despite acknowledging that Defendants have never prosecuted Plaintiffs for possessing or using ayahuasca and have never even threatened to do so.  What is more, Plaintiffs fail to grapple with the reality that their alleged harms stem from their failure to seek a religious exemption from DEA.  Both pleading deficiencies warrant dismissal of the Complaint.

**A.      Plaintiffs Fail to Allege Any Genuine Threat of Imminent Prosecution.**

To demonstrate Article III standing, a plaintiff must show that each provision she challenges has caused her a concrete and particularized "injury in fact" that is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up).  Where, as here, the alleged harm is the "threat of civil or criminal sanctions," *see, e.g.*, Compl. ¶¶ 2, 12, 17, 23, 28, 32, there must be a "genuine threat of imminent prosecution," *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (quoting *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996)).  "[N]either the mere existence of a proscriptive statute nor a generalized threat" is sufficient to establish pre-enforcement standing.  *Id.*  Instead, courts consider "whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute."  *Id.*[5]  Here, the Complaint fails to satisfy both threshold *Thomas* factors for establishing pre-enforcement standing.

*First*, the Complaint is devoid of any allegation that Defendants "have communicated a specific warning or threat to initiate proceedings" against Plaintiffs.  *See id.*  Indeed, there is not a

---

[5] Defendants concede, for the purposes of the instant motion only, that Plaintiffs have sufficiently pleaded the first factor, "whether the plaintiffs have articulated a 'concrete plan' to violate the law in question."  *Thomas*, 220 F.3d at 1139; *see* Compl. ¶¶ 12, 17, 23, 28, 32.

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

single allegation that Defendants have even communicated with Plaintiffs, let alone threatened to initiate proceedings, whether orally or in writing.[6]   That lack of communication stands in stark contrast to two other cases, where similar plaintiffs have alleged that (i) DHS issued a written notice of seizure and advised plaintiffs that they would "be receiving correspondence from [DHS'] Fines, Penalties, and Forfeitures Branch," Complaint ¶ 50, *Church of the Eagle & the Condor v. Garland* ("*Condor*"), No. 2:22-cv-1004-SRB (D. Ariz. June 9, 2022), ECF No. 1, and (ii) a DHS agent "falsely threatened an [alleged church] member with felony drug prosecution to intimidate her into acting as an informant against other [alleged church] members," Complaint ¶ 62, *Ariz. Yage Assembly v. Garland* ("*AYA*"), No. 2:22-cv-2373-ROS (D. Ariz. May 15, 2022), ECF. No. 159.   Defendants maintain that the allegations in *Condor* and *AYA* fail to confer standing (and disputed, via signed declaration from the DHS agent, the veracity of the allegations in *AYA*), but even by that standard, the allegations here do not even come close to crossing the bar.   Plaintiffs' failure to allege *any* communications made by Defendants to Plaintiffs forecloses any finding of pre-enforcement standing.

*Second*, Plaintiffs point to no past federal prosecutions for ayahuasca use, further undermining their claims that they face a genuine threat of imminent prosecution.   *See Thomas*, 220 F.3d at 1140.   The lack of federal prosecution is telling, given that Plaintiffs allege religious adherents have been consuming ayahuasca in the United States for the last fifty years.   *See* Compl. ¶ 70.

*Third*, Plaintiffs' allegations of standing ultimately fall short because the relief they seek is predicated on a single allegation of *past* harm—namely, the alleged 2021 seizure and subsequent arrest of Osborne by state actors.   The Supreme Court, however, "has concluded that past exposure

---

[6] In passing, Plaintiffs allege that the U.S. Customs and Border Protection ("CBP"), an agency within DHS not specifically named as a defendant here, "has made clear threats of prosecution and warning that future shipments will be seized and destroyed."   Compl. ¶ 97.   But Plaintiffs do not supply any facts to support this conclusory allegation, such as when or where CBP made these alleged threats and warnings, what form they took, and which CBP officers were involved in making them.   Such "'naked assertions' devoid of 'further factual enhancement,'" cannot withstand a motion to dismiss.   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (cleaned up).

7

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

to harm is largely irrelevant when analyzing claims of standing for injunctive relief that are predicated upon threats of future harm." *Nelsen v. King Cnty.*, 895 F.2d 1248, 1251 (9th Cir. 1990); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 108 (1983) (holding that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy" (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974))).  As Plaintiffs have only alleged *past* harm, *see* Compl. ¶¶ 37–38, that should end the inquiry.

But even taking into account the single allegation of past harm, *see Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 835 (9th Cir. 2012), the alleged 2021 seizure cannot support Plaintiffs' claims of future harm by Defendants against Celestial Heart because it occurred before Celestial Heart even existed as a legal entity (a non-profit religious corporation).[7] Moreover, Osborne's alleged arrest was made pursuant to a warrant by *state* law enforcement for violating *state* laws—not by any enforcement action taken by Defendants.  Compl. ¶ 38.  That leaves Plaintiffs with a conclusory statement about an alleged collaboration between DHS and state law enforcement agencies "to threaten criminal prosecution against Plaintiff Osborne" to support Plaintiffs' claim of *federal* prosecution.  *See id.* ¶ 39.  But as the attached Declaration of Homeland Security Investigations Special Agent James Johnson makes clear, federal officials (i) had no involvement with Osborne's arrest, other than notifying local law enforcement of the intercepted package, (ii) did not open an investigation relating to the package or the consignee, much less prosecute any Plaintiff, and (iii) did not destroy the package destined for Osborne.  *See* Decl. of Special Agent James Johnson ("Johnson Decl."), ECF No. 12-4, ¶¶ 4–8.[8]  And, as another

---

[7] *See generally* Decl. of Sarah M. Suwanda, ECF No. 12-3 (showing Celestial Heart first filed for incorporation in September 2021—one month after the alleged August 2021 seizure).  The Court may take judicial notice of the fact that Celestial Heart first filed for incorporation on September 29, 2021.  FED. R. EVID. 201(b), (c)(2).

[8] Defendants offer the Johnson Declaration in support of their arguments for dismissal under Federal Rule of Civil Procedure 12(b)(1) alone; they do not rely on it in arguing for dismissal under Federal Rule of Civil Procedure 12(b)(6).  To resolve a "factual attack" to jurisdiction, where, as here, Defendants "dispute[] the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction," "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for

8

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

court in this circuit held, Special Agent Johnson's "passing along a routine tip" to local law enforcement about an intercepted package cannot establish "any realistic, imminent threat of prosecution or enforcement action by the federal government." *Ariz. Yage Assembly v. Barr*, No. 3:20-cv-03098-WHO, 2020 WL 5629833, at **3, 14 (N.D. Cal. Sept. 21, 2020). Accordingly, Plaintiffs' alleged fears of future prosecution lack foundation, and their Complaint should be dismissed for lack of standing.

### B.   Any Genuine Threat of Imminent Prosecution Would Not Be Fairly Traceable to the Federal Agency Defendants.

In any event, the single DHS seizure Plaintiffs point to is insufficient to establish standing because Plaintiffs must also show that their alleged injury is "fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)) (cleaned up). As the Ninth Circuit and other courts have held, criminal defendants lack standing to assert a RFRA defense to prosecution where they could have applied for a permit to engage in the otherwise illegal activity, and yet failed to do so. *See, e.g.*, *United States v. Hugs*, 109 F.3d 1375, 1378–79 (9th Cir. 1997); *United States v. Winddancer*, 435 F. Supp. 2d 687, 692–93 (M.D. Tenn. 2006) (collecting cases where courts did not allow "defendants to make collateral challenges to regulatory statutes where the defendant inexplicably failed to apply for a permit to perform the activity in question"). Similarly, here, any alleged seizure or genuine threat of imminent criminal prosecution would be the result of Plaintiffs' refusal to seek from DEA the exemption for which they claim to qualify.

Moreover, Defendants dispute that they have destroyed the allegedly seized ayahuasca. *Cf.* Compl. ¶ 95. As described in the Johnson Declaration, Defendants transferred the package sent by Mystical Nature, not Celestial Heart, to local law enforcement and played no role in how local law enforcement subsequently handled the package—thereby vitiating any argument that Plaintiffs' alleged injury is fairly traceable to *Defendants*' actions. Johnson Decl. ¶ 5.

---

summary judgment" and "need not presume the truthfulness of the plaintiff's allegations. *Safe Air*, 373 F.3d at 1039.

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

1   **C.      Plaintiffs Fail to Demonstrate Associational Standing.**

2       Plaintiff Celestial Heart also fails to establish associational standing on behalf of its alleged

3   members.  An association may bring suit on its members' behalf when, "(a) its members would

4   otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane

5   to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires

6   the participation of individual members in the lawsuit."  *Hunt v. Wash. State Apple Adver.*

7   *Comm'n*, 432 U.S. 333, 343 (1977).  Because Plaintiffs do not satisfy the first or third factor, they

8   fail to demonstrate associational standing.

9       As explained above, the Complaint does not sufficiently allege that any member faces the

10  requisite "genuine threat of imminent prosecution."  *Thomas*, 220 F.3d at 1139.  Thus, Celestial

11  Heart fails to establish that "at least one of [its] members has 'suffered sufficient injury to satisfy

12  the case or controversy requirement of Article III.'"  *Ass'n of Pub. Agency Customers v. Bonneville*

13  *Power Admin.*, 733 F.3d 939, 949 (9th Cir. 2013) (quoting *Cetacean Cmty. v. Bush*, 386 F.3d 1169,

14  1174 (9th Cir. 2004)); *see also W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 483 (9th

15  Cir. 2011).

16      Moreover, Plaintiffs' RFRA claim "requires the participation of individual members in the

17  lawsuit," *Hunt*, 432 U.S. at 343, and cannot be brought in a representative capacity.  As both the

18  text of the statute and Supreme Court precedent make clear, RFRA requires the Court to identify

19  the contours of "*a person's*" sincere religious belief to determine whether it is substantially

20  burdened and, if so, to decide whether the "application of the burden *to the person*" is justified.

21  42 U.S.C. § 2000bb-1(a)-(b) (emphases added); *see also O Centro*, 546 U.S. at 430–31 (RFRA

22  contemplates "an inquiry more focused than [a] categorical approach" because it requires

23  "application of the challenged law 'to the person'—the particular claimant whose sincere exercise

24  of religion is being substantially burdened[.]" (quoting 42 U.S.C. § 2000bb-1(b))).  The Complaint,

25  however, falls well short of that requirement.  It does not include an individual attestation from

26  each member indicating that their sincerely held religious beliefs are being substantially burdened

27

28
    10

    <small>MEMORANDUM IN SUPPORT OF
    DEFENDANTS' MOTION TO DISMISS</small>

by the Government's actions and relies instead on generalized allegations that Celestial Heart's members are "substantially burdened" by federal drug laws. *See, e.g.*, Compl. ¶ 93. These generic and non-particularized allegations cannot support associational standing.

## II. The Complaint Should Be Dismissed for Failure to State a Claim.

Even if Plaintiffs have alleged sufficient facts to establish pre-enforcement standing (they have not), those same allegations cannot save them from dismissal on the merits. To prevail on their RFRA claim, Plaintiffs must show that the "application of the Controlled Substances Act would (1) substantially burden (2) a sincere (3) religious exercise." *O Centro*, 546 U.S. at 428. A "'substantial burden' is imposed only when individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions." *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1069–70 (9th Cir. 2008) (citations omitted). Here, Plaintiffs fail to state a RFRA claim for two distinct reasons: (i) the Complaint's factual allegations belie any notion that Plaintiffs have been "coerced to act contrary to their [alleged] religious beliefs," and (ii) Plaintiffs face no substantial burden where they have failed to allege that DEA's religious-exemption process poses a substantial burden, let alone applied for such exemption. On either basis, the Complaint warrants dismissal.

### A. The Complaint's Factual Allegations Undermine Plaintiffs' Claim of Substantial Burden.

Plaintiffs allege they suffer a "substantial burden" because they are being "forced to choose" between "imbibing" ayahuasca or being "coerced to act contrary to [their] religious beliefs by the threat of civil or criminal sanctions." Compl. ¶ 2. But Plaintiffs' conclusory statements of "substantial burden" are belied by the factual allegations in their own Complaint. For example, Plaintiffs repeatedly assert that, even after the alleged seizure of ayahuasca in 2021, they intend to "continue importing, possessing, and using [their] sacrament." *Id.* ¶ 12; *see also id.* ¶¶ 17, 23, 28, 32 (alleging that Plaintiffs will "continue to use the Church's sacrament ayahuasca within

11

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

1    ceremonies"). That concession forecloses any inference that Plaintiffs are being "coerced to act

2    contrary to [their] religious beliefs." *Navajo Nation*, 535 F.3d at 1070.

3          Plaintiffs' facial deficiencies, however, do not end there. Nowhere in the thirty-page

4    Complaint do Plaintiffs allege that Celestial Heart, or any of its members, have been forced to stop

5    practicing their alleged religion. And in the absence of any communications made by Defendants,

6    the lone seizure made before Celestial Heart's incorporation clearly has not compelled them to

7    abandon their alleged religious practice. Under those facts, Plaintiffs cannot plausibly assert that

8    they are substantially burdened by the CSA, when they continue to import and use a controlled

9    substance with impunity and refuse to seek a DEA registration to abate a general risk of seizure.

10   *See* Compl. ¶ 98 (alleging that Plaintiffs need not "endure the DEA's . . . exemption process").

11         Because Plaintiffs cannot point to any coercive action by Defendants, they allege, in

12   cursory fashion, a federal-state conspiracy to "threaten criminal prosecution against" Osborne. *See*

13   *id.* ¶ 39. That bald conclusion, however, runs headlong into other factual assertions in the

14   Complaint. For example, the Complaint acknowledges that the Tulare County Sheriff's

15   Department—not Defendants—"investigat[ed] Osborne," "execute[d] . . . the search warrant," and

16   "arrested [her]." *Id.* ¶ 38. The Complaint further concedes that Osborne was arrested by local law

17   enforcement on suspicion of violating various California Health and Safety Codes. *Id.* Plaintiffs

18   do not even allege that Osborne had been threatened or charged with a federal crime, and instead

19   concede that no federal or state entity has formally charged Osborne. *Id.* That leaves Plaintiffs

20   with the single factual allegation that Defendants informed local law enforcement about the

21   package addressed to Osborne. *Id.* ¶ 39. But as another court in this circuit held, the mere passing

22   of a routine tip by a federal agent cannot establish "any realistic, imminent threat of prosecution

23   or enforcement action by the federal government." *Ariz. Yage Assembly*, 2020 WL 5629833, at

24   **3, 14. Put simply, Plaintiffs cannot rely on the actions of local law enforcement to support a

25   claim against Defendants where the Complaint's factual allegations make clear that local law

26   enforcement acted on their own accord.

27

28
     MEMORANDUM IN SUPPORT OF
     DEFENDANTS' MOTION TO DISMISS

Nor can Plaintiffs' vague and non-particularized allegations of federal-state conspiracies support their claim. The Complaint asserts that Plaintiffs are "aware" of "several [other] prosecutions that began with seizures of ayahuasca by DHS, which then led to DEA or other agents of the Defendants collaborating with state law enforcement" to "prosecute churches and their members who use ayahuasca in a religious context." Compl. ¶ 40. Yet, aside from listing states where these prosecutions have allegedly occurred, *id.*, Plaintiffs offer no facts about when these investigations and prosecutions occurred, who, specifically, within the federal government was involved, and what form the alleged collaboration took. These allegations thus do not suffice under Rule 12(b)(6) to nudge Plaintiffs' claim across the line from conceivable to plausible.

**B.** **Plaintiffs Fail to Allege that Applying for the Requisite DEA Religious Exemption Constitutes a Substantial Burden.**

Notwithstanding Plaintiffs' pleading deficiencies, the Complaint fails to state a claim because, fundamentally, all of Plaintiffs' grievances stem from their failure to obtain, much less apply for, a registration through DEA's religious-exemption process. Thus, to prevail on a RFRA claim, Plaintiffs must demonstrate how DEA's religious-exemption process—which allows a petitioner, under certain circumstances, to import and use controlled substances within the CSA framework—substantially burdens their allegedly sincere exercise of religion.

Plaintiffs make no attempt to plead such a burden. They offer no factual allegations explaining how the DEA religious-exemption process creates a burden on their allegedly sincere religious exercise, let alone a substantial one. And they have not alleged that petitioning DEA would "coerce[]" them "to act contrary to their religious beliefs." *Navajo Nation*, 535 F.3d at 1070. Nor could they. As a practical matter, the Complaint includes the very kind of disclosures Plaintiffs would need to make in DEA's religious-exemption process should they decide to apply for registration. *Compare, e.g.*, Compl. ¶¶ 44, 48, 52, 54, 61–63 (discussing religious practices, ayahuasca "ceremonial protocols," storage, safeguarding, and "protocols for both medical and psychological intakes"), *with* DEA Guidance, at 1–2 (asking petitioners to a list "each specific religious practice" involving the controlled substance as well as "the amounts, conditions, and

13

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

locations, of its anticipated manufacture, distribution, dispensing, importation, exportation, use or possession"). Put differently, because Plaintiffs articulate no reason why those same disclosures made in the Complaint would burden their sincere exercise of religion if reasserted through the DEA religious-exemption process, they have not sufficiently pleaded a substantial burden. *See, e.g.*, *United States v. Tawahongva*, 456 F. Supp. 2d 1120, 1132 (D. Ariz. 2006) (holding that plaintiff was "not substantially burdened by the requirement that he acquire a permit"); *United States v. Friday*, 525 F.3d 938, 947 (10th Cir. 2008) (rejecting claim that a "bare requirement of obtaining a permit can be regarded as a 'substantial burden' under RFRA" where the religious adherent has failed to allege that his religious belief "forbid[s] him from asking the government for permission"); *United States v. Manneh*, 645 F. Supp. 2d 98, 101, 116 (E.D.N.Y 2008) (concluding that plaintiff "failed to make a prima facie showing that the licensing and permit scheme [that requires her to obtain a permit prior to importing primate parts] imposed a substantial burden [under RFRA] on the exercise of her religion").

Instead, Plaintiffs attempt to plead around DEA's core religious-exemption scheme by pointing this Court to two prior instances where the Supreme Court (in 2006) and the District of Oregon (in 2009) granted RFRA relief to two churches, União do Vegetal ("UDV") and Church of the Holy Light of the Queen ("CHLQ"), respectively. *See* Compl. ¶¶ 74, 76. But Plaintiffs "cannot simply point to other groups who have won accommodations for [religious ayahuasca use] . . . and say 'we'll have what they're having.'" *United States v. Christie*, 825 F.3d 1048, 1061 (9th Cir. 2016). And in any event, relevant circumstances, as well as the Government's position, have drastically changed.

In 2006, it was the Government's "central submission" that it had "a compelling interest in the uniform application of the Controlled Substances Act, such that no exception to the ban on use of the hallucinogen can be made to accommodate the sect's sincere religious practice." *O Centro*, 546 U.S. at 423. The Supreme Court rejected that position, and in response, DEA implemented a religious-exemption process that was not yet in place by the time CHLQ filed its complaint in

14

2008.  *See* Gov't Mot. to Dismiss at 5, *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 835 (9th Cir. 2010) (citing OFFICE OF DIVERSION CONTROL, DRUG ENF'T ADMIN., GUIDANCE REGARDING PETITIONS FOR RELIGIOUS EXEMPTION FROM THE CONTROLLED SUBSTANCES ACT PURSUANT TO THE RELIGIOUS FREEDOM RESTORATION ACT (2009)); Complaint, *Church of the Holy Light of the Queen v. Holder*, No. 08-cv-03095 (D. Or. Sept. 5, 2008), ECF No. 1 (filed prior to the 2009 Guidance).  In other words, both UDV and CHLQ lacked the administrative vehicle now available to Plaintiffs and others like them.  *See* Compl. ¶ 98 (recognizing DEA's "exemption process"); *see also Soul Quest Church of Mother Earth, Inc. v. Att'y Gen.*, No. 6:20-cv-701-WWB-DCI, 2022 WL 1131202, at *1 (M.D. Fla. Mar. 4, 2022) ("In August 2016, [DEA] directed [a religious organization] to file a petition for religious exemption for the use of ayahuasca.").  In light of this change, the Court should reject Plaintiffs' attempt to plead around DEA's operative religious-exemption process and determine whether the Complaint, on its face, fails to adequately plead a substantial burden where Plaintiffs concede they have not yet applied for a religious exemption.

## III.  Plaintiffs Should Seek an Exemption from DEA in the First Instance.

As an alternative basis for resolving the instant motion, the Court should exercise its discretion to decline to review Plaintiffs' claims at this juncture.  Plaintiffs seek to enjoin Defendants from preventing "the importation or use of" ayahuasca and prosecution thereof. Compl. ¶¶ 2, 106.  In other words, they ask the Court to compel DEA to grant a religious exemption from the CSA without having requested one from DEA in the first instance.  The Court should reject Plaintiffs' attempts to circumvent the administrative process at this juncture.

As a matter of judicial economy and sensible governance, the Court should afford DEA the opportunity in the first instance to evaluate Plaintiffs' eligibility for such an exemption, including determining whether Plaintiffs' current importation and distribution procedures adequately protect against the risk of diversion of a controlled substance and otherwise are in the public interest.  Dismissing the instant complaint without prejudice—or staying the case while

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

affording DEA an opportunity to evaluate Plaintiffs' claims—strikes the proper balance between "the agency's interest in applying its expertise, correcting its own errors, making a proper record, and maintaining an efficient, independent administrative system" and Plaintiffs' interest "in finding adequate redress." *Morrison-Knudsen Co. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1223 (9th Cir. 1987).    Nothing precludes the Court from doing so, because even where there is no administrative exhaustion requirement, *see Oklevueha*, 676 F.3d at 838, courts have discretion to decline to exercise review on administrative exhaustion grounds, *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992).    Accordingly, an order dismissing the Complaint without prejudice or deferring litigation until the administrative process has run its course is warranted based on the three factors articulated in *United States v. California Care Corporation*, 709 F.2d 1241, 1248 (9th Cir. 1983).

*First*, DEA has the "agency expertise" in diversion prevention "to generate a proper record and reach a proper decision" regarding possible accommodations that would both eliminate any substantial burden on sincere religious exercise and protect against the diversion of controlled substances to illicit, secular uses. *See id.* at 1248; *see also W. Radio Servs. Co. v. Qwest Corp.*, 530 F.3d 1186, 1201 (9th Cir. 2008) ("The agency is thus much better situated than the district court to 'mak[e] a proper record' and determine the facts."). When evaluating registrants for CSA exemptions, for example, DEA considers whether the controlled substances' security, storage, loss avoidance measures, and record-keeping meet regulatory requirements. *See* 21 C.F.R. §§ 1301.71–1301.76; 1304.21–1304.22. DEA cannot make that assessment or create an adequate record for judicial review, where, as here, Plaintiffs have refused to petition for an exemption. *See McKart v. United States*, 395 U.S. 185, 194 (1969) ("judicial review may be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise its discretion or apply its expertise"). Even Plaintiffs, despite refusing to engage with DEA, acknowledge the necessity for DEA to develop "a plan to effectuate the importation, distribution, possession, and accounting for" Plaintiffs' ayahuasca. Compl. ¶ 106(d). But instead, they run to federal court in the first instance, forcing the parties and the Court to resort to traditional tools of civil discovery, which are

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

comparatively burdensome, inflexible, and a poor substitute for DEA's pre-investigation process for religious exemptions.

*Second*, allowing Plaintiffs to skip the straightforward step of applying for a religious exemption from DEA "would encourage the deliberate bypass of the administrative scheme" that DEA has established. *See Cal. Care Corp.*, 709 F.2d at 1248; *see also McKart*, 395 U.S. at 195 ("[F]requent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.").

*Third*, requesting an exemption from DEA may "preclude the need for judicial review," thereby preserving the resources of the parties and the Court. *See Cal. Care Corp.*, 709 F.2d at 1248. If Plaintiffs were to apply for an exemption, DEA might grant Plaintiffs' exemption request, obviating the need for any further judicial review. And even if DEA were to deny the request, Plaintiffs would still be entitled to seek review of that denial before the court of appeals—and would do so on a fully developed record. *See, e.g.*, *Perkel v. U.S. Dep't of Justice*, 365 F. App'x 755, 755–56 (9th Cir. 2010). Both scenarios conserve judicial resources and ensure adequate judicial review.

Therefore, in the alternative, the Court should dismiss the Complaint without prejudice for Plaintiffs to bring a new claim after completing DEA's administrative-exemption process or stay the litigation to allow Plaintiffs an opportunity to request from DEA the exemption they seek here.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice. In the alternative, the Court should dismiss the Complaint without prejudice or stay the case to allow Plaintiffs to pursue a religious exemption from DEA.

17

Dated: July 17, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Sarah M. Suwanda*
SARAH M. SUWANDA
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 305-3196
E-mail: sarah.m.suwanda@usdoj.gov

*Counsel for Defendants*

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS