Jack Silver, Esq. SB 160575
JsilverEnvironmental@gmail.com
Law Office of Jack Silver
708 Gravenstein Hwy North, # 407
Sebastopol, CA 95472-2808
Tel. (707) 528-8175
Fax. (707) 829-0934

Sean T. McAllister, Esq. SB # 310962
Sean@mcallisterlawoffice.com
McAllister Law Office, P.C.
4035 E. 3rd Avenue
Denver, CO 80220
Tel. (720) 448-6235

Attorneys for Plaintiffs
*See Signature Page for all Plaintiffs
Represented*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| The Church of the Celestial Heart, et al<br><br>Plaintiffs,<br><br>   v.<br><br>Merrick Garland, et al,<br><br>Defendants. | Case No. 1:23:cv-00545-ADA-SAB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>**Date:  August 30, 2023**<br>**Time:  10:00**<br>**Ctrm: 9**<br>**Magistrate Judge Stanley A. Boone** |

Plaintiffs' Opposition to Defendants'
Motion To Dismiss

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................1

II.  FACTS OF THE CASE...........................................................2

III.  ARGUMENT ......................................................................5

   A. Legal Standards for FRCP 12(b) Motions ...........................................5

   B. FRCP 12(b)(6) Motion to Dismiss for Failure to State a Claim........5

   C. FRCP 12(b)(1) Motion to Dismiss for Lack of Subject Matter..........5

   D. Plaintiffs Have Pled Injury-in-Fact Sufficient for Standing Under Article III and to Make a Pre-enforcement Challenge ......................6

   E. Plaintiffs Have Already Faced an Enforcement Action Pursuant to the CSA ..........................................................................7

   F. The Church has Standing on its Own as Well as Associational Standing ...........................................................................9

   G. Plaintiffs Have Stated Facts that Would Entitle them to Relief ......11

   H. Plaintiffs Have Pled a Substantial Burden of One of its Central Tenants – The Partaking of Their Holy Sacrament...........................12

   I. There is no Legal Basis for a Stay ...................................14

IV.  CONCLUSION ......................................................................18

# TABLE OF AUTHORITIES

**CASES**

*Ankenbrandt v. Richards,*
504 U.S. 689 (1992) ................................................................................ fn17

*Arizona Yage Assembly v. Barr*
2020 U.S. Dist. LEXIS 172836 (N.D. Cal. 2020 ....................................16

*Arizona Yage Assembly v. Garland,*
No. 2:22:cv-2373-ROS (D. Ariz. 2022) ........................................ 8,10,14

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .................................................................................. 5

*Association of Am. Med. Colleges v. United States,*
217 F.3d 770 (9th Cir. 2000) .....................................................................6

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ..................................................................................5

*Callahan v. Woods,*
736 F.2d 1269 (9th Cir. 1984) .................................................................12

*Church of the Holy Light of the Queen v. Holder,*
443 Fed. App'x. 302 (9th Cir. 2011) .................................................... 2,12

*Church of the Holy Light of the Queen v. Mukasey, (CHLQ)*
615 F. Supp. 2d 1210 (D. OR 2009) ...............................12,13,17, fn2, fn5

*Colorado River Water Conservation Dist. v. U.S.,*
424 U.S. 800 (1976) ............................................................................ fn17

*Consumer Federation of America v. FCC,*
348 F.3d 1009, (D.C. Cir. 2003) ............................................................10

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.,*
498 F.3d 1059 (9th Cir. 2007) ............................................................ fn15

*Duke Power Company v. Carolina Study Group,*
438 U.S. 59 (1978) ....................................................................................6

*Employment Div. v. Smith.,*
494 U.S. 872 (1990) ................................................................ fn11

*Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal,*
 546 U.S. 418 (2006) ...................................................... 12, 14, fn2

*Greene v. Solano County Jail,*
513 F.3d 982 (9th Cir. 2008)..................................................12

*Guam v. Guerrero,*
290 F.3d 1210 (9th Cir. 2002)................................................17

*Hunt v. Wash. State Apple Adver. Comm'n,*
432 U.S. 333 (1977) ...................................................... 9, 10, 11

*International Union, United Automobile Workers v. Brock,*
477 U.S. 274 (1986) ...............................................................10

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992) ................................................................6

*Morrison-Knudsen Co. v. CHG Int'l, Inc.,*
811 F.2d 1209 (9th Cir. 1987) ......................................... 14, 15

*Navalo Nation v. U.S. Forest Serv.,*
535 F.3d 1058 (9th Cir. 2008) ...............................................11

*O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft,*
282 F. Supp. 2d 1236 ...................................................... 13, fn5

*Oklevueha Native Am. Church of Haw., Inc. v. Holder,* ("*Oklevueha I*")
676 F.3d (9th Cir. 2012)......................................... 6,7,10, 14, 16

*Oklevueha Native Am. Church of Hawaii v. Lynch,* ("*Oklevueha II*")
828 F.3d 1012, 1015 (9th Cir. 2016) ....................................17

*Parks Sch. of Bus., Inc. v. Symington,*
51 F.3d 1480 (9th Cir. 1995)..................................................5

*Pennell v. San Jose,*
485 U.S. 1 (1988)..................................................................10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Pharmaceutical Care Management v. Rowe,*
429 F.3d 294 (1st Cir. 2005) ...................................................10

*Sherbert v. Verner,*
374 U.S. 398 (1963) ...........................................................12

*The Church of the Eagle and the Condor v. Garland,*
No. 22-cv-01004-PHX-SRB (D. Ariz. 2023) ...........................8

*Thomas v. Anchorage Equal Rights Comm'n,*
220 F.3d 1134 (9th Cir. 2000).............................................6,7

*United Food and Commercial Workers v. Brown Grp.,*
517 U.S. 544 (1996) .........................................................10

*United States v. Antoine,*
318 F.3d 919 (9th Cir. 2003 ................................................17

*United States v. Lee,*
455 U.S. 252 (1982) .......................................................fn11

*United States v. Seeger,*
380 U.S. 163 (1965) ..........................................................12

*Usher v. City of Los Angeles,*
828 F.2d 556 (9th Cir. 1987)................................................5

*Warth v. Sedlin,*
422 U.S. 490 (1975) .........................................................10

**STATUTES**

42 U.S.C. § 2000bb(a)-(b)...................................................17
42 U.S.C. § 2000bb-1(a) ....................................................11
42 U.S.C. § 2000bb-1(c) ................................................16,17
42 U.S.C. § 2000bb-2000bb(4)..............................................1
42 U.S.C. § 2000bb-2(4) .................................................fn10
42 U.S.C. § 2000bb-3........................................................16
42 U.S.C. § 2000cc-5(7)(A) ..............................................fn10

**REGULATIONS**

21 C.F.R. § 1307.31 ............................................................................. fn1
21 C.F.R. Part 1301 ........................................................................... fn14

**FEDERAL RULES**

Fed. R. Civ. P. 8(a)(2) ............................................................................5
Fed. R. Civ. P. 12(b)(1) ........................................................................5,6
Fed. R. Civ. P. 12(b)(6) ..........................................................................5

**OTHER AUTHORITIES**

Cal. Corp. Code § 18000 *et seq.* ........................................................ fn3

Nonprofit Corporation Law Cal. Corp. Code § 5121 ........................... fn3

## I.      INTRODUCTION

This is a suit brought by Plaintiff, The Church of the Celestial Heart ("Celestial Heart" or "Church, and its members (collectively "Plaintiffs") pursuant to 42 U.S.C. § 2000bb-2000bb(4), the Religious Freedom Restoration Act of 1993 ("RFRA"). Plaintiffs seek to enjoin Defendants from enforcing the Controlled Substances Act ("CSA") in a manner that violates RFRA.

Defendants' actions and their enforcement of the CSA against Plaintiffs violate RFRA in that Defendants burden the sincere practice of the Church's religion, i.e., imbibing Celestial Heart's sacramental tea, referred to herein as Daime or ayahuasca.[1] Each Plaintiff is substantially burdened by being forced to choose between following the tenets of his or her religion, or being coerced to act contrary to his or her religious beliefs by the threat of civil or criminal sanctions. Plaintiffs endured the CSA being enforced against them, including the confiscation and destruction of their sacrament as well as the arrest and incarceration of one of their leaders as a direct result of the actions of Defendants.  Despite the enforcement action, as discussed herein Plaintiffs have a concrete plan to continue to import, possess and use the Daime in their religious ceremonies. By this action Plaintiffs seek an injunction enjoining Defendants from preventing the importation and use of Daime in religious ceremonies and from threatening to arrest or prosecute Celestial Heart members who seek to partake of their sacramental tea.

Plaintiffs have Article III standing, and standing to bring a pre-enforcement action as the CSA has already been enforced against Plaintiffs. Plaintiffs have stated a claim for relief under RFRA in that Defendants' actions in enforcing the CSA substantially burden Plaintiffs' practice of their religion by prohibiting Plaintiffs from importing their sacrament and criminalizing its use.  Defendants' requests for a stay are not supported by fact or law.

---

[1] As with the Native American Church ("NAC") the CSA should not apply to the nondrug use of ayahuasca in religious ceremonies. *See* 21 C.F.R. § 1307.31, "The listing of peyote as a controlled substance in Schedule I does not apply to the nondrug use of peyote in bona fide religious ceremonies of the Native American Church, and members of the Native American Church so using peyote are exempt from registration."

Plaintiffs' Opposition to Defendants'              1
Motion To Dismiss

As discussed herein all other courts have declined to grant Defendants a stay in ayahuasca RFRA cases.

## II.     FACTS OF THE CASE

Celestial Heart is a syncretic religion based upon the established Santo Daime[2] and Umbandaime religions. (Doc. 1 p 2, ln. 5-7). The Church and its members believe their sacrament to be a divine being, having been bestowed upon humanity in a divine manner, meant to awaken and bring about reconnection to God. They consider their sacrament to be divine in and of itself. They relate to the sacrament as the spirit of Mother Earth, and as the sacramental blood of Christ. Partaking of the Daime is an essential and foundational practice within their faith and is required to bring about this divine reconnection and the awakening of the soul. (Complaint, Doc. 1 p. 4, ¶11). Celestial Heart is a genuine religion. Its members have sincere beliefs based upon the Church's doctrine, and ayahuasca is an essential sacrament of the Church without which the Church cannot provide essential services, and its members cannot practice their religion. (Doc. 1, p. 18, ¶64)

Plaintiffs have suffered both financial and spiritual loss by having their sacrament confiscated and destroyed. Despite the threats of civil or criminal sanctions, Plaintiffs intend to continue importing, possessing, and using the sacrament, for without it, Plaintiffs cannot practice their religion and the Church cannot provide essential services. (Doc. 1 p. 4-5, ¶12). Defendants' interdiction and continued threats to interdict the Church's sacrament is a burden to the Church and its members.

In addition to having standing to sue in its own right, Celestial Heart has associational standing as the interests it seeks to protect are germane to the organization's purpose, and the relief sought by the Church will satisfy the injury-in-fact to its members, including the named Plaintiff members.[3] For this reason, although its members would

---

[2] The Santo Daime and UDV churches won the right to import, possess and use ayahuasca pursuant to RFRA. See *Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal*, 546 U.S. 418 (2006) and *CHLQ v. Mukasey*, 615 F. Supp. 2d 1210 (D. OR 2009) (remanded by *Church of the Holy Light of the Queen v. Holder*, 443 Fed. App'x. 302 (9th Cir. 2011) only to limit the extent of the injunction.

[3] Defendants claim that at the time of the seizure Celestial Heart was not a legal

Plaintiffs' Opposition to Defendants'                    2
Motion To Dismiss

otherwise have standing to sue in their own right, neither the claim asserted nor the relief requested requires the participation of individual members in this lawsuit. (Doc. 1 p. 5, ¶13)

Plaintiff Kai Karrel is the founder of Celestial Heart and serves as the lead pastor or Padrinho. Mr. Karrel resides in Tulare, California. (Doc. 1 p. 5, ln. 10-11). Ayahuasca is an essential sacrament for Mr. Karrel, without which he cannot practice his religion or provide services to the Church's members. (Doc. 1 p. 6, ln. 19-20) Given the confiscation and destruction of the Church's sacrament as well as the arrest of his wife, Plaintiff Jade J. Osborne, Mr. Karrel is substantially burdened by being forced to choose between following the tenets of his religion or being coerced into acting contrary to his religious beliefs by the threat of civil or criminal sanctions. (Doc. 1 p. 6, ln. 20-23) Despite these threats, Mr. Karrel intends to continue possessing and using the Church's sacrament - ayahuasca. (Doc. 1 p. 6, ln. 23-24) Although Mr. Karrel has standing to sue on his own, the relief sought by the Church will satisfy his injury-in-fact. (Doc. 1 p. 6, ln. 25-26)

In the summer of 2021[4], the Church's sacrament was seized by defendant Department of Homeland Security's ("DHS") subdivision, U.S. Customs and Border Protection ("CBP") pursuant to the CSA (Doc. 1 p. 10, ln. 13-15). The confiscated sacrament was sent to the DHS office in Fresno, California. Pursuant to the CSA and Anti-Drug Abuse Act of 1988, DHS Special Agent Jim Johnson contacted the Tulare County Sheriff's Department to inform local law enforcement about the seizure and content of the package. (Doc. 1, p. 10, ¶37; Osborne Decl. ¶12).  Plaintiff Jade J. Osborne was arrested and incarcerated. Ayahuasca is an essential sacrament for Ms. Osborne, without which she

---

entity (Doc. 12-1, p. 8, ln. 10). This is factually and legally incorrect. Nonprofit unincorporated associations are legal entities governed by California's Unincorporated Association Law.  Cal. Corp. Code § 18000 *et seq.* Nonprofit Corporation Law §§ 5121, 7121, and 9121 allow an existing unincorporated association to change its status to that of a corporation. Celestial Heart formed a nonprofit unincorporated association in February 2015 and incorporated in 2021. (Karrel Decl. p. 2, ln. 1-4).

[4] The Celestial Heart Complaint contains a scrivener's error (Doc. 1, p. 7, ln. 19) "Summer of 2020" rather than Summer of 2021.

Plaintiffs' Opposition to Defendants'     3
Motion To Dismiss

cannot practice her religion. (Doc. 1 p. 7, ln. 25-26) Given the confiscation and destruction of the Church's sacrament as well as her arrest, Ms. Osborne is substantially burdened by being forced to choose between following the tenets of her religion or being coerced into acting contrary to her religious beliefs by the threat of civil or criminal sanctions. (Doc. 1 p. 7, ln. 26-28 - p. 8, ln. 1) Despite these threats, Ms. Osborne intends to continue partaking in the Church's sacrament. (Doc. 1 p. 8, ln. 1-2) Although Ms. Osborne has standing to sue on her own, the relief sought by the Church will satisfy her injury-in-fact. (Doc. 1 p. 8, ln. 2-3)

Ayahuasca is an essential sacrament for Plaintiffs Daniel Pozas and Sara Mintzner, without which they cannot practice their religion. (Doc. 1 p. 8, ln. 24-25; p. 9, ln. 18-19.) Given the confiscation and destruction of the Church's sacrament, as well as the arrest of Ms. Osborne, Mr. Pozas and Ms. Mintzer are substantially burdened by being forced to choose between following the tenets of their religion or being coerced into acting contrary to their religious beliefs by the threat of civil or criminal sanctions.  (Doc. 1 p. 8, ln. 25-28; p. 9, ln. 19-22.) Despite these threats, Mr. Pozas and Ms. Mintzer intend to continue to use the Church's sacrament in ceremonies. (Doc. 1 p. 8, ln. 28, p. 9 ln. 1, 22-23.) Although Mr. Pozas and Ms. Mintzer have standing to sue on their own, the relief sought by the Church will satisfy their injury in fact. (Doc. 1, p. 9, ln. 1-2, 23-24.)

The DHS, and its subdivision CBP, have engaged in a pattern and practice of seizing and destroying countless other shipments of sacramental ayahuasca that have come into the United States since 1999.[5] (Silver Decl., ¶¶5-13,15) The increased seizures of ayahuasca in the United States, the prosecution or threatened prosecution of individuals devoted to the religious use of ayahuasca including Plaintiffs, and the specific seizure of the Church's sacrament have a chilling effect on Plaintiffs' ability to practice their religion without fear of persecution resulting in a substantial burden on Plaintiffs' exercise of their religious beliefs. (Doc. 1, p. 11, ¶39)

_____

[5] See *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 282 F. Supp. 2d 1236,1240 and *CHLQ v. Mukasey*, 615 F. Supp. 2d 1210, 1213.

In addition to the seizure by Defendants of Plaintiffs' sacrament ayahuasca pursuant to the CSA and Anti-Drug Abuse Act of 1988, Defendants are collaborating with state law enforcement in other cases to prosecute churches and their members who use ayahuasca in a religious context. (Silver Decl. ¶¶10, 12, 13-15) Plaintiffs are aware of several such prosecutions that began with seizures of ayahuasca by the DHS, then led to the U.S. Drug Enforcement Administration ("DEA") or other agents of the Defendants collaborating with state law enforcement. Known criminal prosecutions of those using ayahuasca for religious purposes have occurred in Arizona, California, Colorado, Florida, Michigan, New Mexico, New York, Oregon, Tennessee, and Texas. (Doc. 1, p. 11, ¶40)

## III. ARGUMENT

### A. Legal Standards for FRCP 12(b) Motions

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)).

### B. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

Under Rule 12(b)(6), a complaint should not be dismissed unless a plaintiff can prove "no set of facts in support of his claim that would entitle him to relief." *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). The court must take the non-moving party's allegations as true and construe those allegations in the light most favorable to the non-moving party. *See id.* The court must also draw all reasonable inferences in favor of the non-moving party. See *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

### C. Rule 12(b)(1) Motion to Dismiss for lack of Subject Matter Jurisdiction

Pursuant to Rule 12(b)(1), a district court must dismiss an action if it lacks jurisdiction over the subject matter of the suit. Unlike a motion under Rule 12(b)(6), however, the Court is not required to accept all the non-moving party's factual allegations

as true. Instead, the party moving under Rule 12(b)(1) may submit evidence indicating that the court lacks subject matter jurisdiction. "It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Association of Am. Med. Colleges v. United States*, 217 F.3d 770, 778 (9th Cir. 2000).

### D. Plaintiffs Have Pled Injury-in-Fact Sufficient for Standing Under Article III and to Make a Pre-enforcement Challenge

The interdiction, destruction, and continued prohibition of the Church's sacrament as well as the federally assisted arrest of Ms. Osborne are concrete, particularized, actual, (not conjectural or hypothetical) injuries sufficient for standing under Article III. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). Plaintiffs have suffered an injury-in-fact, both financially and spiritually, resulting from the loss of their sacrament and because of Defendants' continued denial of Plaintiffs' right to obtain, possess, and use it. Without their sacrament, Plaintiffs cannot practice their religion and the Church cannot perform essential services. (Karrel Decl. p. 10, ln. 17-18)

The injury suffered by Plaintiffs is directly traceable to Defendants' seizure and continued prohibition under the CSA. See *Duke Power Company v. Carolina Study Group*, 438 U.S. 59 (1978). Defendants argue Plaintiffs have failed to allege any genuine threat of imminent prosecution, because they rely on claims of past harm[6], they have failed to allege a particular or specific threat by Defendants to initiate proceedings, and they have failed to allege any past federal prosecutions for ayahuasca use. (Doc. 12-1, p. 13, ln. 15-21). Defendants argue "neither the mere existence of a proscriptive statute nor a generalized threat of prosecution" is sufficient to establish standing. (Doc. 12-1, p. 12, ln. 16-17) Citing *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000).

The Ninth Circuit in *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676

---

[6] Defendants claim that "Plaintiffs' allegations of standing ultimately fall short because the relief they seek is predicated on a single allegation of *past* harm." is akin to stating an assault victim has no injury-in-fact because the assault is *past* harm.

F.3d 829, (9th Cir. 2012) ("*Oklevueha I*") identified three prongs of a "pre-enforcement" standing analysis: "(1) whether the plaintiffs have articulated a 'concrete plan' to violate the law in question; (2) whether the government has communicated a specific warning or threat to initiate proceedings; and (3) the history of past prosecution or enforcement under the statute." *See Oklevueha I,* 676 F.3d 829, 836 (9th Cir. 2012) (*citing Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000)). However, the Ninth Circuit held that plaintiffs need not meet the second and third pre-effacement prongs if the statute has already been enforced against them, as it has in this case.

> Plaintiffs need not allege a threat of future prosecution because the statute has already been enforced against them. When the Government seized Plaintiffs' marijuana [ayahuasca] pursuant to the CSA, a definite and concrete dispute regarding the lawfulness of that seizure came into existence.
>
> For the same reason Plaintiffs need not demonstrate a threat of future prosecution under these facts, we conclude that Plaintiffs need not establish the third prong of the "genuine threat of prosecution" inquiry, the history of enforcement of the statute. In other words, we need not rely on enforcement of the statute against other groups in determining whether Plaintiffs are likely to suffer a similar fate in the future, because the CSA has already been enforced against Plaintiffs through the seizure of their marijuana.[7]
> *Id.* at 836 and 837 resp.

**E. Plaintiffs Have Already Faced an Enforcement Action Pursuant to the CSA**

Plaintiffs have already faced an enforcement action pursuant to the CSA, which resulted in the confiscation and the sacrilegious destruction of their sacrament as well as

---

[7] Defendants mischaracterize this factor as whether there is history of past prosecution or enforcement against *Plaintiffs* rather than "enforcement of the statute against other groups." See *Oklevueha I* at 837. Given enforcement actions over the past 24 years against the UDV, Santo Daime, Arizona Yage Assembly and The Church of the Eagle and the Condor discussed herein, to name just a few, it is abundantly clear that Defendants have sought to enforce the CSA against other churches using ayahuasca as a sacrament. (See Silver Decl. ¶¶5-15)

the arrest of one of the Church's leaders, Ms. Osborne. There is no question that future shipments will be interdicted and destroyed. Defendants have admitted there is a likelihood that Plaintiffs will again be wronged in a similar way and their sacrament will continue to be seized and destroyed. *See* U.S. District Court, District of Arizona cases - *The Church of the Eagle and the Condor v. Garland,* Case No. 22-cv-01004-PHX, Doc. 23, p. 17, ln 19-20 (". . . without which importation of controlled substances is prohibited and subject to seizure as a matter of course"); and, *Arizona Yage Assembly v. Garland,* Case No. 2:20-cv-02373-ROS, Doc. 175, p. 10, ln. 22-24: ("If CBP intercepts a nonpermitted Schedule I controlled substance, CBP will seize the shipment, and it will be forfeited").

Applying the holding of *Oklevueha I* to the facts in this case, this Court must find that Plaintiffs have standing to make a pre-enforcement challenge. The Celestial Church has stated concrete plans to continue importing its sacramental Daime for use in its religious ceremonies[8]. Defendants used their enforcement authority under the CSA to confiscate the Celestial Church's sacrament and have warned that they will continue to enforce the CSA to seize and confiscate the Celestial Church's sacrament.

Defendants will likely argue that the facts here differ from those in *Oklevueha I* as Defendants have in a prior ayahuasca case. See *Arizona Yage Assembly v. Garland,* 2023 U.S. Dist. LEXIS 78226*, *9. In that case Defendants argued there was, in fact, no past enforcement of the CSA against Plaintiffs because "CBP's alleged border seizures cannot form the basis for a broad pre-enforcement injunction against DEA and the CSA *in toto* because DEA has not 'enforced' these provisions against Plaintiffs." *Id*. However, as Judge Silver pointed out, the CSA operates through multiple agencies. For example, the DEA may grant permits for importation of controlled substances, without which the CBP and/or DHS will seize packages as a matter of course. *Id*. Judge Silver held that the "Agency Defendants' actions and responsibilities are thus intertwined; the Defendant agencies

---

[8] Defendants concede that Plaintiffs have satisfied the "concrete plan" requirement. (Doc. 12-1, p. 12, fn 5).

Plaintiffs' Opposition to Defendants'       8
Motion To Dismiss

cannot avoid accountability for enforcing the CSA by claiming they enforce only one piece of it." *Id*. Judge Silver continued to state that "just because DEA has not commenced a federal criminal prosecution does not mean the CSA has not been enforced against Plaintiffs." *Id*.

Regardless of Defendants' arguments, "[w]hen the Government seized Plaintiffs' [ayahuasca] pursuant to the CSA, a definite and concrete dispute regarding the lawfulness of that seizure came into existence." *Oklevueha I* at 386.

**F.  The Church Has Standing on its Own as Well as Associational Standing**

Defendants claim, "the alleged 2021 seizure cannot support Plaintiffs' claims of future harm by Defendants against Celestial Heart because it occurred before Celestial Heart even existed as a legal entity (a non-profit religious corporation)." (Doc.12-1, p. 14, ln. 7-10). This is factually and legally incorrect. The Church of the Celestial Heart became a legal entity in February of 2015 when it formed a nonprofit unincorporated association pursuant to Cal. Corp. Code § 18000 et seq. Pursuant to the Nonprofit Corporation Law §§ 5121, 7121, and 9121, the existing unincorporated association changed its status to that of a corporation (Karrel Decl., p 2, ln. 1-4) and retained all rights it had as an unincorporated association as well as gaining all rights as an incorporated association. *id.*

A plaintiff organization may bring suit on its members' behalf when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

Defendants first argue that Plaintiffs have failed to allege any Celestial Heart member has suffered an injury sufficient to establish they would have standing to sue in their own right. (Doc.12-1, p. 16, ln. 10-12) However, Plaintiffs have alleged Daime is a central component of Celestial Heart members' religion (Doc. 1, p. 26, ln. 20); (Karrel Decl. p. 6, ln. 10-11), and that if ayahuasca shipments continue to be seized, their members will be unable to practice their religion (Doc. 1, p. 26, ln. 18-20); (Karrel Decl. p. 6, ln. 9-

11); (Osborne Decl., p. 5, ln. 1-2); (Pozas Decl., p. 4, ln. 26-26); (Mintzer Decl., p. 5, ln. 21-23). Plaintiffs need not establish that a substantial number of its members have suffered injury. Injury to a single member is sufficient. See *United Food and Commercial Workers v. Brown Grp.*, 517 U.S. 544, 555 (1996); *Consumer Federation of America v. FCC,* 348 F.3d 1009, 1011-12 (D.C. Cir. 2003). Plaintiff members have standing to sue on their own.

Defendants make no argument that the interests Celestial Heart seeks to protect are not germane to the organization's purpose. Instead, they argue that individual members must participate in the litigation, destroying Celestial Heart's associational standing. (Doc. 12-1, p. 16, ln. 16-17) On closely related facts the Ninth Circuit held that "it can reasonably be supposed that the [Celestial Heart's prospective relief], if granted, will inure to the benefit of those members of the association actually injured." *Oklevueha I*, 676 F.3d at 839 (quoting *Warth v. Sedlin*, 422 U.S. 490, 515 (1975)). See also *Arizona Yage Assembly v. Garland*, 2023 U.S. Dist. LEXIS 78226*, *13 (D. Ariz. 2023) There is no need for the kind of individualized inquiry Defendants suggest.[9]

The third *Hunt* requirement is satisfied when the plaintiff association seeks injunctive or declaratory relief generally benefiting the association and its members. See *Pennell v. San Jose*, 485 U.S. 1, 7 (1988). This is true even when there is a need for some limited participation of association members in discovery or at trial. *Pharmaceutical Care Management v. Rowe,* 429 F.3d 294, 306 (1st Cir. 2005) ("[W]e noted that just because a claim may require proof specific to individual members of an association does not mean the members are required to participate as parties in the lawsuit"). Entities have associational standing to seek injunctive relief designed to ensure that those of their members who are injured will benefit. See *International Union, United Automobile Workers v. Brock*, 477 U.S. 274 (1986). As such, *Hunt* held that "individual participation" is not normally necessary when an association seeks prospective or injunctive relief for its

---

[9] In another recent ayahuasca church case with closely related facts, *The Church of the Eagle and the Condor v. Garland,* CV-22-01004-PHX-SRB (D. Ariz. 2023) Judge Bolton also held that the plaintiff church had associational standing. (CV-22-01004-PHX, Doc 26, p. 5-6, ln. 20, 1-7)

members. See *Hunt*, at 343.

### G. Plaintiffs Have Stated Facts that Would entitle Them to Relief

42 U.S.C. §§ 2000bb *et seq.*, as amended by the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA")[10], specifically provides:

> (a) In general: Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.

> (b) Exception: Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

> (c) A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution.  *Id.* at § 2000bb-1(a)-(c).

To state a claim under RFRA, a plaintiff must plead the existence of two elements. First, the activities the plaintiff claims are burdened by the government action are an "exercise of religion." Second, the government action "substantially burdens" the plaintiff's exercise of religion. *Navalo Nation v. U.S. Forest Serv.,* 535 F.3d 1058, 1068 (9th Cir. 2008) (en banc) (quoting 42 U.S.C. § 2000bb-1(a)).  Plaintiffs have established they are sincere in their religious beliefs, and that the ceremonial use of the Daime is essential to their religion. It is obvious that prohibiting the use of Daime would substantially burden the exercise of Plaintiffs' religion.

---

[10] The RLUIPA amended RFRA's definition of "exercise of religion" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000bb-2(4); 42 U.S.C. § 2000cc-5(7)(A).

Plaintiffs' Opposition to Defendants'          11
Motion To Dismiss

### H. Plaintiffs Have Pled a Substantial Burden of One of its Central Tenants - the Partaking of Their Holy Sacrament

There can be no question that Plaintiffs' beliefs and practices are religious in nature. The Supreme Court has defined religion as any sincere and meaningful belief that occupies in the holder a place that is equivalent to the position that God has in more traditional religions. *United States v. Seeger*, 380 U.S. 163, 176 (1965). Based upon the allegations in Plaintiffs' Complaint and the declarations filed in support of this Opposition Brief, there is also no dispute about the sincerity of the Church members' belief in the Daime as a sacrament.

In the UDV litigation, the government conceded that banning the sacrament for the UDV works a substantial burden on them. *Gonzales v. O Centro*, 546 U.S. at 426. *See Callahan v. Woods*, 736 F.2d 1269, 1272-73 (9th Cir. 1984). In the *Church of the Holy Light of the Queen ("CHLQ") v. Mukasey*, 615 F. Supp. 2d 1210 (D. OR 2009) (remanded by *Church of the Holy Light of the Queen v. Holder*, 443 Fed. App'x. 302 (9th Cir. 2011) (only to limit the extent of the injunction) the court held: "Plaintiffs have established that they are sincere in their religious beliefs, and that the ceremonial use of the Daime tea is essential to their religion. It is obvious that prohibiting the use of Daime tea would substantially burden the exercise of plaintiffs' religion." *id.* at 1219.

Applying RFRA, the Ninth Circuit has held: Under RFRA, a "substantial burden" is imposed only when individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit (*Sherbert v. Verner*, 374 U.S. 398 (1963)) or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions (*Yoder*). *Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058, 1069-70 (9th Cir. 2008). *See also Greene v. Solano County Jail*, 513 F.3d 982, 988 (9th Cir. 2008) ("We have little difficulty in concluding that an outright ban on a particular religious exercise is a substantial burden on that religious exercise.)". Because ingestion of the Holy Daime is at the center of the Church's religious practice[11], the CSA's criminalizing the importation,

---

[11] A religious practice must only be "sincere," and not "central," to be protected

possession, and ingestion of the Daime criminalizes the Church members' ability to practice their religion. Nowhere in Plaintiffs' Complaint do they claim to be burdened by the DEA's exemption process.[12] Plaintiffs Complaint clearly states: "The issue is not whether petitioning the DEA for an exemption from the CSA imposes a substantial burden but whether the confiscation, destruction and prohibition of Plaintiffs' sacrament and the continued threat of these are a substantial burden." (Doc. 1, ¶99). *See also* Karrel Decl. p. 10, ln. 15-17; Osborne Decl. p. 5, ln. 2-5; Pozas Decl., p. 5, ln. 4-8; Mintzer Decl., p. 5, ln. 21-23.

Celestial Heart cannot hold central religious ceremonies in the absence of its Holy Sacrament. A government law or regulation that causes a party to forgo a central religious practice imposes a substantial burden on the religion. *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 140-141 (1987). No heavier burden on Celestial Heart's religion is possible.

The relief sought by Plaintiffs will redress the injury. In the UDV case, the district court entered an injunction prohibiting the government from enforcing the CSA with respect to the UDV's importation and use of ayahuasca. *O Centro Espirita Beneficiente União Do Vegetal v. Ashcroft* ("*O Centro I*"), 282 F. Supp. 2d 1236 (D.N.M. 2002). In the Santo Daime case, *CHLQ v. Mukasey*, 615 F. Supp. 1210 (D. Or. 2008), Judge Panner issued an order stating: "Defendants are enjoined from prohibiting plaintiffs' importation, storage, distribution and use of Daime tea for plaintiffs' religious ceremonies." [Silver Decl. ¶5, Exhibit A, Panner Order]. That order was not appealed by the government. This Court can grant similar relief to Plaintiffs herein.

Finally, Defendants make the bizarre argument that Plaintiffs cannot be

under RFRA. *See Employment Division v. Smith*, 494 U.S. at 887, 110 S. Ct. 1595 ("Judging the centrality of different religious practices is akin to the unacceptable 'business of evaluating the relative merits of differing religious claims'" (*quoting United States v. Lee*, 455 U.S. 252, 263 n. 2 (1982) (Stevens, J. concurring).

[12] Defendants made the same misrepresentation in their nearly identical Motions to Dismiss in the two recent Arizona ayahuasca cases discussed herein.

Plaintiffs' Opposition to Defendants'          13
Motion To Dismiss

substantially burdened because they continue to practice their religion. (Doc. 12-1, p. 18, ln. 3-10). By Defendants' reasoning, Christians were not burdened by the Roman persecutions between the 1ˢᵗ and 4ᵗʰ Century AD, nor were Jews burdened by the Spanish Inquisition, Russian pogroms or the Holocaust because their members continued to practice their religion.

## I.  There is No Legal Basis for a Stay

Judge Silver declined to grant a stay on exactly the same request from Defendants in an ayahuasca RFRA case noting, ". . . in 2012 the Ninth Circuit addressed a similar argument as Defendants make here, and the court refused 'to read an exhaustion requirement into RFRA where the statute contains no such condition.' *Oklevueha I, 676 F.3d at 838* (stating that 'the Supreme Court has reviewed a RFRA-based challenge to the CSA without requiring that the plaintiffs first seek a religious use exemption from the DEA') (citing *O Centro, 546 U.S.418*). Both the Supreme Court and the Ninth Circuit have recognized that RFRA 'plainly contemplates that *courts* would recognize exceptions [to the CSA]—that is how the law works.' *Id.* (quoting *O Centro, 546 U.S. at 434*)." *Arizona Yage Assembly v. Garland*, 2023 U.S. Dist. LEXIS 78226 *, *11.  See also Arizona District Court case No.CV-22-01004-PHX *The Church of the Eagle and the Condor v. Garland,* Doc. 26, p. 6, fn. 4 "The Court declines Defendants' request for the Court to dismiss or stay the case until Plaintiffs apply directly to the DEA for an exemption. (*See* Mot. at 16.) RFRA 'plainly contemplates' that this Court may consider Plaintiffs' requested relief from the CSA. *Oklevueha I*, 676 F.3d at 838 (quoting *Gonzales v. O Centro Espirita Beneficente Uniao de Vegetal*, 546 U.S. 418, 434 (2006))." This Court should not depart from clear precedent.

Despite the fact that every court which has ruled on this issue has denied a stay, Defendants continue to argue that this court should stay proceedings pending Plaintiffs applying for an exception from the CSA as "a matter of sensible governance and judicial economy." (Doc. 12-1, p. 21, ln. 22) Citing *Morrison-Knudsen Co. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1223 (9ᵗʰ Cir. 1987). Given the fact that, despite all the applications Defendants

have received for the religious use of ayahuasca, they have never granted any of them, it is difficult to understand how granting a stay could possibly be "a matter of sensible governance and judicial economy."[13] (Silver Decl. ¶16) For the reasons below *Morrison-Knudsen* is inapplicable.

Defendants claim that DEA should be afforded the opportunity to evaluate Plaintiffs' claims which include that it is a genuine religion, its members have sincere beliefs based upon Church doctrine and that Daime is an essential sacrament without which its members cannot practice their religion and the Church cannot provide essential services. (Doc. 12-1, p. 22, ln.1)

Under the CSA[14], the DEA accepts applications for exemptions for Schedule I uses in the following categories: Retail Pharmacy, Hospital/Clinic, Practitioner, Teaching Institution, or Mid-Level Practitioner (DEA Form 224), Manufacturer, Distributor, Researcher, Canine Handler, Analytical Laboratory, Importer, Exporter (DEA Form 225), Narcotic Treatment Programs (DEA Form 363), and Domestic Chemical (DEA Form 510). Religion is not included in this list. Instead, the DEA has promulgated its *Guidance Document* (Doc. 12-1, p. 9 fn. 2) The DEA *Guidance Document* requests detailed information about the nature of the religion, its history, belief system, structure, practice, membership policies, rituals, holidays, organization, leadership and each specific religious practice that involves the manufacture, distribution, dispensing, importation, exportation, use or possession of a controlled substance. (Silver Decl. ¶17, Exhibit B - *Guidance Document* ¶2). After a four-year process,[15] one applicant, Soul Quest Church of Mother Earth, Inc. ("Soul Quest") was denied an exception partly on the basis that "Soul Quest has

---

[13] The only churches that have an exception, the NAC, UDV and Santo Daime, have been granted the exception as a result of litigation.

[14] 21 U.S.C. 821-824, 831, 871(b), 875, 877, 886a, 951, 952, 956-958, 965 and its implementing regulations, 21 C.F.R. Part 1301. See www.ecfr.gov/current/title-21/chapter-II/ part-1301.

[15] Stays "should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time." *Dependable Highway Exp., Inc. v. Navigators Ins. Co.,* 498 F.3d 1059, 1066 (9th Cir. 2007). Four years is not a "reasonable time."

1  not satisfied its burden under RFRA of demonstrating that its use of ayahuasca is pursuant

2  to a religious exercise and based on a sincerely held religious belief." (Silver Decl. ¶18,

3  Exhibit C - DEA's Soul Quest Determination Letter bottom of page 4). There is *nothing* in

4  the CSA authorizing DEA to regulate religion.[16] RFRA makes it clear that it is the courts

5  that make that decision. See 42 U.S.C. § 2000bb–1(c).

6      Defendants additionally argue that a stay will allow them to review the Church's

7  protocols to prevent diversion. Defendants have no evidence that the Native American

8  Church, with more than 300,000 members, has had any diversion problems for more than

9  30 years, nor the UDV or Santo Daime over the past 15 years. Therefore, there is little for

10  the DEA to evaluate other than to make the same arrangements with Plaintiffs as they have

11  with the other similarly situated churches. See Silver Decl. ¶19, Exhibit D - Agreement

12  between U.S. and the UDV.

13      Regardless of the DEA *Guidance Document* post UDV and Santo Daime case,

14  Defendants' request for a stay clearly contradicts RFRA's delegation to the courts.[17]  See

15  42 U.S.C § 2000bb-1(c) and 42 U.S.C. § 2000bb-3.[18] in *Arizona Yage Assembly v. Barr*,

16  2020 U.S. Dist. LEXIS 172836, *24, Judge Orrick noted, "The Ninth Circuit has

17  'decline[d] . . . to read an exhaustion requirement into RFRA where the statute contains no

18  such condition . . . and the Supreme Court has not imposed one.' *Oklevueha 1,* 676 F.3d

19  829, 838 (9th Cir. 2012). That decision – which was handed down after the 2009 Guidance

20  was in effect – noted that the Supreme Court 'has reviewed a RFRA-based challenge to

21  the CSA without requiring that the plaintiffs first seek a religious use exemption from the

22  DEA.' *id.*"   Nor are Defendants prejudiced, Judge Orrick noted, by denying a stay

---

[16] If every governmental agency decided that it was empowered to regulate religion or any other fundamental right without statutory authorization, chaos would inevitably ensue.

[17] As a general principal, Federal courts have a "virtually unflagging obligation . . .to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976), see also *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992)

[18] "This chapter applies to all Federal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993."

1  ("…federal defendants will also not suffer harm or inequity to justify a stay.") *id* at *25.

2  As noted, all other courts have also held that there is no requirement that Plaintiffs

3  apply for a religious exemption from the CSA. See *CHLQ v. Mukasey*, 2008 U.S. Dist.

4  LEXIS 102990 *8-*9 (D. OR) ("However, as defendants[19] admit, the CSA does not require

5  exhaustion of administrative remedies. Nor does RFRA require exhaustion."); see also

6  *United States v. Antoine*, 318 F.3d 919, 920 (9th Cir. 2003) (RFRA "suspends generally

7  applicable federal laws that 'substantially burden a person's exercise of religion' unless

8  the laws are 'the least restrictive means of furthering [a] compelling governmental

9  interest.'" (alteration in original) (quoting 42 USC 2000bb(a)-(b) and *Guam v. Guerrero*,

10  290 F.3d 1210, 1220-21 (9th Cir. 2002); *Oklevueha Native Am. Church of Hawaii v. Lynch,*

11  828 F.3d 1012, 1015 (9th Cir. 2016) (Oklevueha *II*) quoting *Antoine* 318 F.3d at 920. Nor

12  is petitioning the DEA for an exemption to the CSA the least restrictive means,[20] which is

13  an attempt to bypass Plaintiffs' *prima facie* case and Defendants' obligation to establish a

14  compelling interest - something they have not been able to do in the UDV or Santo Daime

15  cases discussed herein. *See* 42 U.S.C. 2000bb-1(b).

16  None of the cases Defendants cite supporting their request for a stay apply to the

17  facts or the law in this case. First, none of those cases involve RFRA wherein the statute

18  itself delegates to the courts the determination of appropriate relief. See 42 U.S.C. §

19  2000bb-1(c). Second, as discussed herein, the DEA has no expertise in determining

20  whether a plaintiff's exercise of religion has been substantially burdened. The Supreme

21  Court and all the district courts handling ayahuasca RFRA cases, have already held that

22  banning the importation and use of their sacrament is a substantial burden. Thirdly, there

23  is no administrative scheme - only a three-page *Guidance Document* which states: "The

24  contents of this document do not have the force and effect of law and are not meant to bind

25

26  [19] The same defendants as in this case.

27  [20] The Native American Church, the UDV, and the Santo Daime were not required to follow DOJ's exemption process.

28

the public in any way."[21] (Silver Decl. ¶17, Exhibit B - *Guidance Document* end of page 3). And finally, as discussed herein, given that it took the DEA four years to deny Soul Quest an exception and the fact they have never granted an exception for any church using ayahuasca as a sacrament, it is hard to see how a stay would preserve the resources of the parties or this court. (Doc. 12-1, p. 23, ln. 9).

## IV.   CONCLUSION

Plaintiffs, a religious organization, and its members, have adequately pled that they have standing under Article III and standing to bring a pre-enforcement action. Plaintiffs have adequately pled they have associational standing. Plaintiffs have adequately pled that the CSA, which resulted in the confiscation, sacrilegious destruction, and continued prohibition of its sacrament, is a substantial burden on their exercise of religion. Therefore, Plaintiffs have adequately stated a cause of action under RFRA.

Plaintiffs respectfully pray that this Court deny Defendants' Motion to Dismiss in its entirety.

DATED:   July 31, 2023          Respectfully submitted,

LAW OFFICE OF JACK SILVER

By:  /s/ *Jack Silver*

LAW OFFICE OF SEAN T. McALLISTER

By:  /s/ *Sean T. McAllister*

Attorneys for Plaintiffs
THE CHURCH OF THE CELESTIAL HEART, KAI KARREL, JADE J. OSBORNE, DANIEL POZAS, SARA MINTZER

---

[21] We can assume that Plaintiffs are included in category of "the public."