YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division
JULIE STRAUS HARRIS
Assistant Branch Director
SARAH M. SUWANDA
Trial Attorney
United States Department of Justice
Civil Division
Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Telephone: (202) 305-3196
sarah.m.suwanda@usdoj.gov

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE CHURCH OF THE CELESTIAL HEART, A CALIFORNIA RELIGIOUS CORPORATION, *et al.*, <br><br>       Plaintiffs, <br><br>       v. <br><br> PAMELA J. BONDI, in her official capacity as Attorney General of the United States, *et al.*, <br><br>       Defendants. | Case No. 1:23-cv-545-SAB <br><br> **JOINT STATEMENT RE DISCOVERY DISAGREEMENT (DEFENDANTS' MOTION TO COMPEL)** <br><br> <u>Hearing on Motion</u> <br><br> Date:   April 2, 2025 <br> Time:   10:00 a.m. <br> Place:  Courtroom 9, Sixth Floor <br>          United States Courthouse <br>          2500 Tulare Street <br>          Fresno, CA  93721 <br> Judge:  Hon. Stanley A. Boone |

**DEFENDANTS' POSITION**

I.   **Background**

A.   **Plaintiffs' Claim Under the Religious Freedom Restoration Act**

As alleged in the complaint, Plaintiff The Church of the Celestial Heart ("Celestial Heart") and its members seek to import ayahuasca, a tea that contains a controlled substance N,N-Dimethyltryptamine ("DMT"), for use as a sacramental tea in allegedly religious ceremonies. *See* Compl., ECF No. 1, ¶ 2.  But the Controlled Substances Act ("CSA"), 21 U.S.C. § 801 *et seq*., requires Defendants to control and monitor the flow of controlled substances—including DMT— into and within the United States.  *See* 21 U.S.C. §§ 812(b)(1), (c)(c)(6); *see also* Compl. ¶ 72. Plaintiffs contend that, notwithstanding the existence of a process for registering to import, distribute, dispense, or manufacture controlled substances like DMT, including for religious purposes, *see* 21 C.F.R. §§ 1301.01–1301.52, Defendants' implementation of the CSA forces them to choose between following the tenets of their religion or being coerced (by the threat of civil or criminal sanctions) into acting contrary to their religious beliefs, *see* Compl. ¶ 2.  Thus, Plaintiffs allege that Defendants are substantially burdening Plaintiffs' purported exercise of religion, without adequate justification, in violation of the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb-2000bb(4).   Among other things, Plaintiffs seek an injunction requiring Defendants to develop a "plan to effectuate the importation, distribution, possession, and accounting for Celestial Heart's sacramental tea consistent with the rights of Celestial Heart's members to use their sacramental tea in ceremonies."  Compl. at 29 (prayer for relief).

At the motion-to-dismiss stage, this Court accepted as true Plaintiffs' allegations that their religious practice had been chilled by the threat of prosecution and that the application of the CSA would substantially burden their purported sincere religious exercise.  *See Church of Celestial Heart v. Garland*, 2024 WL 99808, at *20, *24 (E.D. Cal. Jan. 9, 2024).  In denying Defendants' motion to dismiss, the Court noted that "Defendants ha[d] not demonstrated legally significant differences between" Celestial Heart and other religious groups who had received DEA registrations, particularly because Plaintiffs' allegations were "taken as true for purposes of the

motion to dismiss." *Celestial Heart*, 2024 WL 99808, at *24.

**B.    Defendants' Discovery Requests**

Following the Court's denial of Defendants' motion to dismiss, the parties entered the discovery process.  Defendants issued their written discovery requests in April 2024, serving interrogatories on April 12, 2024, and requests for document production on April 23, 2024.  *See* Ex. B, Defendants' First Set of Interrogatories; Ex. C, Defendants' First Set of Requests for Production.  As relevant to Defendants' motion to compel, Plaintiffs responded to Defendants' requests for production on May 16, 2024.  *See* Ex. D, Plaintiffs' Responses to Defendants' First Set of Requests for Production.  In their responses, Plaintiffs lodged various objections to each of Defendants' interrogatories and requests for production, including by purporting to assert "general objections" applicable to all interrogatories and requests, as well as objections to the definitions used therein.  *See, e.g.*, *id.* at 3–4.  Thereafter, Defendants worked with Plaintiffs to identify and resolve deficiencies within Plaintiffs' responses, including through meet-and-confers on July 2 and July 29, 2024, and by serving deficiency letters on July 10 and July 25, 2024.  *See* Ex. E, Defendants' July 10, 2024 Deficiency Letter; Ex. G, Defendants' July 25, 2024 Deficiency Letter; *see also* Ex. F, Plaintiffs' July 22, 2024 Response Letter.  Plaintiffs eventually amended their interrogatory responses, *see* Ex. H, Plaintiffs' Amended Response to Defendants' First Set of Interrogatories, and provided further document productions, but these supplemental responses did not fully address Defendants' concerns about Plaintiffs' compliance with their discovery obligations.

Given the continued deficiencies in Plaintiffs' responses, Defendants served Plaintiffs with a third deficiency letter on October 4, 2024.  *See* Ex. I, Defendants' October 4, 2024 Deficiency Letter.  Among other things, Defendants' October 4 Deficiency Letter explained that, in light of the broad-based relief Plaintiffs seek in this case, Plaintiffs must produce responsive documents from *all* members of Celestial Heart, including, but not limited to, the members already identified in Plaintiffs' interrogatory responses.  *See id.* at 3.  Defendants further explained that Plaintiffs had failed to produce text messages in a legible format, much less any original e-mail communications,

any communications from the various messaging platforms Plaintiffs use (*e.g.*, WhatsApp), and any metadata associated with the documents Plaintiffs have produced to date.  *See id.* at 1–2. Finally, Defendants noted that, even as amended, certain of Plaintiffs' interrogatory responses omitted information specifically requested by Defendants, including information about individuals serving in or requesting to serve in leadership roles within Celestial Heart, Celestial Heart's membership-screening process, and the process by which Celestial Heart may exclude individuals from membership or attendance at Celestial Heart's ceremonies.  *See id.* at 3–4.

After Defendants served their October 4 Deficiency Letter, the parties agreed to their first discovery pause (from roughly October 11, 2024, through January 21, 2025) to facilitate productive settlement discussions.  *See* ECF No. 51-2.  By virtue of that pause, Plaintiffs did not provide any written response to the outstanding deficiencies identified in Defendants' October 4 Deficiency Letter until the parties' exchange of drafts on the joint statement on March 19, 2025. *See* Ex. A, Declaration of Sarah M. Suwanda, ¶ 25.

Because Plaintiffs have not cured the clear deficiencies in their discovery responses, Defendants now move the Court to compel Plaintiffs to provide full, complete, and non-evasive interrogatory answers and document productions.

### C.    Conferral Process in Connection with Defendants' Motion to Compel

On March 12, 2025, following a productive call regarding settlement, Defendants informed Plaintiffs that they would promptly file their notice of motion and motion to compel that evening, in order to preserve their defenses (should settlement talks break down) and the Court's ability to order relief prior to the close of fact discovery.  *See* Ex. A ¶ 10.  Defendants indicated that they would be available to confer regarding the motion to compel and associated joint statement early in the following week.  *See id.*  After reviewing Plaintiffs' written feedback on settlement on March 13, and believing the parties to be close to reaching a settlement, Defendants determined it would be appropriate to move for a continuance of the hearing on the motion to compel by two days, in order to permit the parties additional time to focus on settlement before they needed to complete the conferral process on Defendants' motion and the parties' related joint statement.  *See id.* ¶¶ 11–

12.  With Plaintiffs' consent, Defendants, on March 17, 2025, filed their motion for administrative relief, requesting a two-day continuance of the hearing on their motion to compel.  *See* ECF No. 58.  On March 18, 2025, the Court, in its discretion, denied Defendants' motion for administrative relief.  *See* ECF No. 60.

Shortly after receipt of the Court's order denying Defendants' request for continuance, Defendants promptly reached out to Plaintiffs on the evening of March 18, conveying another settlement offer and indicating their availability to confer regarding the motion to compel (and the latest settlement offer) anytime after 8:00 a.m. Pacific Time on March 19.  *See* Ex. A ¶¶ 16–17.  Shortly after 9:00 a.m. Pacific Time on March 19, Defendants again reached out to ensure Plaintiffs' receipt of their request for conferral.  Plaintiffs then responded to acknowledge receipt and offered to confer on March 20, between 10:00 a.m. and 12:00 p.m. Mountain Time.  *See id.* ¶ 18.  Defendants subsequently responded to Plaintiffs, noting the local rule requirement that the parties submit a joint statement on the pending motion to compel by the end of the day on March 19.  *See id.* ¶ 19.  Defendants again offered to confer at any time for the rest of the day on March 19, and indicated that, absent a telephonic conferral, they would transmit a draft of their position statement by 1:00 p.m. Pacific Time.  *See id.*  Following this exchange, Plaintiffs again responded stating that they would be unavailable to confer before March 20.  *See id.* ¶ 20.  At 1:26 p.m. Pacific Time, Defendants transmitted a draft of the joint statement, including Defendants' full position statement, and invited Plaintiffs to insert any position statement they wished to include.  *See id.* ¶ 21.  Defendants informed Plaintiffs that, if Plaintiffs ultimately could not provide any position statement for inclusion in the joint statement, Defendants would file their position via a declaration, consistent with the procedures outlined in Local Rule 251(d).  *See id.*  Defendants also noted that they remained available to confer on March 20, or later, and would be willing to file an amended supplemental joint statement that included Plaintiffs' position, should Plaintiffs eventually provide their written positions regarding Defendants' motion to compel, and to reflect any effect the parties' conferral might have on the parties' positions.  *See id.*

Plaintiffs responded to Defendants, suggesting their belief that the joint statement was not

due until the following day, March 20.  *See id.* ¶ 22.  Defendants then pointed out to Plaintiffs the provisions of Local Rule 251, specifically the requirement that "the Joint Statement re Discovery Disagreement or an affidavit as set forth" in Local Rule 251(d) be "filed at least fourteen (14) days before the scheduled hearing date."  *See id.* ¶ 23.  Defendants also noted that their earlier motion for administrative relief had been predicated on this understanding of the schedule, and noted that the Court's order denying Defendants' motion did not suggest that Defendants' understanding was erroneous.  *See id.*  Ultimately, at 2:42 p.m. Pacific Time, Plaintiffs informed Defendants that they would provide their positions regarding Defendants' motion to compel for inclusion in a joint statement to be filed on March 19.  *See id.* ¶ 24.

Despite having months to review Defendants' three deficiency letters and nearly a week to consider Defendants' notice of motion and motion to compel and the supporting proposed order specifying the precise relief Defendants sought, and notwithstanding Defendants' prompt and multiple offers to confer via teleconference regarding the motion to compel after their motion to continue the hearing was denied, Plaintiffs did not convey their position regarding the discovery deficiencies that are the subject of Defendants' motion to compel until 3:47 p.m. Pacific Time on March 19, 2025.  *See id.* ¶ 25.

Accordingly, while Defendants would have preferred to have had more time for the parties to confer by phone in advance of this filing, *see* ECF Nos. 58, 60, they respectfully submit that their attempts to confer and obtain Plaintiffs' positions regarding Defendants' motion to compel were reasonable under the circumstances and done in good faith.  To that end, Defendants remain willing to confer with Plaintiffs further and, if appropriate, submit an amended supplemental joint statement to the Court in advance of the hearing on April 2, and in compliance with Local Rule 251.

## II.  Legal Standards

The general scope of discovery in civil cases is set forth by Federal Rule of Civil Procedure 26(b)(1), which authorizes parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case,"

considering the circumstances presented in a particular case.  Fed. R. Civ. P. 26(b)(1).  "Information within this scope . . . need not be admissible in evidence to be discoverable."  *Id.*  And "[r]elevancy is broadly defined to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Krause v. Krause*, 2022 WL 4345390, at *2 (E.D. Cal. Sept. 19, 2022) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  Thus, "discovery is not limited to issues raised by the pleadings, . . . [n]or is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits."  *Oppenheimer Fund*, 437 U.S. at 351.  "If relevance is in doubt, courts should err on the side of permissive discovery."  *Puckett v. Cnty. of Sacramento*, 2024 WL 1641888, at *1 (E.D. Cal. Apr. 16, 2024) (quoting *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 577 (N.D. Ill. 2004)).

Federal Rule of Civil Procedure 37(a)(1) provides that "a party may move for an order compelling disclosure or discovery."  Fed. R. Civ. P. 37(a)(1); *see also* Local Rule 251 (governing motions dealing with discovery matters).  Accordingly, when a party fails to "answer an interrogatory submitted under Rule 33" or to "produce documents . . . as requested under Rule 34," the other party may move to compel a proper "answer" or "production."  Fed R. Civ. P. 37(a)(3)(B)(iii), (iv).  As relevant here, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Fed R. Civ. P. 37(a)(4).

"The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)."  *Givens v. Calif. Dep't of Corr. & Rehab.*, 2023 WL 6313986, at *1 (E.D. Cal. Sept. 28, 2023) (quoting *Bryant v. Ochoa*, 2009 WL 1390794 at *1 (S.D. Cal. May 14, 2009)).[1]  "Thereafter, the party opposing discovery has the burden of

---

[1] Phrased somewhat differently, the "party moving to compel bears the burden of informing the court (1) which discovery requests are the subject of his motion to compel, (2) which of the responses are disputed, (3) why he believes the response is deficient, (4) why [the nonmoving party's] objections are not justified, and (5) why the information he seeks through discovery is relevant to the prosecution of this action."  *Givens v. Calif. Dep't of Corr. & Rehab.*, 2023 WL 6313986, at *1 (E.D. Cal. Sept. 28, 2023) (citing *McCoy v. Ramirez*, 2016 WL 3196738 at *1 (E.D. Cal. 2016)).

showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." *Id.* (quoting *Bryant*, 2009 WL 1390794 at *1). A proper objection will "specifically state the objection and how it relates to the particular request being opposed," and "show specifically how . . . each request is irrelevant or overly broad, burdensome or oppressive." *Flanagan v. Benicia Unified Sch. Dist.*, 2008 WL 2073952, at *4 (E.D. Cal. May 14, 2008). "[T]he objecting party has a heavy burden to show why discovery should be denied, by clarifying and explaining its objections, and providing support therefor." *Id.*

**III.    Argument**

   **A.    Plaintiffs must search for and produce all responsive documents.**

   Plaintiffs' responses to Defendants' requests for production are deficient on their face. And despite Defendants' repeated efforts to confer with Plaintiffs about those deficiencies, Plaintiffs have not sufficiently made any such corrections. The information sought by Defendants' requests for production is highly relevant to the claims and defenses asserted in this case. Accordingly, the Court should compel Plaintiffs to supplement their document productions in order to fully comply with their outstanding discovery obligations.

1.    <u>Rule 34</u>

   Federal Rule of Civil Procedure 34 permits a party to request production of "documents or electronically stored information" that is "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1)(A). A request for production need only describe the documents sought with "reasonable particularity," specify a reasonable time, place, and manner for compliance, and specify the form or forms in which electronically stored information can be produced. Fed. R. Civ. P. 34(b)(1).

   A complete response to a request for production of documents must state "with specificity [any] grounds for objecting to the request, including the reasons," and "whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(B), (C). In addition, if a responding party asserts "an objection to a requested form for producing electronically stored information," then that party "must state the form or forms it intends to use."

Fed. R. Civ. P. 34(b)(2)(D). "When a party resists discovery, [it] 'has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.'" *Gorrell v. Sneath*, 292 F.R.D. 629, 632 (E.D. Cal. 2013) (quoting *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D 281, 283 (C.D. Cal. 1998)). "Boilerplate objections to a request for a production are not sufficient." *Id.* at 632–33 (citing *Burlington Northern & Santa Fe Ry. v. U.S. Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005)).

> ### 2. Plaintiffs must produce responsive documents from non-Plaintiff members of Celestial Heart, particularly members identified in interrogatory responses.

Plaintiffs should be compelled to search for and produce documents from or involving *all* members of Celestial Heart, not just the named individual Plaintiffs. Many of Defendants' requests for production seek documents or communications from Celestial Heart members other than the named Plaintiffs in this case. *See, e.g.*, Ex. C, at 6 ("Produce any and all documents or communications with any and all individuals who are members in The Church of the Celestial Heart, and/or individuals who have facilitated, participated in, requested to participate in, or attended one or more of your ceremonies. This request includes, but is not limited to, any documents or communications pertaining to "medical and psychological intakes," the "intensive screening" process, and explanations as to why any prospective or actual participant was or was not allowed to participate in one or more of your ceremonies."). Nevertheless, Plaintiffs' productions to date appear to show that they have limited their production of documents only to files involving the named Plaintiffs.[2]

Indeed, Plaintiffs seem to object to searching for and producing documents and communications from non-Plaintiff members of Celestial Heart principally on relevance, proportionality, privacy, and First Amendment grounds. For example, in objecting to Defendants'

---

[2] Given that Plaintiffs have anonymized the handful of text messages they have produced to date, and have also failed to produce those records in a fully legible form, Defendants cannot exclude the possibility that at least some of that small production may have been produced from Celestial Heart members other than the named Plaintiffs.

Request for Production No. 6, Plaintiffs state:

> Plaintiffs object to this request on the ground the term "any and all" is overbroad and burdensome. Plaintiffs further object to this request insofar as it seeks privileged information and attorney work product. Plaintiffs further object to this request on the ground it violates Plaintiffs' First Amendment right of association and privacy, and/or other constitutional and statutory protections. Plaintiffs further object to this request on the ground it may expose private and personally identifiable information for persons who are not party to this action without their consent. Specifically, the request threatens to reveal private, personally identifying information of non-parties without their consent, violating their and Plaintiffs', members,' and participants' right of privacy, First Amendment right of association, and/or other constitutional and statutory protections. Plaintiffs will construe this request in a reasonable manner so as to exclude communications that are not relevant to the claims or defenses of this case, not likely to lead to admissible evidence, and information that reveals private, personally identifying information of non-parties or that would violate Plaintiffs' First Amendment right of association and privacy, or any applicable privilege.

Ex. D, at 7–8.

None of these objections holds water. Plaintiffs' privacy and First Amendment concerns are beside the point, and have even less import as to those named individuals who Plaintiffs have already identified in their interrogatory responses. *See Arizona Yage Assembly v. Barr*, 2024 WL 1011677, at *1 (D. Ariz. Feb. 22, 2024) ("[C]onfidentiality promises made to third parties are not grounds for objection, particularly where, as here, a protective order is in place."); *id.* at *2 ("[T]he First Amendment Free Exercise and Establishment Clauses do not establish any privilege applicable to the civil discovery sought by Defendants."); *see also In re Application of O'Keeffe*, 2016 WL 2771697, at *5 (D. Nev. Apr. 4, 2016) (A party may not invoke privacy "to prevent discovery regarding matters that a party places in controversy."). And in any event, Defendants' requests also are relevant and proportional to the needs of this case, because Plaintiffs' suit seeks relief on behalf of *all* members of Celestial Heart, and Defendants' affirmative defenses under RFRA require a fact-specific and individualized evaluation of the sincerity of the beliefs of the members of Celestial Heart and attendant diversion risks. *See Arizona Yage Assembly*, 2024 WL 1011677, at *9.

Accordingly, the Court should compel Plaintiffs to search for and produce documents from

all of Celestial Heart's members. And at minimum, given their already clear relevance to this case, the Court should compel Plaintiffs to search for and produce documents from individual members already identified in Plaintiffs' interrogatory responses.

        3.   <u>Plaintiffs must search for and produce electronic communications, including e-mail communications and similar messages.</u>

The Court should also compel Plaintiffs to search for and produce electronic communications, including e-mails and messages sent via text, WhatsApp, Signal, or any similar electronic messaging platform. As a general matter, all of Defendants' requests for production call for the search, collection, and production of electronic communications. *See* Ex. C, 6–8. For example, each of Defendants' requests for production calls for the production of "documents," and many call for "communications." *See, e.g.*, *id.* at 7 (Request for Production No. 10, requesting that Plaintiffs "[p]roduce any and all documents and communications regarding or relating to any instance in which aid, support, or assistance, whether medical, psychological, or otherwise, was offered, administered, or provided to any person prior to, during, or after a ceremony, including any instance in which any person was not permitted to continue with a ceremony"). Relevant here, Defendants expressly defined "document," for purposes of their requests for production, as follows:

> The word "document" is intended to have the broadest permissible meaning under the Federal Rules of Civil Procedure. It includes, without limitation, any kind of written, typewritten, printed, or recorded material whatsoever, including but not limited to any notes, memoranda, charges, complaints, claims, minutes from meetings, affidavits, statements, papers, files, forms, data, tapes, printouts, letters, reports, communications (electronic or otherwise), contracts, agreements, telegrams, records, correspondence, diaries, calendars, diagrams, tables, brochures, pamphlets, instruction manuals, charts, logs, medical x-rays, medical images, medical records, medical charts, medical notes, medical test results, recordings and transcriptions of recordings, information retrievable from computers, photographs, or any other writing, however produced, reproduced, recorded, or stored, whether electronic or otherwise. A draft or non-identical copy is a separate document. "Document" also includes any attachments or enclosures to the document, to the file or container holding the document, and to any writing or printing which might appear on such file or container.

*Id.* at 1. And Defendants further defined "communication" as:

The term "communication" means any exchange of information by any means of transmitting, sending, or receiving information of any kind.

*Id.* at 2.

In their response to Defendants' requests for production, Plaintiffs did not object to these definitions, nor did they lodge an objection to searching for and producing electronic communications. *See* Ex. D, at 4 (objecting only to the definition of "ayahuasca"). Accordingly, any possible objection Plaintiffs might have had to these definitions has been waived. *See Morgan Hill Concerned Parents Ass'n v. Calif. Dep't of Educ.*, 2017 WL 445722, at *3 (E.D. Cal. Feb. 2, 2017) (discussing waiver). But in any event, the electronic communications sought by Defendants' requests for production are relevant and proportional to the needs of this case. *Compare, e.g.*, Ex. C, at 7 (Request for Production No. 11, calling for "any and all documents and communications regarding or relating to any instance in which misconduct of any kind (*e.g.*, sexual misconduct, manipulation, exploitation, battery, assault, fraud, use of controlled substances other than ayahuasca, etc.) occurred or was alleged to have occurred prior to, during, or after a ceremony, whether or not such misconduct was reported to a member of Celestial Heart, law enforcement, any emergency services (*e.g.*, 911), or any legal authorities"), *with Arizona Yage Assembly v. Barr*, 2024 WL 1011677, at *8 (D. Ariz. Feb. 22, 2024) (noting, in the context of an even broader request for communications, that "the documents sought are plainly relevant to potential diversion and safety risks posed by Plaintiffs' practices and Defendants' compelling interest inquiry"), *and id.* at *5 (requiring that "Plaintiffs must produce all documents and communications responsive to this request, including not only communications between Plaintiffs and the individuals identified in their initial disclosures, but all communications those individuals have had related to ayahuasca, including with participants").

Nevertheless, to date, Plaintiffs' productions of electronic communications have been minimal. Plaintiffs previously produced a handful of anonymized text messages, but the text in a large fraction of those messages is either obscured, illegible, or rendered only as an inaccessible

audio message.[3]  Meanwhile, Plaintiffs have not produced any responsive communications from the variety of other communications platforms, such as WhatsApp, that Plaintiffs concede to using in their interrogatory responses).   Nor have Plaintiffs produced any original e-mail communications between and among Plaintiffs and/or any individual who purports to be a member of Celestial Heart.  In fact, in conferring with Defendants regarding the deficiencies in Plaintiffs' productions, Plaintiffs' counsel suggested that Celestial Heart's chosen e-mail platform—Proton Mail—has a retention policy that has precluded Plaintiffs from retaining potentially responsive e-mails for the proposed relevant time period of 2021 to 2023, *i.e.*, from the alleged seizure invoked in the Complaint to the filing of that Complaint.  *See* Ex. I, at 2.  But publicly available sources indicate that, "[b]y default, emails sent from [a] Proton Mail account don't expire."  *See Proton Mail message expiration*, https://perma.cc/4J7P-Z9SX.  In any event, a "party to federal litigation that is either anticipated or pending is required to preserve potentially relevant evidence." *Freeman v. Giuliani*, 691 F. Supp. 3d 32, 53 (D.D.C. 2023).  Given that Plaintiffs initiated this litigation, the suggestion that Plaintiffs are unable to conduct an effective search for e-mail communications is especially concerning.  The Court should reject Plaintiffs' excuses and compel them to search for and produce electronic communications.

### 4.    Plaintiffs must provide metadata for the documents they produce.

Finally, the Court should compel Plaintiffs to produce metadata for the documents they have already and ultimately will produce.  As Defendants have conveyed to Plaintiffs repeatedly, "at a minimum," Defendants require "Author(s), Recipient(s), Custodian, Date Created, Date Sent, and Subject/Title" information for each document or communication that Plaintiffs produce.  *See* Ex. E, at 2; Ex. G, at 2; Ex. I, at 2.  Such metadata for produced documents is essential so that Defendants may assess the adequacy and sufficiency of the documents Plaintiffs have produced.

---

[3] On September 3, 2024, Plaintiffs attempted to transmit a series of documents to Defendants via Google Drive.  As counsel for Defendants explained in an e-mail dated September 10, 2024, Defendants were unable to access those documents and requested Plaintiffs to re-transmit them. On March 13, 2025, Plaintiffs again attempted to transmit a batch of documents via Google Drive. Again, Defendants were unable to access these materials.

*See Javo Beverage Co. v. Calif. Extraction Ventures, Inc*., 2020 WL 2062146, at *7 (S.D. Cal. Apr. 29, 2020) ("Assuming the requesting party articulates a 'precise and detailed' discovery request, the ESI and its accompanying metadata is discoverable and producible.").

Plaintiffs' refusal to date to comply with Defendants' request for metadata cannot be justified. In the instructions included with Defendants' requests for production, Defendants instructed Plaintiffs, among other things, to "please include all available metadata in the load files for each document you produce; and please produce scans of any hardcopy materials as load-ready data, and supply a file identifying the custodian from whom each hard-copy document was collected." Ex. C, at 5; *accord* Fed. R. Civ. P. 34(b)(1) (requiring the requesting party to specify the form or forms in which electronically stored information should be produced). Plaintiffs did not object to this instruction, nor did they indicate in their response to Defendants' requests for production that they would provide documents in an alternate form from that requested by Defendants. *See generally* Ex. D; *cf.* Fed. R. Civ. P. 34(b)(2)(D) (addressing requirements for objections concerning the form of production for electronically stored information). Accordingly, Plaintiffs have waived any objection they may have had to the requested format and should be compelled to comply with Defendants' request for metadata. *Morgan Hill*, 2017 WL 445722, at *3 ("Plaintiffs specified that ESI should be produced in native format with all metadata attached. If defendant objected to that format, it was obligated to state its objection and to propose an alternate format. Defendant neither objected to the format nor proposed an alternative, and accordingly it waived any objections to format.").

**B.    Plaintiffs' interrogatory responses are incomplete and must be amended.**

The Court should also compel Plaintiffs to supplement their interrogatory responses, once again. To date, Plaintiffs have refused to provide full answers to Interrogatory Nos. 2, 4, and 6, which call for information about Celestial Heart's leadership, Celestial Heart's membership-screening process, and attendance at Celestial Heart's ceremonies. Defendants require all of this information to fairly contest Plaintiffs' "prima facie case under RFRA," and to establish their "affirmative defense." *Gonzales v. O Centro*, 546 U.S. 418, 428 (2006); *cf. Celestial*

*Heart*, 2024 WL 99808, at *24 (noting Defendants' need to "show[] material differences between the religious groups" seeking religious exemptions). None of Plaintiffs' objections can justify their refusal to provide it to Defendants. The Court should direct Plaintiffs to supplement their interrogatory responses with complete and meaningful answers.

### 1. Rule 33

Federal Rule of Civil Procedure 33 authorizes a party to propound interrogatories relating to "any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). Absent objection, the responding party must respond to each interrogatory "separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Moreover, a "party answering interrogatories cannot limit his answers to matters within his own knowledge and ignore information immediately available to him or under his control." *Givens v. Calif. Dep't of Corr. & Rehab.*, 2023 WL 6313986, at *13 (E.D. Cal. Sept. 28, 2023) (citing *Essex Builders Group, Inc. v. Amerisure Ins. Co.*, 230 F.R.D. 682, 685 (M.D. Fla. 2005)).

Any objections to an interrogatory must be stated "with specificity." Fed .R. Civ. P. 33(b)(4). "Generic, boilerplate objections . . . are not sufficient." *Dolarian Cap., Inc. v. SOC, LLC*, 2012 WL 4026818, at *2 (E.D. Cal. Sept. 12, 2012). "Rather, a party resisting discovery must make some showing as to how each discovery request is not relevant and/or is overly broad or unduly burdensome." *Id.* "The fact that an interrogatory calls for a thorough response—one that will take time and effort to answer—does not make it improper." *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 437 (N.D. Tex. 2016) (citing *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 307–08 (5th Cir. 1973)).

### 2. Plaintiffs must complete their answer to Interrogatory No. 2.

Interrogatory No. 2 seeks information about Celestial Heart's leadership and other members involved in significant roles, such as facilitating the church's ceremonies:

> **Interrogatory No. 2:** Identify each and every person who has served in, has been asked to serve in, or has requested to serve in, a leadership role or position of authority in one of your ceremonies or in your organization, including but not limited to any individual who has served as, has been asked to serve as, or has requested to serve as a "Lead Pastor," "Padrinho," "Madrinha," "Fardado," "board

member," "starred member," "initiated member," "lead guardian[]," "server of the sacrament," "pastoral leadership team," "ceremonial leader[]," "members who ask to be initiated into the lineage," "master[]," "elder[]," "practicing healer," "medium[]," or "facilitator of [a] ceremony."[4]  For each person identified, indicate and describe which role or roles the person served in, was requested to serve in, or requested to serve in; when the person served in, was requested to serve in, or requested to serve in, that role; or, if the person never served, why not.

Ex. B, at 6.

This information is relevant to Defendants' affirmative defenses under RFRA.  Defendants must make an individualized showing that application of the CSA and its implementing regulations *to Celestial Heart* is the least restrictive means of furthering a compelling governmental interest.  *See* 42 U.S.C. § 2000bb-1(b).  Information about who leads ceremonies and who handles the controlled substance—and, equally, who was not selected for such duties—is all relevant to this inquiry.  *See Ariz. Yage Assembly v. Barr*, 2024 WL 1011677, at *2 (D. Ariz. Feb. 22, 2024) (finding it "crucial" to know "the identity of persons asked to serve or [who] have requested to serve in leadership roles or positions of authority in [the plaintiff ayahuasca church] or its ceremonies, which roles they served in or requested to serve in, and when").  Such information is essential to evaluating whether the practices of Celestial Heart and its members pose health or safety risks to participants or diversion risks (and thus health or safety risks to the broader public), and whether Celestial Heart's facilitators can be trusted to administer a controlled substance and implement the security measures required of DEA registrants handling controlled substances.  *See Oklevueha v. Holder*, 2013 WL 3243371, at *5 (D. Haw. 2013) ("information concerning the membership and leadership" is "calculated to lead to discovery of admissible evidence concerning the genuineness of Plaintiffs' religious beliefs and whether the [CSA] is a substantial burden on those beliefs").

Plaintiffs responded to Interrogatory No. 2 as follows:

Plaintiffs object to this Interrogatory on the ground that the term "each and every person" is vague, overbroad, and burdensome.  Plaintiffs further object to the extent the Interrogatory seeks privileged information and attorney work product.

---

[4] *See, e.g.*, Compl. ¶¶ 16, 18, 24–27, 29, 41, 43–44, 47, 78; *see also* The Church of the Celestial Heart, *Code of Ethics*, https://www.celestialheartchurch.com/code-of-ethics.

Plaintiffs further object to this Interrogatory on the basis of First Amendment right of association and right of privacy, and that it may expose private and personally identifiable information for persons who are not party to this action without their consent. Plaintiffs will construe this Interrogatory to exclude information not reasonably expected to lead to relevant information.

Without waiving any objections, Plaintiffs respond as follows:

>        Handling, Storing, and Transporting the Sacrament from/to the Ceremony:
>
>        Padrinho - Kai Karrel
>
>        Serving of Sacrament within ceremony only:
>
>        Padrinho - Kai Karrel
>
>        Madrinha - Jade Osborne
>
>        Starred Members:
>
>        Jenni Rierson, Royi Geller, Evalyn Cortez, Christine Erwin, Geoff Erwin, Meredith Markworth-Pollack, Maya Reynolds, Daniel Pozas, Sara Mintzer-Goldberg, LeeAnn Mallorie, Luna Jae, Claire Cattaneo.
>
>        The first cup of sacrament is always served by Plaintiffs Karrel and Osborne. The second, third, and (sometimes) fourth cup are served by Starred Members. No one in this category has ever been asked to serve in a position of leadership that refused to serve. Plaintiff Karrel retains ultimate authority and control over all sacrament before, during, and after ceremonies.

Ex. H, at 7–8.

Contrary to the information called for in Interrogatory No. 2, this response fails to describe the particular leadership roles each person served in with sufficient detail. It also fails to indicate whether any individual requested to serve in a leadership role, or whether Celestial Heart requested that any individual serve in a leadership role. It also does not specify when each person served in a leadership role. Finally, Plaintiffs' response entirely omits any information as to whether any individual who requested to serve did not serve in a leadership role and the reasons why.

None of the objections asserted can justify Plaintiffs' refusal to provide the missing information. It is hard to see how Defendants' request for information regarding "each and every person who has served in, has been asked to serve in, or has requested to serve in, a leadership role or position of authority in one of your ceremonies or in your organization" can be regarded as

"vague, overbroad, and burdensome" given Celestial Heart's apparently limited membership.  *See* Compl. ¶ 8 (describing church as having approximately 350 members).  Moreover, Plaintiffs have never actually identified any particular withholdings based on a privilege.  *See Clarke v. Am. Com. Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992) (noting that "blanket assertions of [a] privilege are extremely disfavored" (internal quotation omitted)).    And Plaintiffs' privacy and right-of-association objections lack foundation in the law.  *See Ariz. Yage Assembly*, 2024 WL 1011677, at *1 ("[C]onfidentiality promises made to third parties are not grounds for objection, particularly where, as here, a protective order is in place."); *id.* at *2 ("[T]he First Amendment Free Exercise and Establishment Clauses do not establish any privilege applicable to the civil discovery sought by Defendants.").[5]  The Court should compel Plaintiffs to amend their response to Interrogatory No. 2, so as to provide a complete answer.

### 3.    Plaintiffs must complete their answer to Interrogatory No. 4.

Interrogatory No. 4 seeks information about Celestial Heart's membership recruitment and screening process:

> **Interrogatory No. 4:**  Describe in detail the process by which an individual becomes a member or congregant of Celestial Heart.  This includes but is not limited to how Celestial Heart recruits members/advertises for its ceremonies, including any Facebook and other social media advertisements; what requirements, if any, Celestial Heart imposes on individuals to become members of Celestial Heart; the responsibilities or obligations of membership; the ways in which an individual participates as a member of Celestial Heart; the duration of such membership; whether any monetary transfers are made in connection with such membership, including required, requested, recommended, suggested, or customary fees, dues, donations, or contributions; any reasons why membership would be granted, denied, or terminated, including any policies or criteria that aid in making such a determination; and each and every person involved in making

---

[5] Plaintiffs also purport to apply certain "general objections" across all of their responses.  *See* Ex. H, at 3–4.  But such "[g]eneric, boilerplate objections . . . are not sufficient" to lodge a proper objection.  *Dolarian Cap., Inc.*, 2012 WL 4026818, at *2.  And even if they were assessed individually, they would add nothing to the strength of Plaintiffs' objections.  *See, e.g.*, *Heller v. City of Dallas*, 303 F.R.D. 466, 484 (N.D. Tex. 2014) ("[T]he objection to all requests to the extent that they exceed or conflict with the scope of permissible discovery is an off-the-shelf and decidedly non-specific objection that gains the responding party nothing without tying it to a particular discovery request and explaining precisely how that request exceeds or conflicts with the scope of permissible discovery.").

membership determinations.

Ex. B, at 6–7.

This information is plainly relevant to Defendants' affirmative defenses under RFRA. Information about how an individual becomes a member of Celestial Heart, whether and how Celestial Heart screens its members, and whether there are any financial requirements associated with membership is highly relevant to determining whether Celestial Heart properly screens and excludes participants to protect the health and safety of ceremony participants and adequately mitigates the risk of diversion. *See Oklevueha*, 2013 WL 3243371, at * 6 (finding requests "concerning the membership" of a religious organization were "reasonably calculated to lead to discovery of admissible evidence concerning the genuineness of Plaintiffs' religious beliefs and whether the [CSA] is a substantial burden on those beliefs"). Such a determination is necessary to the individualized RFRA inquiry.

Plaintiffs responded to Interrogatory No. 4 as follows:

Plaintiffs object to this Interrogatory to the extent it violates non-parties' and Plaintiffs' First Amendment right of association and right of privacy, and may expose private and personally identifiable information for persons who are not party to this action without their consent. Plaintiffs further object to this Interrogatory to the extent it requests privileged or work product disclosures. Plaintiffs further object to this Interrogatory to the extent that, ". . . required, requested, recommended, suggested, or customary fees, dues, donations, or contributions . . ." are not relevant to either parties' claims or defenses and are therefore not likely to lead to relevant information.

Without waiving any objections, Plaintiffs respond as follows:

Currently, The Church of the Celestial Heart is open to receiving new members only via word of mouth and by invitation of a current sponsoring member. Currently there are no social media or other online forms for joining the Church's ceremonies. The requirements for going through an invitation process, include filling out forms online on the Church's website and then going through an in-person telephone interview with Madrinha Jade Osborne, who will review the form, explain, and share in detail about the nature of our religious and ceremonial work, and the work with the sacrament, and determine if the person is qualified to be a member. The invitation process includes collecting personal data, including an emergency contact and reasons for attending, an in-depth medical form that includes questions about mental health and family history, and a waiver of liability expressing the person's knowledge of

joining a religious ceremony that involves the ingestion of our Holy Sacrament - Ayahuasca. These details will be reviewed again over the telephone by Madrinha Jade Osborne, and if further questions or verifications are needed, they will be brought forth at that time.

Other than the very specific health considerations (which are found in a previously disclosed document *Preparation for Ceremony, Guidelines, and Instructions.pdf*) participants provide information to ensure that their reasons for attending are in alignment with the core beliefs of the Church.

Once the invitation process is complete, new members will be invited to join the Church's ceremonies. Membership is denied for physical or psychological health reasons. Membership is also denied if, within ceremony, the Padrinho or Madrinha determines that person is unfit for participation due to physical, psychological or emotional instability.

After two years of membership and participation in at least 70% of the yearly ceremonies, members are invited to become a starred member (a process called Fardamento or Starring) in which, after being trained in the Church's training weekends and working within the Church as a guardian and closely trained by the Padrinho and Madrinha they will receive their star, and official membership in a special ceremony called the Blue Star ceremony, which happens on September 29, in the Holy day of Archangel Michael Lent. Selected Starred members within the Church are the only ones allowed to serve the Sacrament within the ceremony after close training with the Padrinho and Madrinha.

Currently there are no monthly membership fees or requirements. Members are asked to donate for the specific ceremonies they participate in. From time to time, the Church holds internal fundraising campaigns to support its growth and in support of other humanitarian projects.

Ex. H, at 10–12.

Contrary to the information called for in Interrogatory No. 4, Plaintiffs' amended response fails to detail what requirements, if any, Celestial Heart imposes on individuals before they may become members of Celestial Heart. Nor does Plaintiffs' amended response appear to fully explain the responsibilities or obligations of membership, the ways in which an individual participates as a member of Celestial Heart, and the expected duration of membership once granted. In addition, Plaintiffs have omitted information regarding any reasons why membership would be granted, denied, or terminated, including any policies or criteria that aid in making such a determination.

Here again, Plaintiffs' objections do not justify these omissions.  Plaintiffs' confidentiality concerns are misplaced, particularly in light of the existence of a protective order in this case.  *See* ECF No. 35; *see also Ariz. Yage Assembly*, 2024 WL 1011677, at *1.  Similarly, Defendants are entitled to information to test the "genuineness of Plaintiffs' religious beliefs and whether the Controlled Substance Act is a substantial burden on those beliefs," *Oklevueha*, 2013 WL 3243371, at *5, and Plaintiffs may not invoke the First Amendment as a shield to withhold such information, *Cason v. Federated Life Ins.*, 510 F. App'x 663, 665 (9th Cir. 2013).  Plaintiffs have not particularized their generalized concerns about "privileged or work product disclosures."  *See Clarke*, 974 F.2d at 129.  And Defendants' inquiry into "fees, dues, donations, or contributions" is clearly "relevant to evaluating Plaintiffs' true purpose and sincerity, and finances consistent with a religious organization as opposed to a commercial enterprise that engages in the purchase and sale of ayahuasca for profit."  *Ariz. Yage Assembly*, 2024 WL 1011677, at *6 (internal quotation marks omitted).  The Court should compel Plaintiffs to provide a complete answer to Interrogatory No. 4.

### 4.    Plaintiffs must complete their answer to Interrogatory No. 6.

Interrogatory No. 6 seeks information about attendance and criteria for attending Celestial Heart's ceremonies:

> **Interrogatory No. 6:**  Identify each and every person who has attended or participated in, or who has requested to attend or participate in, one of your ceremonies.  For each person identified, indicate when the person attended or participated, or requested to attend or participate; whether the person was permitted to attend or participate and any explanation as to why or why not the person was permitted to attend or participate; and how many times the person has attended or participated in one of your ceremonies.

Ex. B, at 7.

This information is similarly relevant to Defendants' affirmative defenses under RFRA.  Again, identifying the participants in Celestial Heart's ceremonies will bear on the determination of whether the use of ayahuasca in those ceremonies presents diversion risks or health or safety risks to participants.  *See Oklevueha*, 2013 WL 3243371, at * 6; *see also Ariz. Yage Assembly v.*

*Barr*, 2024 WL 1011677, at *4 (finding the identity of participants "particularly relevant to the sincerity of participants and whether individuals can joint under false pretenses").  Identifying any individuals who were not permitted to attend Celestial Heart's ceremonies, and identifying the reasons for such a denial, are similarly relevant to the individualized inquiry required by RFRA.  *See Ariz. Yage Assembly v. Barr*, 2024 WL 1011677, at *3 (compelling response to interrogatory seeking "information about individuals being denied participation in Plaintiffs' ceremonies, why they were not approved to participate in one of [an ayahuasca church's] ceremonies, who made the decisions, and how the decisions were communicated to the individuals").

In response to Interrogatory No. 6, Plaintiffs stated as follows:

> Plaintiffs object to this Interrogatory to the extent it violates non-parties' and Plaintiffs' First Amendment right of association and right of privacy, and may expose private and personally identifiable information for persons who are not party to this action without their consent.  Plaintiffs further object to this Interrogatory to the extent it requests privileged or work product disclosures.  Plaintiffs further object to this Interrogatory on the ground that the term "each and every person" is vague, overbroad, and burdensome.  Plaintiffs further object to this Interrogatory on the basis that it is unlimited as to dates.

> Subject to and without waiving these objections, Plaintiffs provide the following responses with a date range limited to January 2021 through the present:

> > 03-24-24 – Wedding/Celebration Event – Attendance.xlsx

> > 03-04-24 - Celestial Training – Attendance.xlsx

> > 01-26-24 – Heaven and Earth – Attendance.xlsx

> > 09-15-23 – The Higher Self – Blue Star – Attendance.xlsx

> > 07-21-23 – Seven Angelic Rays – Attendance xlsx

> > 07-15-22 – The Spirit World of Umbanda – Attendance xlsx

> > 08-15-21 - Archangel Michael - Attendance.xlsx

> > 03-21-21 - Freedom - Attendance.xlsx.

> A related spreadsheet providing anonymized records of ceremony attendance has been released concurrently with these amended responses.

Ex. H, at 13–14.

The information Plaintiffs provided in response to Interrogatory No. 6 is incomplete.  In particular, Plaintiffs' amended response fails to provide any information or documentation as to

22

1   whether Celestial Heart has not permitted any individual to join as a member or attend a ceremony,

2   and if so, the reasons for that.

3           Plaintiffs' objections again fail.  Plaintiffs' confidentiality and First Amendment objections

4   cannot overcome Defendants' entitlement to information needed to test Plaintiffs' claims under

5   RFRA.  *See Ariz. Yage Assembly*, 2024 WL 1011677, at *1; *Oklevueha*, 2013 WL 3243371, at *5.

6   Plaintiffs' First Amendment concerns are particularly uncompelling with respect to the situation

7   contemplated by the relevant part of this interrogatory, wherein a person has been *excluded* from

8   associating with Celestial Heart.  Plaintiffs have not particularized their generalized concerns about

9   "privileged or work product disclosures."  *See Clarke*, 974 F.2d at 129.  And given the small size

10  of Celestial Heart's operations, Plaintiffs cannot show that providing the requested information for

11  each and every individual who has attended or participated in, or who has requested to attend or

12  participate in, one of Celestial Heart's ceremonies is somehow vague, overbroad, or burdensome.[6]

13  The Court should compel Plaintiffs to provide a complete answer to Interrogatory No. 6.

---

[6] As to Plaintiffs' concerns about the "unlimited" dates purportedly at issue in Interrogatory No. 6, Defendants previously indicated they would "propose a global time period [for all discovery requests] of January 1, 2021, through April 26, 2023."  Ex. E, at 2.

1

**PLAINTIFFS' POSITION**

2

Defendants filed its Motion to Compel on March 12, 2025. LR 251 makes counsel for the

3

moving party responsible for arranging a conference so the parties can resolve their differences.

4

LR 251 requires that the conference take place at a time mutually convenient to counsel. Defense

5

counsel Ms. Suwanda waited until after business hours late the night of March 17 to request that

6

conference. Neither Plaintiffs' counsel were aware of Ms. Suwanda's request until the following

7

day. Both Plaintiffs' counsel had full schedules on March 18. As such Defendants have failed to

8

comply with LR 251. Therefore, Plaintiffs, without the opportunity to discuss Defendants' Motion

9

to Comply provide the following response:

10

In terms of texts with participants, Plaintiffs have disclosed all texts in its possession and

11

control for the date range requested by the Defendants. Some of the date range were before the

12

litigation and messages were routinely deleted to save space on the Plaintiffs' phones. As

13

Plaintiffs' attorneys has informed Defendants. there are no material or substantive texts because

14

all the texts did was set up phone calls where all the substantive discussions happened. Nothing

15

has been withheld.

16

Plaintiffs have searched all text platforms and formats, and informed defense counsel Ms.

17

Suwanda last summer that they had produced all texts that were accessible. Since some of the

18

communications happen on an online platform, that program routinely deletes older messages.

19

Plaintiffs have no access to these messages after they are deleted. All of the intake is done by an

20

online platform and Plaintiffs have disclosed everything they have here.

21

With regard to metadata, Plaintiffs offered to have defense counsel identify the specific

22

parameters that she wanted (date of creation, etc) and we would review the feasibility of producing

23

this data. However, Ms. Suwanda never responded or provided any indication of the parameters

24

she desired.

25

Defendants' complaint about Plaituiiffs' anonymizing names is baseless since the parties

26

agreed to that.

27

Plaintiffs have produced a list of 10 individuals serving in or requesting to serve in

28

leadership roles within Celestial Heart.  This list is complete.  Plaintiffs have provided complete responses with regard to Defendants' interrogatory requesting Celestial Heart's membership-screening process, and the process by which Celestial Heart may exclude individuals from membership or attendance at Celestial Heart's ceremonies.  Therefore, without further clarification, which defense counsel cannot provide since she waited until the 11th hour to request a meet and confer, Plaintiffs have no idea what is missing from its interrogatory responses.

*    *    *

Dated: March 19, 2025

*/s/ Jack Silver (with permission)*
Jack Silver
Cal. Bar No. 160575
Law Office of Jack Silver
708 Gravenstein Hwy No. 407
Sebastopol, CA 95472-2808
Telephone: (707) 528-8175
E-mail: JsilverEnvironmental@gmail.com

*/s/ Sean T. McAllister (with permission)*
Sean T. McAllister, Esq., *pro hac vice*
Colo. Bar No. 31350
Cal. Bar No. 310962
McAllister Law Office, P.C.
4035 E. 3rd Avenue
Denver, CO 80220
Telephone: (720) 448-6235
E-mail: sean@mcallisterlawoffice.com

*Counsel for Plaintiffs*

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

JULIE STRAUS HARRIS
Assistant Branch Director

*/s/ Sarah M. Suwanda*
SARAH M. SUWANDA
Trial Attorney
United States Department of Justice
Civil Division
Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Telephone: (202) 305-3196
sarah.m.suwanda@usdoj.gov

*Counsel for Defendants*