YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division
ANDREW I. WARDEN
Assistant Branch Director
SARAH M. SUWANDA
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 305-3196
E-mail: sarah.m.suwanda@usdoj.gov

*Counsel for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| The Church of the Celestial Heart, a California Religious Corporation, *et al.*, <br><br>Plaintiffs, <br><br>vs. <br><br>Pamela J. Bondi, in her official capacity, *et al.*, <br><br>Defendants. | Case No. 23-cv-545-SAB <br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ANCILLARY JURISDICTION** |

The facts in this case are crystal clear and undisputed. On May 5, 2025, the parties executed an out-of-court settlement agreement that resolves all outstanding disputes in this case. Pursuant to the terms of that agreement, Defendants made payment relating to Plaintiffs' attorneys' fees and costs on May 28, 2025, and as a result, Plaintiffs are now required to dismiss this case within 15 days of receipt of such payment. Concurrently, and in light of the parties' notice of settlement, this Court ordered the parties to "file dispositional documents **no later than June 10, 2025**." Order Requiring Parties to File Dispositional Documents at 1 (citing L.R. 160(b)), ECF No. 66; *see also id.* (stating that the parties "inform[ed] the Court that this matter has been resolved and that dispositional documents will be filed").

Plaintiffs do not dispute those facts. Yet they have not fulfilled their obligation to dismiss

this case in accordance with the text of the agreement and the Court's Order. Instead, Plaintiffs have unilaterally asked this Court, in its discretion, to "retain jurisdiction to enforce the settlement agreement"—despite Defendants' longstanding objection. *See* Pls.' Expedited Mot. for Ancillary Jurisdiction ("Pls.' Mot.") at 3, ECF No. 67; Pls.' Notice of Am. Mot. and Mot. for Ancillary Jurisdiction ("Pls.' Am. Mot.") at 3, ECF No. 69.[1] Indeed, contrary to Plaintiffs' wishes, the agreement itself makes clear that there was never a mutual intent to convert the text of the settlement agreement into a separately enforceable judicial order. That fact is not news to Plaintiffs: the government has declined—and the District of Arizona likewise entirely rejected—an *identical* request for ancillary jurisdiction in a similar Religious Freedom Restoration Act ("RFRA") case with nearly identical settlement terms with the same Plaintiffs' counsel just last September. *See* Defs.' Mem. in Opp'n to Pls.' Mot. to Incorporate Settlement Agreement, ECF No. 73, *Church of the Eagle and the Condor v. Garland* ("*Condor*"), No. 22-cv-01004-PHX-SRB (D. Ariz. Sept. 9, 2024); *Condor* Order, ECF No. 75, No. 22-cv-01004-PHX-SRB (D. Ariz. Jan. 24, 2025). In other words, there is no legal or factual basis upon which this Court could grant such extraordinary relief over Defendants' objection.

Accordingly, the Court should reject Plaintiffs' baseless invitation to rewrite the final agreement and dismiss this case with prejudice.[2]

\*     \*     \*

---

[1] On May 21, 2025, Plaintiffs filed the instant motion for ancillary jurisdiction, which concurrently sought an expedited briefing schedule. Pls.' Mot. at 1–3. That same day, the Court denied without prejudice Plaintiffs' "request to shorten time to hear the motion" but otherwise held that "[t]he motion as currently filed shall be governed by the deadlines in Local Rule 230." Order re Pls.' Procedurally Deficient Request to Shorten Time at 2, ECF No. 68. On May 23, 2025, Plaintiffs filed an amended motion for ancillary jurisdiction that omits their prior request for expedited briefing but makes nearly identical arguments to their previously filed motion. *See generally* Pls.' Am. Mot. Because both motions are substantially similar, Defendants' arguments herein apply equally to both pending motions.

[2] Defendants respectfully submit that this motion may be decided on the papers and that no hearing is necessary.

The only action that remains is for Plaintiffs to dismiss this action with prejudice. With fewer than 15 days to comply with that obligation, Plaintiffs seemingly argue, notwithstanding the text of the agreement and the parties' stipulation of dismissal to the contrary, that Defendants have agreed to this Court's ongoing enforcement of an out-of-court agreement between the parties. Pls.' Mot. at 2–3 (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)); Pls.' Am. Mot. at 2–3 (similar). Plaintiffs are wrong on both the facts and the law, and the relief they now seek is squarely contrary to, and in violation of, the parties' binding agreement.

**A.** To begin, the Supreme Court has held that when voluntary dismissal is made pursuant to Rule 41(a)(1)(ii), as it is here, *see* Ex. 1, Declaration of Sarah M. Suwanda ("Suwanda Decl.") ¶ 3, a court may "retain jurisdiction over the settlement contract" only "if the parties agree," *Kokkonen*, 511 U.S. at 381–82. Defendants, however, have not agreed to Plaintiffs' request for ancillary jurisdiction, and nothing in the text of the agreement supports Plaintiffs' contention to the contrary. *See id.* at 381 ("If the parties *wish* to provide for the court's enforcement of a dismissal-producing settlement agreement, they can seek to do so.").

The Ninth Circuit "relies on basic principles of state contract law in interpreting a settlement agreement." *Harps v. Cnty. of Los Angeles*, 8 F. App'x 771, 772 (9th Cir. 2001). That is, "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible." *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020). Here, the notion that the parties agreed to the Court's discretionary incorporation of the parties' out-of-court agreement into an order is glaringly absent from the text. *See generally* Pls.' Ex. A, Settlement Agreement ("Agt."), ECF No. 67-1. Nowhere does the text of the agreement indicate that the parties agreed to petition the Court to incorporate the settlement terms into an order, or otherwise independently act to enforce the agreement. Nor does it even contemplate that the parties, let alone Defendants, agreed to any additional procedures that would require the Court to craft an order that incorporates the parties' settlement terms. Indeed, the text of the agreement points to the opposite conclusion. It states that "[w]ithin fifteen (15) days of the

3

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR ANCILLARY JURISDICTION

receipt of the payment described in paragraph 89, Plaintiffs shall dismiss this case with prejudice pursuant to Fed. R. Civ. P. 41(a) by filing a Stipulation of Dismissal with Prejudice." Agt. ¶ 95. That dismissal provision makes no mention of any additional orders from the Court, by way of "incorporation," "ancillary jurisdiction," or otherwise. Instead, the text is unequivocal that, upon resolution of payment, there is but one ministerial action that will occur with respect to this action: Plaintiffs must voluntarily dismiss this case with prejudice.

Put simply, by the parties' express agreement, there is no basis for this Court to assert ancillary jurisdiction. Defendants fulfilled their end of the bargain and made payment on May 28, 2025. Plaintiffs, in turn, must comply with their contractual obligations and dismiss this case promptly, in accordance with the text of the agreement (by June 16, 2025[3]) and this Court's Order (by June 10, 2025[4]). *See also* Pls.' Mot. at 3 (conceding that "once Plaintiffs receive payment, as per the terms of the Settlement Agreement, Plaintiffs must dismiss this case with prejudice within fifteen (15) days").

**B.** Plaintiffs nevertheless assert that paragraphs 87 and 92.c of the agreement allows the Court, in its discretion, to assert ancillary jurisdiction for purposes of "enforc[ing] [the] settlement agreement." Pls.' Mot. at 2; Pls.' Am. Mot. at 2. That implied argument, however, runs contrary to the very text of the agreement itself. Paragraph 92.c, for example, does not operate in isolation, as Plaintiffs would like. Instead, the overarching paragraph, paragraph 92—itself "[s]ubject to paragraph 25," and which Plaintiffs conveniently ignore—provides that "the following dispute resolution procedures" will govern any "disputes between the Parties concerning any alleged breach of this Agreement." Agt. ¶ 92. That is, the dispute-resolution process for *actual* allegations

---

[3] The United States Department of Treasury confirmed that payment, pursuant to the settlement agreement, was issued to Plaintiff Celestial Heart on May 28, 2025. Suwanda Decl. ¶ 4. Although Plaintiffs' counsel would not confirm the date on which payment was received, they nevertheless confirmed receipt of payment as of June 1, 2025. *Id.* ¶ 5. Consequently, Plaintiffs must dismiss this case no later than June 16, 2025, *i.e.*, within 15 days of receipt of payment. Agt. ¶ 95.

[4] Defendants maintain that Plaintiffs should file the parties' stipulation of dismissal with prejudice by the Court's deadline of June 10, 2025, as no good cause supports an extension of that deadline for the reasons set forth herein.

4

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR ANCILLARY JURISDICTION

of breach requires the parties to take the following steps: they must (1) make "good faith efforts to resolve informally any alleged breach of this Agreement," *id.* ¶ 92.a, and (2) "submit[] to mediation before a mutually agreed-upon neutral mediator," *id.* ¶ 92.b. Only if those two prerequisites fail to resolve an actual dispute may either party "apply to the U.S. District Court for the Eastern District of California for relief." *Id.* ¶ 92.c. In other words, paragraph 92.c does not provide for ancillary jurisdiction by this Court for purposes of preemptively enforcing the terms of the agreement, let alone Defendants' memorialized assent to such discretionary jurisdiction.[5] Rather, the plain text reading of paragraph 92 and its subparts makes clear that these provisions operate to eliminate any disputes regarding venue or jurisdiction should any *future* contract performance disputes arise—*i.e.*, after the parties have satisfied their obligations under paragraphs 92.a and 92.b.[6] That reading makes logical sense. Paragraphs 87 and 92 merely memorialize the parties' agreement that venue, for purposes of any separate and distinct contract-performance disputes, may be appropriate in this District, even if Plaintiffs were to expand their operations outside the Eastern District of California. Likewise, those same paragraphs eliminate any ambiguity as to whether jurisdiction over any new disputes arising from the agreement lies in another judicial forum, assuming an appropriate basis for federal jurisdiction exists.

Put differently, the fact that the parties agreed to a designated forum for potential disputes arising from future performance under the agreement does not mean that the parties agreed to the highly irregular outcome of requiring this Court to incorporate the underlying agreement into a judicial order. *See Kokkonen*, 511 U.S. at 381 ("The facts to be determined with regard to such

---

[5] Plaintiffs' motion effectively concedes this point, as they state that "[t]he parties have agreed that *Plaintiffs*"—not the parties—"may seek to request that this Court retain jurisdiction." Pls.' Mot. at 2 (emphasis added); Pls.' Am. Mot. at 2 (same).

[6] Plaintiffs' reliance on paragraph 87 fails for the same reasons. That paragraph, entitled "Venue & Jurisdiction," specifically contemplates venue and jurisdiction within the Eastern District of California, only after the dispute-resolution procedures—informal resolution (paragraph 92.a) and mediation (paragraph 92.b)—have run their course. Agt. ¶ 87. *See also id.* (expressly incorporating "Article IX of this Agreement," *i.e.*, paragraph 92 and its subparts). In other words, the same plain text reading that governs paragraph 92 applies with equal force to paragraph 87.

alleged breaches of contract are quite separate from the facts to be determined in the principal suit, and automatic jurisdiction over such contracts is in no way essential to the conduct of federal-court business."). Plaintiffs should not be able to contort these forward-looking jurisdictional provisions relating to potential breach as a means of ignoring the clear language of the agreement requiring disposition of the instant case.[7]

**C.** Indeed, counsel for Plaintiffs recently tried this exact gambit before, only to be squarely rejected by another federal district court. The same lawyers in this case negotiated a substantially similar settlement agreement with the government in a similar ayahuasca RFRA case—which contains the very same forward-looking jurisdiction and venue provisions at issue here. *Compare Condor* Settlement Agreement ("*Condor* Agt.") ¶ 91, ECF No. 51-2, No. 22-cv-01004-PHX-SRB (D. Ariz. June 17, 2024) (setting forth a multi-step, dispute-resolution process for alleged breach of contract), *with* Agt. ¶ 92 (same); *compare Condor* Agt. ¶ 86 (establishing venue and jurisdiction with respect to new claims of breach of contract), *with* Agt. ¶ 87 (same). Those same lawyers argued, just as they have done here, that the same jurisdictional provisions allow the reviewing court to "incorporate the parties' settlement agreement into an order and retain ancillary jurisdiction to enforce the settlement agreement." *Condor* Order at 2, ECF No. 75, No. 22-cv-01004-PHX-SRB (D. Ariz. Jan. 24, 2025). The government then, as it does now, opposed Plaintiffs' strained reading of the agreement; and the *Condor* court agreed. In rejecting these same arguments now repurposed before this Court, the *Condor* court explained that "[f]ederal courts have no *inherent* power to enforce settlement agreements entered into by parties litigating before them." *Id.* (citations omitted). Nor do the parties have any power to "confer jurisdiction on the district court by agreement or consent." *Id.* (citations omitted). Consequently, the *Condor* court denied the request for incorporation and dismissed the case with prejudice. *Id.* This Court should reach that same conclusion here: it should reject Plaintiffs' one-sided invitation to rewrite the terms

---

[7] Moreover, Plaintiffs cannot claim that Defendants implicitly agreed to ancillary-jurisdiction relief not contemplated by the agreement, as the parties included an integration clause precisely to avoid post-hoc surprises and requests such as this one. *See* Agt. ¶ 94.

6
DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR ANCILLARY JURISDICTION

of the agreement and dismiss this case with prejudice.

**D.** Finally, Plaintiffs concede that the Court's exercise of ancillary jurisdiction is purely discretionary; yet they nonetheless (and summarily) invoke the rationale of the Ninth Circuit's unpublished decision in *Kokkenen* to support their baseless reading of the agreement. Pls.' Mot. at 2–3 (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 993 F.2d 883 (9th Cir. 1993), *rev'd*, 511 U.S. 375 (1994)); Pls.' Am. Mot. at 2–3. To be clear, the Supreme Court reversed and remanded the Ninth Circuit's unpublished decision in *Kokkonen*, which erroneously affirmed the district court's decision to enforce an out-of-court settlement agreement that resulted in dismissal of the underlying action pursuant to Rule 41(a)(1)(ii). 511 U.S. at 375. In so doing, the Supreme Court clearly held that "[a] federal district court, possessing only that power authorized by Constitution and statute, lacks jurisdiction over a claim for breach of a contract, part of the consideration for which was dismissal of an earlier federal suit." *Id.* *See also id.* at 380 ("No case of ours asserts, nor do we think the concept of limited federal jurisdiction permits us to assert, ancillary jurisdiction over any agreement that has as part of its consideration the dismissal of a case before a federal court."); *id.* at 378 ("Enforcement of the settlement agreement, . . . whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction.").

Plaintiffs cannot ignore the Supreme Court's central holding in *Kokkonen*. Nor can they attempt to circumvent that holding by manufacturing Defendants' assent to continuing jurisdiction by this Court. That contortion of the facts is expressly belied by the agreement itself, *see supra*, and Defendants' longstanding objection to any stipulation of dismissal that requires Defendants to consent to ancillary jurisdiction, *see* Suwanda Decl. ¶ 3.

\*   \*   \*

Accordingly, for the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' unilateral request for ancillary jurisdiction and dismiss this case with prejudice.

| | |
|---|---|
| Dated: June 4, 2025 | Respectfully submitted, |
| | YAAKOV M. ROTH<br>Acting Assistant Attorney General<br>Civil Division |
| | ANDREW I. WARDEN<br>Assistant Branch Director |
| | */s/ Sarah M. Suwanda*<br>SARAH M. SUWANDA<br>Trial Attorney<br>Civil Division, Federal Programs Branch<br>U.S. Department of Justice<br>1100 L Street NW<br>Washington, D.C. 20005<br>Telephone: (202) 305-3196<br>E-mail: sarah.m.suwanda@usdoj.gov |
| | *Counsel for Defendants* |

8

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR ANCILLARY JURISDICTION